IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KILOPASS TECHNOLOGY INC., | No. C 10-02066 SI |
|     Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS** |
|     v. | |
| SIDENSE CORPORATION, | |
|     Defendant. | |

Defendant moved for leave to amend its invalidity contentions. The motion is scheduled for hearing on November 4, 2011, at 9:00 a.m. Pursuant to Civil Local Rule 7-1(b), the Court finds the matter appropriate for disposition without oral argument and therefore VACATES the hearing. For the reasons below, the Court hereby DENIES defendant's motion to amend its invalidity contentions.

**BACKGROUND**

Plaintiff Kilopass Technology, Inc. ("Kilopass"), filed this action for patent infringement under Patent Laws of the United States, 35 U.S.C. § 100, *et seq.,* against defendant Sidense Corporation ("Sidense"). The three patents at issue involve "a novel way of storing data permanently inside integrated circuits by creating a breakdown in the transistor, safely and reliably, now referred to as embedded Non-Volatile Memory." Second Amend. Compl. ("SAC") ¶ 8. Sidense served its first set of discovery requests and its invalidity contentions on Kilopass in February 2011. After receiving Kilopass's document production in September 2011, Sidense now seeks to amend its invalidity contentions to assert that Kilopass's claims are invalid for failure to meet the enablement requirement of 35 U.S.C. § 112. Def.'s Mot. to Amend at 1. Sidense argues that Kilopass's production of nonpublic

documents includes an email that evidences that Kilopass tried and failed to enable in a commercial product the one-transistor ("1-T") bitcell. *Id.*

## LEGAL STANDARD

The Patent Local Rules provide, in relevant part: "Amendment or modification of the . . . Preliminary or Final Invalidity Contentions . . . may be made only by order of the Court, which shall be entered only upon a showing of good cause." Patent L.R. 3-6. "The local patent rules in the Northern District of California . . . requir[e] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery. The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1365-66 (Fed. Cir. 2006). In determining whether a motion for leave to amend invalidity contentions should be granted, this Court has examined such factors as the relevance of the newly-discovered prior art, whether the request to amend is motivated by gamesmanship, the difficulty of locating the prior art, and whether the opposing party will be prejudiced by the amendment. *See Yodlee, Inc. v. CashEdge, Inc*., 2007 WL 1454259, *2-3 (N.D. Cal. May 17, 2007).

In contrast to the more liberal policy for amending pleadings, "the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *LG Elecs. Inc. v. Q-Lity Computer Inc*., 211 F.R.D. 360, 367 (N.D. Cal. 2002) (citation omitted). The patent local rules were "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *O2 Micro*, 467 F.3d at 1366 n.12 (quoting *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)).

Enablement is a question of law, and is required of every patent pursuant to 35 U.S.C. § 112 ¶ 1. *Liquid Dynamics, Corp. v. Vaughan Co., Inc.,* 449 F.3d 1209, 1224 (Fed. Cir. 2006). To satisfy the enablement requirement, "a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Genentech, Inc. v. Novo Nordisk A/S*, 108

1 F.3d 1361, 1365 (Fed.Cir.1997). Several factors are considered in deciding the issue of undue
2 experimentation: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance
3 presented; (3) the presence or absence of working examples; (4) the nature of the invention; (5) the state
4 of the prior art; (6) the relative skill of those in the art; (7) the predictability or unpredictability of the
5 art; and (8) the breadth of the claims. *In re Wands*, 858 F.2d 731, 737 (Fed.Cir.1988).

## DISCUSSION

Sidense contends that a Kilopass email to its customer, Samsung, reveals Kilopass's failed attempt to commercialize its claimed 1-T technology. The contents of the email are as follows:

> We have discussed in our meeting with your team that Kilopass owns US patents in the 1-T split-gate approach. We even have evaluated this 1-T technology in silicon many years ago. We have concluded that the 1-T split-gate technology has some very fundamental problems in reliability for high-volume production. This fundamental reliability problem cannot be overcome easily. This 1-T approach is not a technology that can support any reliable high-volume multiple-lot silicon production, even if the technology can be demonstrated to be working in a very low quantity proto-type test chip.

Cook Decl., Ex. 1. Sidense contends that this email is evidence that Kilopass failed to enable its invention in a commercial product, and that such failure is "strong evidence" that the patent specification lacks enablement. Def.'s Mot. to Amend at 2. Sidense cites to *Ormco Corporation v. Align Technology, Inc.* for the proposition that an attempt and failure at commercial production is evidence of non-enablement. 498 F.3d 1307, 1319 (Fed. Cir. 2007). Therefore, Sidense argues, the evidence provided in the email satisfies provides the good cause necessary to amend its invalidity contentions. Def.'s Mot. to Amend at 3 (citing Patent Local Rule 3-6).

Kilopass contends that the enablement requirement is not based on commercial feasibility of the invention but instead on whether "one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation." Pl.'s Opp. at 3 (citing *AK Steel Corp. v. Sollac & Ugine,* 344 F.3d 1234, 1244 (Fed. Cir. 2003)). Kilopass points out that the email clearly states that the technology could work in low quantity production. They argue that a patent holder need not demonstrate the feasibility of high quantity commercial product to prove enablement. Pl.'s Opp. at 3.

The Court agrees with Kilopass. High volume production is not necessary to satisfy the

3

enablement requirement. The case that Sidense relies on, *Ormco*, is inapposite here. The patents in *Ormco* were processes related to the computer-aided design and manufacture of custom orthodontic appliances. *Id.* at 1311. One of the claims was a computerized system that automatically determined tooth positions without human decision making. *Id.* at 1318. The Court found that there was no evidence that anyone, including the defendant, could implement the system based on the patent specification because variations in human anatomy prevented fully automatic determinations. *Id.* In other words, the invention claiming automatic determinations of tooth positions without human decision making required human decision making. Therefore, the court held that the patents were not enabled. *Id.* at 1319.

In contrast to the claims in *Ormco,* Sidense does not contend that there is evidence that Kilopass attempted but failed to produce its claimed technology. Rather, Sidense contends that the email reveals a failure to produce the technology *in a commercial product*, and therefore the email evidences non-enablement. However, *Ormco* does not stand for the proposition that commercial viability or high volume production is a prerequisite for enablement. It simply (and logically) holds that a *complete* failure to produce an invention as specified is evidence that the patent specification lacks enablement. The Kilopass email only reveals that the invention is difficult to produce at high volumes, not that it failed to produce the invention altogether. The ability to produce at high volume is not required for enablement. Instead, the enablement requirement is sufficiently satisfied with "any mode of making and using the claimed invention." *Engel Indus., Inc. v. Lockformer Co.,* 946 F.2d 1528, 1533 (Fed. Cir. 1991); *see Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.,* 617 F.3d 1296, 1306-07 ("it is not required to enable the most optimized configuration, unless this is an explicit part of the claims"); *CFMT Inc. v. Yieldup Int'l Corp.,* 349 F.3d 1333, 1338 (Fed. Cir. 2003) ("enablement does not require an inventor to meet lofty standards for success in the commercial marketplace").

Therefore, the cited email provides no evidence of non-enablement of the 1-T technology. Sidense has not met the good cause threshold to amend its invalidity contentions.

4

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES Sidense's motion for leave to amend its invalidity contentions.

**IT IS SO ORDERED.**

Dated: November 2, 2011

SUSAN ILLSTON
United States District Judge