IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KILOPASS TECHNOLOGY INC., | No. C 10-02066 SI |
| Plaintiff, | **ORDER DENYING APPLICATION FOR ORDER TO SHOW CAUSE RE: CONTEMPT; ORDER RE: MOTION TO COMPEL** |
| v. | |
| SIDENSE CORPORATION, | |
| Defendant. | |

Currently pending before the Court are defendant Sidense's application for an order to show cause re: contempt against plaintiff Kilopass Technology, Inc. (Doc. 186), and plaintiff Kilopass's motion to compel documents from defendant Sidense (Doc. 190). The Court will address the motions in turn.

**I.    Sidense's Application for an Order to Show Cause re: Contempt**

   **A.    Facts**

Sidense requests that the Court issue an order directing Kilopass and its outside counsel at SNR Denton to appear and show cause why they should not be held in contempt for violating the Stipulated Protective Order entered by this Court.

The relevant facts are as follows. Kilopass brought suit against Sidense alleging infringement of three of its patents. *See* First Amended Compl. ("FAC"), ¶¶ 26-43, Doc. 6. As part of its defense, Sidense argued that it "does not make, use, offer to sell, or sell any such apparatus or method - its business is licensing its technology, *i.e.*, designs, to customers, who in turn use those designs to build" the relevant technology. Sidense's First Mot. to Dismiss, Doc. 12, at 11 (Jul. 28, 2010). Because

**United States District Court**
For the Northern District of California

1  Sidense asserted that it does not directly infringe Kilopass' technology, in October, 2010 Kilopass filed
2  a Second Amended Complaint ("SAC") alleging that Sidense is engaged in indirect infringement. *See*
3  SAC, ¶¶ 29, 36 ("Sidense has infringed and continues to infringe the '757 patent by actively inducing
4  its customers . . . to make or have made on its behalf" the infringing technology). In order to establish
5  Sidense's indirect infringement, Kilopass is required to establish direct infringement by Sidense's
6  customers. *See Dynacore Holdings Corp. v. U.S. Philips Corp*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).

7  To that end, Kilopass propounded interrogatories seeking information about Sidense's
8  customers. *See* Cook Decl., Ex. 2. On February 15, 2011, Sidense provided SNR Denton with a list of
9  Sidense's customers, designating the contents of the list "Highly Confidential – Outside Attorneys' Eyes
10 Only." *Id.* Because no Protective Order was yet in place, the parties met-and-conferred, and SNR
11 Denton agreed that it would neither show nor provide access to the list to any Kilopass party
12 representative. Cook Decl., Ex. 1 (Kilopass Letter, Feb. 8, 2011). The parties later reached agreement
13 on the terms of a Protective Order, which the Court entered on May 5, 2011. *See* Doc. 102. Section 7.3
14 of the Protective Order limits access to documents designated "Highly Confidential - Outside Attorney's
15 Eyes Only" to the Court and outside counsel. *Id.* Section 6 provides a process by which a party can
16 challenge the other party's designations. *Id.*

17 The customer list contains 76 names. *See* Cook Decl., Ex. 2. After obtaining the customer list,
18 SNR Denton issued subpoenas to 48 of the customers on the list. The subpoeanas sought documents
19 and tangible things related to Sidense's technology and the recipient's use thereof. *See, e.g.,*, Cook
20 Decl., Ex. 3. Kilopass states that SNR Denton issued a total of 52 subpoenas, and that it compiled the
21 subpoena list from a variety of sources, including Sidense's web site, research on the internet, and
22 Kilopass itself, which knew of the identity of Sidense's customers "in the ordinary competitive business
23 through its sales team and word of mouth in the business community." Kilopass Opp. to App. for
24 Contempt, 2 (Doc. 196). SNR Denton then cross checked the list it independently compiled against the
25 customer list, and "supplemented a few names" from that list. Hogge Decl., ¶ 5. SNR Denton issued

2

subpoenas to 52 parties, including three companies (UMC, SMIC, and Digi-Key) not on the list.[1] Kilopass points out that there were 76 companies on the customer list, "of which 27 were not subpoenaed and of whom Kilopass has no knowledge." Pl.'s Opp. at 5 (*citing* Hogge Decl., ¶ 5).

