**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KILOPASS TECHNOLOGY INC., | No. C 10-02066 SI |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL; GRANTING DEFENDANT'S MOTION FOR WAIVER OF PRIVILEGE; ORDER UPON RECONSIDERATION** |
| v. | |
| SIDENSE CORPORATION, | |
| Defendant. | |

Currently pending before the Court are plaintiff Kilopass Technology, Inc.'s ("Kilopass") Motion to Compel Documents from defendant Sidense Corp. ("Sidense"); Sidense's Motion for Waiver of Privilege Pursuant to FRE 502(b); and Sidense's Motion for Reconsideration of the Claim Construction Order. The motions are addressed in turn.

## I. Kilopass Motion to Compel

On March 16, 2012, Kilopass filed a motion to compel certain documents withheld by Sidense. Kilopass has made several requests for document production that seek communications between Sidense and its customers regarding the patents-in-suit and the instant lawsuit. Pl.'s Mot. to Compel, Ex. A (RFPs 3, 8, 9, 10, 11, 18). Sidense has withheld a number of these documents under the "common interest privilege." The documents withheld under this privilege consist of customer presentations from Sidense to its customers. *Id.* at 2. In its opposition to the motion to compel, Sidense argues that Kilopass has made threats to sue Sidense's customers, and thus Sidense and its customers share a common legal interest in defending against Kilopass's claims of infringement. The documents, Sidense claims, fall within the common interest privilege.

The common interest privilege is actually an exception to a waiver. Typically, disclosure to a third party waives privilege. The common interest doctrine provides that disclosure to a third party does not waive privilege or work product protection where the third party shares a common interest with the disclosing party that is adverse to that of the party seeking discovery. *Elan Microelectronics Corp. v. Apple, Inc.*, 2011 WL 3443923, at *2 (N.D.Cal. Aug. 8, 2011) (Grewal, M.J.). The common interest privilege applies where "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Id.* (*citing Pulse Eng'g, Inc. v. Mascon, Inc.,* 2009 WL 3234177, at *3 (S.D. Cal. Oct. 2, 2009)). The common interest must be a legal interest. *Id.* (*citing Walsh v. Northrup Grumman*, 165 F.R.D. 16, 18 (E.D.N.Y. 1996)). It "does not extend to communications about a joint business strategy that happens to include a concern about litigation." *Id.* The doctrine generally applies to cases where allied lawyers and clients work together in prosecuting or defending a lawsuit so that they may exchange information among themselves without waving the privilege. *Id. (citing United States v. Massachusetts Institute of Technology*, 129 F.3d 96, 100 (2nd Cir. 1999)).

On April 4, 2012, the Court ordered Sidense to provide the withheld documents to the Court for *in camera* review. The Court has reviewed the documents, and finds that the common interest privilege does not apply. The documents consist of presentation materials created by Sidense following this Court's August 31, 2011 Claim Construction Order. The presentations construe the Claim Construction Order as a victory for Sidense, stating that the Court gave Sidense an "extremely favorable Markman (Claim Construction) ruling." The presentations describe the strengths of Sidense's case going forward. The documents also contain emails from Sidense's VP of Worldwide Sales and Marketing, in which he individually distributes the presentations to customers. Nothing in the presentations or emails evinces "allied lawyers and clients work[ing] together in . . . defending" the Kilopass lawsuit. *See Elan*, 2011 WL 3443923, at *2. Instead, the documents are what one might expect from marketing materials following a Claim Construction Order. The common interest privilege, therefore, does not apply.

2

## II. Sidense's Motion for Waiver of Privilege Pursuant to FRE 502(b)

On April 6, 2012, Sidense filed a letter brief seeking a declaration that Kilopass waived attorney-client privilege over a set of 1,100 documents inadvertently produced by Kilopass in discovery. Kilopass filed an opposition on April 13, 2012, arguing that because it took reasonable steps to prevent the disclosure, it did not waive its claim of privilege. *See* Fed. R. Evid. 502(b) (disclosure does not operate as waiver where "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error.") The parties do not dispute that the disclosure was inadvertent, nor that Kilopass took reasonable steps to rectify the error. The question before the Court is whether Kilopass's pre-production steps to protect the privileged documents could be considered reasonable.