On March 25, 2011, Sidense's counsel was notified of the issuance of the subpoenas when SNR Denton sent emails to Sidense's counsel with "pdf" attachments of the third party subpoenas. Hogge Decl., Ex. 3. Sidense did not object to the fact that the subpoenas were not stamped confidential. Sidense's counsel represented 14 of the 52 third parties who were subpoenaed, and objected to a number of the requests in the subpoenas. Hogge Decl., Exs. 5 and 6. Sidense did not designate its objections as confidential. *Id.* Kilopass received a number of objections to the subpoenas, as well as inquiries from the third parties expressing their concerns regarding the subpoenas. Kilopass Opp. at 3; Hogg Decl., Exs. 4-7.

At some point following the issuance of the subpoenas, SNR Denton provided the subpoena list to Kilopass. Pls.' Opp., at 3. During deposition, various Kilopass officials stated that they had seen or received the subpoena list. Hong Dep., 190:17-21; Cleveland Dep., 122:23-123:10. This included Kilopass' Vice President of Worldwide Sales, Mitchell Statham. Statham Dep., 77:2-13. On June 28, 2011, Charlie Cheng, CEO of Kilopass, sent an email to recipients of the subpoenas. The email contains Kilopass' characterization of this lawsuit. It states that,

> During the course of the patent litigation, Sidense refused the normal information request made by Kilopass. The basis for Sidense's refusal is due to their legal defense position. Sidense has refused to take responsibility for its customers' chips that contain the embedded Sidense OTP, which stands accused of patent infringement.
> . . .
>
> Kilopass has heard from some of these licensees that they have unlimited indemnification privilege in the Sidense license agreement which may explain why these companies are represented by Sidense's attorneys . . . The fact that Sidense is willing to offer unlimited indemnification is quite surprising. This un-capped liability creates a high-risk profile for any business, especially for a privately held technology start-up with limited income and capital.

Cook Decl., Ex. 11. Owing in part to the statements made in this email, Sidense filed its own suit

---

[1] The numbers appear to differ between the parties; Sidense argues that subpoenas were issued to 48 parties on the list, while Kilopass claims that they were issued to 52 parties in total, 3 of whom were not on the list, thus making it a total of 49 customers from the list.

1 against Kilopass and Cheng, alleging a number of business torts, including defamation, unfair
2 competition, and intentional interference with contractual relations (the "Sidense Suit"). *Sidense Corp.*
3 *v. Kilopass Tech., Inc.*, No. C 11-04112 SI.

Kilopass' Vice President of Marketing, Linh Hong, testified that Kilopass used the subpoena list to contact customers.

> Q: And that was the only source of the Sidense licensees for who would receive [sic] the booklet that's Exhibit 87?
>
> A: Also the subpoena list.
>
> Q: And what do you mean when you say "the subpoena list"?
>
> A: There's a list of customers that have been subpoenaed.
>
> Q: And how did you obtain the subpoena list?
>
> A: From Lee Cleveland [Kilopass' Vice President of Engineering].
>
> Q: And how did Mr. Cleveland obtain the subpoena list?
>
> A: My guess is through legal counsel.
>
> . . .
>
> Q: And what did you do once you received that subpoena list?
>
> A: We know the customers that have been subpoenaed, yeah. So the ones that we have a relationship with, we contacted.
>
> Q: And you contacted them and provided them the booklet?
>
> A: Not necessarily.
>
> Q: Did you provide them other material besides the booklet?
>
> A: No.
>
> Q: So have you – you contacted them, but you didn't necessarily provide the booklet. What did you – what did what did you communicate to them when you contacted them?
>
> A: It could be about a new engagement, a new product they have. They're picking a new process node, they need another OTP solution. A new opportunity.

Cook Decl., Ex. 8 (Hong Dep. 189:10-191:10).

Sidense moves for an order to show cause why Kilopass and its counsel should not be held in contempt for violating the Stipulated Protective Order entered by this Court. Sidense argues that SNR

4

Denton violated the order by providing the subpoena list to Kilopass, and that Kilopass violated the order by using the subpoena list for a purpose outside of this litigation.