The facts are as follows. Discovery in this case began in January 2011. Sidense first served Kilopass with document requests on February 23, 2011. On June 23, 2011, the parties entered into a Joint E-Discovery Agreement, which identified a list of custodians and search terms to facilitate document production. The parties met and conferred on October 12, 2011 to narrow the scope of the e-discovery search terms and agreed on a final date for electronic production as the end of October. On October 31, 2011, Kilopass produced 55,000 documents, totaling approximately 400,000 pages. Kilopass now claims that 1,139 of those documents were produced inadvertently and are actually protected by the attorney-client privilege.

Kilopass describes its screening procedures for privileged documents as follows:

> Kilopass has used a number of lawyers and law firms since its founding in 2001. As is done in most major patent litigation cases involving large scale productions, in order to screen for privileged documents, Kilopass' law firm SNR Denton, contracted with a vendor to have electronic documents searched and sorted for privilege. The vendor uses Relativity which is a hosted document review platform with analytical software tools. To this end, SNR Denton requested that Kilopass provide it with a list of lawyers and law firms used in the past. SNR Denton then provided this list of law firms and lawyers to its vendor to screen the documents electronically for potentially privileged documents. Kilopass' vendor screened the documents for privilege electronically but mistakenly did not run the search across all production batches of documents. For example, individual documents within privileged document families were not picked up in the electronic search. Also, the list of law firms provided by Kilopass did not include some law firms such [sic] Wilson Sonsini and others that had provided some early corporate work for

3

> Kilopass. After receiving the production batches from its vendor just days before the production was due, Kilopass' attorneys and paralegals conducted spot checking on various privilege search terms in various batches of documents that were queued up for production in Concordance, another electronic document review platform. However, it would appear that the vendor mistakenly did not run all of the privilege search terms provided by SNR-Denton and that the production batches that contained the large majority of the privileged documents inadvertently produced escaped manual screening due to the tight timeline for production.

Kilopass's April 13, 2012 Letter. Sidense questions the plausibility of the statement that the list of law firms provided by Kilopass to its attorneys was incomplete, as the privilege log shows that the inadvertently produced documents include communications between Kilopass and its current litigation counsel (Mark Hogge) and its patent prosecution counsel (Perkins Coie). Sidense argues that the obviously privileged nature of many of the documents illustrates the carelessness of Kilopass's screening procedures.

The Court agrees that reasonable pre-production review of the documents would have flagged their privileged nature. This is not a case where a few privileged documents in a large batch slipped through otherwise robust screening procedures. *See Datel Holdings v. Microsoft Corp.*, 2011 WL 866933, \*4 (N.D. Cal. 2011) (LaPorte, M.J.) (inadvertent disclosure excused where 177 documents were produced in a batch of 119,000 [approximately 1 in 700], and where defendant used multiple teams of lawyers to review the documents for privilege). Even where a small number of privileged documents are disclosed in a large batch, privilege may be waived where the screening procedures were particularly unreasonable. *See Conceptus, Inc. v. Hologic, Inc.*, 2010 WL 3911943, \*3 (N.D. Cal. 2010) (Alsup, J.) (privilege waived with respect to single document produced in batch of 95,000 where later counsel simply relied on its belief earlier counsel had reviewed the documents; "Plaintiff does not . . . describe any reasonable steps taken to prevent disclosure of the letter."). Here, Kilopass produced 1,139 privileged documents in a batch of 55,000, or more than 1 in 50. The high proportion of privileged documents evidences a failure on Kilopass's part to properly screen the documents. Moreover, this is not a case where only the third-party vendor made a mistake. It appears all three parties involved erred or otherwise did not execute their tasks with reasonable diligence. Kilopass failed to disclose to SNR Denton all of its prior attorneys. The third party vendor did not run the search terms against all production batches of documents. SNR Denton then conducted "spot checking on various privilege

4

search terms in various batches of documents," a process that allowed more than 1 in 50 privileged documents to escape their attention. In sum, these were not "reasonable steps to prevent disclosure." Fed. R. Evid. 502(b)(2).