## **LEGAL STANDARD**

"A court has power to adjudge in civil contempt any person who willfully disobeys a specific and definite order requiring him to do or to refrain from doing an act." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983). The Federal Rules of Civil Procedure provide that "if a party fails . . . to obey an order to provide or permit discovery, including an order under Rule 26(f),[2] . . . the court where the action is pending may issue further orders, [including an order] dismissing the action or proceeding in whole or in part . . . [or] treating as contempt of court the failure to obey any order." Fed. R. Civ. P. 37(b)(2)(A)(vii). In addition, the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

A court may hold a party in civil contempt only if there is a valid court order that is clear in its commands. *See Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989) (court order must be "specific and definite"). "The district court may impose a sanction for the contempt only if it finds that the party requesting the sanction has proven contempt by clear and convincing evidence." *Peterson v. Highland Music Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998). "Substantial compliance with the court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). To succeed on a motion for civil contempt, the moving party must "show by clear and convincing evidence that [the nonmoving party] violated the [court order] beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of the [order]." *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir.

---

[2] Rule 26(f) addresses the development of a discovery plan and references "any other orders that should be entered by the court under Rule 26(c)," the rule addressing protective orders. Fed. R. Civ. P. 26(f)(6).

1997).

Once the moving party has shown by clear and convincing evidence that the contemnors violated a specific and definite order of the court, the burden shifts to the contemnors to demonstrate why they were unable to comply. *In re Bennet*, 298 F. 3d 1058, 1069 (9th Cir. 2002).

**DISCUSSION**

Sidense argues that both SNR Denton and Kilopass violated the Stipulated Protective Order. SNR Denton allegedly violated it by providing the subpoena list to Kilopass, and Kilopass violated it by using the list for purposes outside the litigation.

The Court disagrees, and finds that Sidense has not proven by clear and convincing evidence that either SNR Denton or Kilopass failed to substantially comply with the Protective Order – or, in the language of the Ninth Circuit, that either placed itself "beyond substantial compliance." *See Wolfard Glassblowing*, 118 F.3d at 1322. Importantly, SNR Denton did not provide the customer list to Kilopass. Hogge Decl. ¶ 2. Instead, Kilopass asserts that SNR Denton used the list to support and supplement a subpoena list compiled from otherwise publicly available information and information known by Kilopass.[3] In support of its contention, Kilopass attaches a number of Sidense's press releases and web pages that publicize the relationship between Sidense and at least 14 customers from the customer list. Hogge Decl., Ex. 2. In further support, Kilopass notes that twenty seven of the customers on the list were not subpoenaed, while three not on the list were. The deposition testimony and declarations also support the commonsense fact that two companies doing business in a highly specified industry likely already know of and compete for each other's customers. *See* Hong Dep. 160:10-166:17; Cleveland Decl. ¶ 5 ("Kilopass knew of the existence of all 52 subpoenaed companies . . . has had or had relationships with at least 38 of the 52 companies [and] knew that 30 of the 52 subpoenaed parties were Sidense's customers via its ordinary course of competitive business. In fact, six were Kilopass'

---

[3] The Protective Order does not confer protection to "any information that is in the public domain at the time of disclosure to the Receiving party or . . . any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality." Protective Order, p. 4.

customers.")[4]

Sidense's activity following disclosure of the customer list further weighs in favor of denying Sidense's application. Sidense was well aware that Kilopass was required to establish direct infringement by Sidense's customers. Sidense's second dismissal motion argued that Kilopass failed to establish that one of its customers - XMOS - infringed Kilopass' patents. Sidense's Second Mot. to Dismiss, Doc. 40, at 3 (Nov. 1, 2010). Sidense thus knew Kilopass' purpose in requesting the customer list: to issue subpoenas regarding the customers' use of Sidense's technology. Indeed, on March 25, 2011, pursuant Rule 45, Kilopass issued notice to Sidense of the customers it had subpoenaed. Fed. R. Civ. P. 45. Nonetheless, Sidense did not request that the subpoenas be stamped confidential,[5] or move for a protective order sealing the subpoenas. Moreover, Sidense's counsel represented a number of the subpoenaed parties, and, when objecting to portions of the subpoenas, did not stamp their own objections to the subpoenas as "confidential." Sidense also publicly filed its motion for a protective order to quash the subpoenas, and attached one such subpoena -- to Avnera Corporation, a customer on its customer list – as an exhibit. *See* Doc. 108-2. Finally, Sidense did not file the instant papers charging Kilopass with contempt until a full year after SNR Denton disclosed to Sidense the subpoenas. Sidense's own activity, as well as its website and press releases, contradict its contention that the subpoena list should have been treated as highly confidential.