Sidense's motion to waive attorney-client privilege with respect to the disclosed documents is GRANTED.

**III.    Sidense Motion for Reconsideration**

Sidense filed a motion for leave to file a motion for reconsideration. Dkt. 192. Sidense argues that following the Court's Claim Construction Order, issued on August 31, 2011, Kilopass took a contrary position before the United States Patent and Trademark Office (the "PTO") than it did before this Court during claim construction arguments. Sidense argues that the effect of these inconsistent positions is unfair advantage in concurrent proceedings and this Court should invoke the doctrine of judicial estoppel and reconsider its Claim Construction ruling in Kilopass's favor. At the parties' March 30, 2012 Case Management Conference, the Court granted Sidense's motion for leave to file and accepted the attached motion for reconsideration; Kilopass filed an opposition on April 6, 2012, and Sidense replied on April 11, 2012.

The facts are as follows. During claim construction, Kilopass argued that the terms column bitline and row wordline were interchangeable.[1] *See* Kilopass's Opening Claim Const. Br. at 5 ("[O]ne of ordinary skill in the art would understand that the current flows can be detected in both the bitline and the wordline, again showing the interchangeability of the two, and with the naming of 'bitline' or 'wordline' being simply a matter of perspective.") (emphasis added). As interchangeable terms, Kilopass proposed they be defined identically as "a line that connects to one terminal of each memory cell in a memory array." Sidense argued that a bitline was limited to a "line that connects the memory cell to the sensing circuit during the read operation," while a wordline is a "line connected to the memory cell, which is selected by the row addresses." Claim Const. Order at 8. The reason for the

---

[1]The Court noted in the Claim Construction Order that the term bitline never appears in the patent claims outside of the phrase column bitline, so bitline and column bitline are defined identically. The same is true for wordline and row wordline. *See* Claim Const. Order at 9.

parties' arguments is clear. Kilopass's Patent No. 6,940,751 (the "'751 Patent"), one of the three patents-in-suit, has its gate formed from column bitlines and its source (the doped semiconductor region) connected to the row wordline, while Sidense' allegedly infringing invention has the exact opposite configuration: it connects a gate to a wordline and the source to a bitline. *Compare* '751 Abstract and '855, Fig. 4. Therefore, Kilopass would benefit from a construction that found the terms interchangeable, as Kilopass's configuration would cover Sidense's opposite design.

The Court did not adopt Kilopass's constructions, but largely ruled in its favor. The Court noted that wordlines and bitlines always appeared orthogonal to one another in a memory array, and thus "the Court will not define two different terms to mean precisely the same thing when they are not identical." Claim Const. Order at 9. However, the Court limited the differences between bitlines and wordlines to their positions in relation to one another: it defined bitline/column bitline as "a line orthogonal to the row wordline that connects to a terminal of each memory cell in a memory array," and wordline/row wordline as "a line orthogonal to the column bitline that connects to a terminal of each memory cell in a memory array." *Id.* Kilopass derives benefit from this construction because it preserves its infringement allegation against Sidense's opposite configuration.