The Court therefore finds that the subpoena list was not confidential, and that provision of the subpoena list to Kilopass did not place SNR Denton or Kilopass beyond substantial compliance. The Court also finds that Kilopass' provision of the list to its sales and marketing teams likewise did not violate the protective order beyond substantial compliance. Kilopass competes for the same business as Sidense, and issuing a burdensome subpoena can cause significant damage to a company's relationship with customers or others in the industry. A sales team can inform a subpoena recipient of

---

[4] In their reply, Sidense objects to this statement as conclusory and lacking proper foundation. Cleveland's declaration states that he is Vice President of Engineering at Kilopass, and that the declaration is based on his own personal knowledge. Sidense's objection is OVERRULED.

[5] Kilopass states, and Sidense does not dispute, that, "Equivalent to a discovery request, which is not publicly filed but exchanged between the parties, if a discovery request or response is not stamped as 'Confidential,' it will not be treated as a confidential document."

7

the intentions of the issuing party. It might have been improper for Kilopass to use the subpoena list to make a non-litigation related sales call to a stranger. However, VP of Marketing Hong's deposition testimony suggests that non-litigation related sales calls were limited to those customers with whom Kilopass already had a relationship. Hong Dep. 190:17-21 ("And what did you do once you received that subpoena list?" "We know the customers that have been subpoenaed, yeah. So the ones that we have a relationship with, we contacted.")

To be clear, the Court is not ruling on whether or not the actual substance of the June 28, 2011 Cheng email was proper. That issue will be determined in Sidense's related business torts case. The Court here holds, narrowly, that Sidense has not proven by clear and convincing evidence that Kilopass violated the Stipulated Protective Order by conduct failing the substantial compliance test. Sidense's application for an order to show cause is DENIED.

## II. Motion to Compel

On March 16, 2012, Kilopass filed a motion to compel certain documents withheld by Sidense.[6] Kilopass has made several document requests for production that seek communications between Sidense and its customers regarding the patents-in-suit and the instant lawsuit. Pl.'s Mot. to Compel, Ex. A (RFPs 3, 8, 9, 10, 11, 18). Sidense has withheld a number of these documents under the "common interest privilege." The documents withheld under this privilege consist of customer presentations from Sidense to its customers, at least some of which are entitled "Customer Reassurance Presentation." *Id.* at 2. In its opposition to the motion to compel, Sidense argues that Kilopass has made threats to sue Sidense's customers, and thus Sidense and its customers share a common legal interest in defending against Kilopass' claims of infringement. The documents, Sidense claims, fall within the common interest privilege.

The common interest privilege is actually an exception to a waiver. Typically, disclosure to a third party waives privilege. The common interest doctrine provides that disclosure to a third party does

---

[6] It appears the Kilopass has, in fact, already read at least some of the disputed documents. Sidense produced them in November 2011, but then provided an "Inadvertent Production List" to request their return. Pl.'s Mot. at 1.

8

not waive privilege or work product protection where the third party shares a common interest with the disclosing party that is adverse to that of the party seeking discovery. *Elan Microelectronics Corp. v. Apple, Inc.*, 2011 WL 3443923, at *2 (N.D.Cal. Aug. 8, 2011) (Grewal, M.J.).  The common interest privilege applies where "(1) the communication is made by separate parties in the course of  a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Id.* (*citing Pulse Eng'g, Inc. v. Mascon, Inc.,* 2009 WL 3234177, at *3 (S.D. Cal. Oct. 2, 2009)).  The common interest must be a legal interest. *Id.* (*citing Walsh v. Northrup Grumman*, 165 F.R.D. 16, 18 (E.D.N.Y. 1996)).  It "does not extend to communications about a joint business strategy that happens to include a concern about litigation." *Id.*  The doctrine generally applies to cases where allied lawyers and clients work together in prosecuting or defending a lawsuit so that they may exchange information among themselves without waving the privilege. *Id. (citing United States v. Massachusetts Institute of Technology*, 129 F.3d 96, 100 (2nd Cir. 1999)).

The Court finds that it has insufficient information to rule on whether the common interest privilege applies to the documents at issue.  The Court therefore ORDERS Sidense to submit the disputed documents to the Court for *in camera* review.  The Court will rule on Kilopass' motion to compel after it has reviewed the disputed documents.

**IT IS SO ORDERED.**

Dated: April 4, 2012

SUSAN ILLSTON
United States District Judge