Concurrent with this litigation, on December 7, 2010, Sidense filed with the United States Patent & Trademark Office (the "PTO") requests for *inter partes* reexamination of Kilopass's three patents-in-suit. With respect to the '751 patent, Sidense argued, *inter alia*, that claims 1, 5, 9, and 11 were anticipated by an earlier patent, Tanaka et al. (U.S. Patent No. 5,331,181) ("Tanaka"). In Tanaka, unlike Kilopass's '751 patent, the doped semiconductor region is connected to a bitline.[2] Sidense therefore argued to the PTO that Kilopass should be "estopped from denying that wordline and bitline are arbitrary and interchangeable," as Kilopass had made its interchangeability argument to the PTO in earlier proceeding.[3] If the terms were interchangeable, according to Sidense, Tanaka anticipated '751.

---

[2] Again, '751 has its doped semiconductor region connected to a wordline, and a gate formed from a bitline.

[3] Along with filing this lawsuit, Kilopass requested reexamination of Sidense's U.S. Patent No. 7,402,855 (the "'855 Patent") in May 2010. In its request for reexamination of Sidense's patent, Kilopass argued, as it would later to this Court, that bitlines and wordlines are interchangeable terms. See Khaliq Decl., Ex. 5 at 11 (Sidense's BPAI Brief) (*citing* Request for Reexamination of '855 at 42).

6

On February 18, 2011, the PTO issued an Action Closing Prosecution without rejecting any of the '751 claims. Khaliq Decl., Ex. 4 (Feb. 18, 2011 Action). The Examiner rejected Sidense's estoppel argument and found that wordlines and bitlines are not interchangeable. *See id.* ("[I]t is well known to one of ordinary skill in the art at the time of the invention that the bitlines and wordlines have distinct functional effect on the operation of memory devices and thus are not interchangeable.") *Id.* Kilopass did not file any briefs or make any arguments during the reexamination. In short, for the purposes of reexamination, Sidense urged the PTO to adopt Kilopass's interchangeability argument, but the PTO rejected it and adopted Sidense's actual belief that the terms are not interchangeable, to Kilopass's benefit.

Sidense appealed the Examiner's decision to the PTO's Board of Patent Appeals and Interferences (the "BPAI"). In the appeal, on January 6, 2012, Kilopass did file a brief. Kilopass's appeal brief - filed after this Court's Claim Construction Order - stated:

> With respect to claims 5 and 11, the Patent Owner agrees with the Examiner that Tanaka does not show a gate formed from a column bit line. As can been seen [sic] in Figure 2(b) of Tanaka, the gates of the transistors are coupled to row wordlines. Therefore claims 5 and 11 are not anticipated by Tanaka.

*See* Hutchins Decl., Ex. 6 at 8 (Kilopass's Jan. 6, 2012 BPAI Brief). This position, as Sidense points out, is clearly inconsistent with its position before this Court during claim construction (and before the PTO during reexamination of '855) that the terms wordline and bitline are interchangeable. Sidense argues that Kilopass is deriving unfair advantage from its inconsistent positions, and therefore the Court should invoke the doctrine of judicial estoppel, reconsider its Claim Construction, and construe the terms wordline and bitline as Sidense proposed. Sidense also argues that Kilopass's argument to the BPAI is a clear disavowal of claim scope. Kilopass responds, *inter alia*, that it "simply agree[d] with the Examiner as to what the prior art Tanaka reference shows." Kilopass's Opp. to Sidense's Mot. for Recon., at 4. Kilopass also argues that judicial estoppel is inappropriate here, because the reexamination appeal is ongoing.

Judicial estoppel is an equitable doctrine invoked by a court at its discretion to prevent improper use of judicial machinery. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). It is a doctrine "that is intended to protect the integrity of the judicial process by preventing a litigant from playing fast and

7

loose with the courts." *Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004). The Supreme Court set forth the three-part test for judicial estoppel in *New Hampshire v. Maine*:

> First, a party's later position must be clearly inconsistent with its earlier position.
>
> Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.
>
> Third, courts ask whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

532 U.S. at 750-51. The Supreme Court added that these three factors "do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Id.* The Ninth Circuit has stated that despite the name *judicial* estoppel, the doctrine applies where the inconsistent statements were made in a prior administrative proceeding. *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 604 (9th Cir. 1996) (applying the doctrine where prior statements were made in workers' compensation proceeding).

Regarding disavowal of claim scope, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution. *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008). "A patentee could do so, for example, by clearly characterizing the invention in a way to try to overcome rejections based on prior art." *Id.* (*citing Alloc v. Int'l Trade Comm'n*, 342 F.3d 1361, 1372 (Fed. Cir. 2003) (finding the patentee expressly disavowed floor paneling systems without "play" because the applicant cited the feature of play during prosecution to overcome prior art)). "Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers." *Spectrum Intern., Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998). "This principle applies with equal force to arguments made by a patentee to sustain the patentability of claims during reexamination." *Id. (citing Cole v. Kimberly-Clark*, 102 F.3d 524, 532 (Fed. Cir. 1996) ("We also believe the district court correctly interpreted the prosecution history to require that the 'perforation means' limitation cannot be construed to include ultrasonic bonded seams. Cole surrendered ultrasonic bonded seams in her requests for reexamination.")

8

At the same time, the Federal Circuit requires that "the alleged disavowing statements to be both so clear as to show reasonable clarity and deliberateness, and so unmistakable as to be unambiguous evidence of disclaimer." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003) (*citing Northern Telecom Ltd. v. Samsung Electronics Co., Ltd.*, 215 F.3d 1281, 1294 (Fed. Cir. 2000) (declining to apply doctrine because the infringer had not shown "that the patentees – with reasonable clarity and deliberateness – defined 'plasma etching' as excluding ion bombardment.")).

Here, the Court finds that applying the doctrine of judicial estoppel is inappropriate at this stage. The Court agrees that Kilopass has taken inconsistent positions with the BPAI and this Court. Kilopass argued to this Court that the terms bitline and wordline are interchangeable. *See* Kilopass's Opening Claim Const. Br. at 5 - 20 (stating the terms are interchangeable 11 times) (for example, "[O]ne of ordinary skill in the art would understand that the current flows can be detected in both the bitline and the wordline, again showing the interchangeability of the two, and with the naming of 'bitline' or 'wordline' being simply a matter of perspective."). After the Court issued its August 31, 2011 Claim Construction Order that largely agreed that wordlines and bitlines are interchangeable, as long as they are orthogonal, Kilopass switched positions to overcome prior art by focusing on the difference between bitlines and wordlines. *See* Kilopass's Jan. 6, 2012 BPAI Brief, at 8 ("With respect to claims 5 and 11, the Patent Owner agrees with the Examiner that Tanaka does not show a gate formed from a column bit line. As can been seen [sic] in Figure 2(b) of Tanaka, the gates of the transistors are coupled to row wordlines. Therefore claims 5 and 11 are not anticipated by Tanaka.") These clearly inconsistent positions satisfy at least the first prong for exercising judicial estoppel set forth by the Supreme Court. *New Hampshire*, 532 U.S. at 750-51. However, the Court declines to exercise its discretion at this juncture because of the incomplete nature of the proceedings before the BPAI. In its appeal before the BPAI, Sidense has set forth the mirror image of the argument it makes here. There, Sidense argues that the Examiner erred by not considering the terms interchangeable. *See* Khaliq Decl., Ex. 5 at 11 (Sidense's BPAI Brief). Here, Sidense asks this Court to reconsider its finding that the terms are largely interchangeable. Applying judicial estoppel and accepting Sidense's proposed terms here risks the possibility that both this Court and the PTO will switch their own inconsistent positions, leaving these concurrent proceedings in the same incongruous state, though this time, unfairly benefitting Sidense.

9

Nor is the Court convinced that Sidense's proposed definitions of the terms is correct.[4] The Court therefore declines to exercise its discretion to invoke judicial estoppel.

The Court does find that Kilopass has clearly disavowed the claim scope of '751. Kilopass explicitly argued in its January 6, 2012 brief to the BPAI that "Patent Owner agrees with the Examiner that Tanaka does not show a gate formed from a column bit line. As can been seen [sic] in Figure 2(b) of Tanaka, the gates of the transistors are coupled to row wordlines. Therefore claims 5 and 11 are not anticipated by Tanaka." *See* Kilopass's Jan. 6, 2012 BPAI Brief, at 8. This is a clear and unmistakable disavowal of a claim scope that would include gates of transistors that are coupled to row wordlines. *See Computer Docking*, 519 F.3d at 1377.

Kilopass's argument that it was "simply agreeing" with the Examiner is unavailing. It is true that Kilopass was silent during the reexamination, and that silence alone cannot constitute disavowal of claim scope. *See Salazar v Procter & Gamble Co*, 414 F.3d 1342, 1345 (Fed. Cir. 2005) ("[A]n applicant's silence regarding statements made by the examiner during prosecution, without more, cannot amount to a 'clear and unmistakable disavowal' of claim scope.'"). However, in the BPAI appeal, Kilopass explicitly agreed with - and thereby adopted - the Examiner's position, a position that was directly contradictory to Kilopass's position before this Court during claim construction. Kilopass showed the "clarity and deliberateness" required for claim scope disavowal. *See Omega Eng'g, Inc,* 334 F.3d at 1325-26. Nor can Kilopass's argument that it set forth other distinguishing characteristics between Tanaka and '751 protect it from claim scope disavowal. *See* Kilopass' Opp. at 4. "[A] disavowal, if clear and unambiguous, can lie in a single distinction among many." *Computer Docking,* 519 F.3d at 1377. Finally, Kilopass's argument that it is Sidense, not Kilopass, that has maintained inconsistent positions is specious. Kilopass states that "during the reexamination of the '751 patent, contrary to its sworn previous positions in the '855 reexamination, Sidense attempted to argue that the

---

[4]As noted in the Claim Construction Order, Sidense's proposed definitions do not relate only to where the wordlines and bitlines are connected to each memory cell, "but more specifically places them within an external structure and operating procedure. Defendant is contended to have infringed claims regarding the internal workings of memory cells and the memory arrays containing such cells, not external structures and operating procedures." Claim Const. Order at 9. Sidense's proposed definitions also contain highly technical terms such as "sensing circuit," that themselves are nowhere defined. Whatever Kilopass' activity before the PTO, the flaws in Sidense's constructions remain.

10

terms 'rowline' [sic] and 'wordline' were interchangeable."[5] Kilopass' Opp. at 3. However, Sidense was quite clearly making the interchangeability argument only in the context of estoppel, reiterating Kilopass's earlier argument to prevent Kilopass from benefitting from inconsistent positions. *See* Khaliq Decl., Ex. 4 (Action Closing Prosecution) ("[Sidense's] request states . . . because [Kilopass] admits and is estopped from denying that the terms 'wordline' and 'bitline' are arbitrary and interchangeable, lines 27 in Figure 3 of Tanaka can be viewed as wordlines.") Sidense was not arguing that, in actuality, bitlines and wordlines are interchangeable.

In conclusion, the Court will maintain the Claim Construction Order as is, but considers Kilopass to have disavowed coverage of claims where the gates of the transistors are coupled to row wordlines.

## CONCLUSION

Kilopass's motion to compel documents related to presentations created by Sidense for its customers following the Claim Construction Order is GRANTED. Sidense's motion for waiver of attorney-client privilege over documents inadvertently produced by Kilopass is GRANTED. Regarding Sidense's motion for reconsideration, the Court denies Sidense's request to reconsider the Claim Construction Order, but considers Kilopass to have disavowed coverage of claims where the gates of transistors are coupled to row wordlines.

Dated: May 1, 2012

SUSAN ILLSTON
United States District Judge

---

[5]The Court assumes Kilopass meant to write "bitline" instead of "rowline," as the word rowline has never been used by either party.

11