# Exhibit A

Rachel Repka (CA Bar No. 248331)
rachel.repka@snrdenton.com
Imran A. Khaliq (CA Bar No. 232607)
imran.khaliq@snrdenton.com
**SNR Denton US LLP**
1530 Page Mill Road, Suite 200
Palo Alto, CA 94304-1125
Telephone: (650) 798-0300
Facsimile: (650) 798-0310

Mark L. Hogge (*Pro Hac Vice*)
mark.hogge@snrdenton.com
Shailendra K. Maheshwari (*Pro Hac Vice*)
shailendra.maheshwari@snrdenton.com
**SNR Denton US LLP**
1301 K Street, NW, Suite 600
Washington, DC 20004
Telephone: (202) 408-6400
Facsimile: (202) 408-6399

*Attorneys for Plaintiff*
KILOPASS TECHNOLOGY, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| KILOPASS TECHNOLOGY, INC., a California Corporation,<br><br>           Plaintiff;<br><br>SIDENSE CORPORATION, a Canadian Corporation,<br><br>           Defendant. | Case No. 3:10-cv-02066 SI<br><br>**KILOPASS TECHNOLOGY, INC.'S MOTION FOR RECONSIDERATION OF COURT'S ORDER ON CLAIM SCOPE DISAVOWAL**<br><br>Room:     10, 19th Floor<br>Judge:     Hon. Susan Illston |

**TABLE OF CONTENT**

I.   INTRODUCTION ........................................................................................................1

II.  FACTS........................................................................................................................2

III. LEGAL STANDARDS ..............................................................................................6

IV.  ARGUMENT..............................................................................................................6

    A.   Kilopass' Recently Filed Supplemental Statement To The PTO Requires Reconsideration Of The Court's Order As It Clarifies Its Position On The Patentability Of Claims Of The '751 Patent Over Tanaka ........................................................................................................6

    B.   In View of Kilopass' Supplemental Statement To The PTO, As Matter Of Law, Kilopass Cannot Be Found To Have Clearly Disclaimed Subject Matter ....................................................................................7

V.   CONCLUSION ........................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
   350 F.3d 1365 (Fed. Cir. 2003) ............................................................................................... 9

*Amgen v. Hoeschst Marion Roussel Inc.*,
   314 F.3d 1313 (Fed. Cir. 2003) ............................................................................................... 7

*Chimie v. PPG Indus.*,
   402 F.3d 1371 (Fed. Cir. 2005) ............................................................................................... 8

*Cybor Corp. v. FAS Techs., Inc.*,
   138 F.3d 1448, 1458, 46 U.S.P.Q.2D (BNA) 1169, 1175-76 .................................................. 9

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
   192 F.3d 973 (Fed. Cir. 1999) ................................................................................................. 8

*Eolas Techs., Inc. v. Microsoft Corp.*,
   399 F.3d 1325 (Fed. Cir. 2005) ............................................................................................... 9

*Martek Biosciences Corp. v. Nutrinova Inc.*,
   579 F.3d 1363 (Fed. Cir. 2009) ............................................................................................... 7

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
   357 F.3d 1340 (Fed. Cir. 2004) ............................................................................................... 8

*N. Telecom Ltd. v. Samsung Elecs. Co.*,
   215 F.3d 1281 (Fed. Cir. 2000) ........................................................................................... 8, 9

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) ........................................................................................... 7, 8

*Pall Corp. v. PTI Techs. Inc.*,
   259 F.3d 1383 (Fed. Cir. 2001) ............................................................................................... 8

*Purdue Pharma L.P. v. Endo Pharms., Inc.*,
   438 F.3d 1123 (Fed. Cir. 2006) ............................................................................................... 8

*Rheox, Inc. v. Entact, Inc.*,
   276 F.3d 1319 (Fed. Cir. 2002) ............................................................................................... 8

*Sunrace Roots Enterprise Co. v. SRAM Corp.*,
   336 F.3d 1298 (Fed. Cir. 2003) ............................................................................................. 10

**OTHER AUTHORITIES**

37 C.F.R. § 1.985(A) ...................................................................................................................... 5

Local Rule 7-9 ................................................................................................................................ 1

Kilopass hereby brings this motion for reconsideration under Civ. Local Rule 7-9 from the Court's Order dated May 1, 2012 (Dkt. No. 224) regarding a finding by the Court that Kilopass disavowed certain claim scope.

## I.   INTRODUCTION

On May 1, 2012, this Court issued an Order finding that Kilopass' statement in an appeal brief submitted in the reexamination of U.S. Pat. No. 6,940,751 ("the '751 patent") patent agreeing with the Examiner that the Tanaka prior art reference does not show a gate formed from a column bitline (as it pertains to dependent claims 5 and 11), resulted in a "clear and unmistakable disavowal of claim scope that would include gates of transistors that are coupled to row wordlines." (Dkt. No. 224 at 10). This order was entered before the reexamination of the '751 patent was complete on appeal.

However, new facts and evidence have recently been entered at the Patent Office in connection with Sidense's appeal of the reexamination of the '751 patent, clarifying Kilopass' position on the scope of the claims and its distinctions over the Tanaka reference. Kilopass' recently entered filing at the Patent Office puts to rest any question of whether Kilopass is deriving an unfair benefit from inconsistent positions before this Court or the PTO. In a supplemental paper filed with the PTO, Kilopass has made it clear that Tanaka's disclosure of row wordlines coupled to a gate is <u>not a distinction</u> over the '751 patent claims.

Thus, in view of the more developed record at the PTO, Kilopass respectfully asks this Court to reconsider its position on claim scope disavowal. There are a number of reasons that support why the Court should reconsider its Order.

First, in order to find a clear and unmistakable disavowal of claim scope, which would be inconsistent with the Court's own claim construction Order, the Court must consider the totality of the prosecution history, not just an isolated statement made in connection with dependent claims 5 and 11. The record of argument before the PTO clearly shows that Kilopass is distinguishing the independent claims on the basis of other factors, not the position of the gate in connection with wordlines or bitlines. Thus, there can be no clear disavowal of

clam scope for independent claims 1 and 9 when the statement in question was made in connection with dependent claims 5 and 11.

Second, Kilopass' supplemental statement with the PTO has revoked any argument or indication that Kilopasss would agree with the examiner that Tanaka's configuration of gates connected to wordlines is a meaningful distinction over the claims, for it is not.  Since filing the appeal brief in question, Kilopass has filed a supplemental statement with the PTO informing the Patent Ofice that the Court's Claim Construction order governs the interpretation of the claims and that the PTO should not distinguish Tanaka over the claims of the '751 patent on the basis of the feature in Tanaka showing gates connected to wordlines instead of bitlines.  For purposes of the claim scope, claim construction or interpretation of the claims over the prior art, Kilopass has now made it very clear that this is not a meaningful distinction.  Accordingly, in view of the incomplete record at the PTO and the non-finality of the decision of the Patent Office pending appeal, Kilopass cannot be said to have clearly and unmistakably disavowed claim coverage that is consistent with this Court's Claim Construction Order.

Finally, the Court's Order, which states: "the Court denies Sidense's request to reconsider the Claim Construction Order, but considers Kilopass to have disavowed coverage of claims where the gates of transistors are coupled to row wordlines," is ambiguous. As it stands, the alleged disavowal (which occurred with respect to dependent claims 5 and 11) cannot, and should not be applied to other claims or other patents as a matter of law.  However, the Court's Order is not clear on this aspect.

Accordingly, for the reasons discussed below, Kilopass respectfully urges the Court to reconsider its position on claim scope disavowal.

**II.   FACTS**

1. Kilopass has asserted the following claims against Sidense in this litigation:  claims 1, 2, 3, 5, 6, 9, 10, 12 and 14 of U.S. Pat. No. 6,940,751 ("the '751 patent); claims 1, 2, 7, 8, 12 and 14 of U.S. Pat. No. 6,777,757 ("the '757 patent"); and claims 1,3,5,6 of U.S. Pat No. 6,856,540 ("the '540 patent")

2. Claims 1, 5, 9 and 11 of the '751 patent read as follows:

1. A programmable memory cell useful in a memory array having column bitlines and row wordlines, the memory cell comprising: a transistor having a gate, a gate dielectric between the gate and over a substrate, and first and second doped semiconductor regions formed in said substrate adjacent said gate and in a spaced apart relationship to define a channel region therebetween and under said gate; and wherein the second doped semiconductor region of the transistor is connected to one of said row wordlines, and wherein said gate dielectric is formed such that the gate dielectric is more susceptible to breakdown near the first doped semiconductor region than said second doped semiconductor region.

5. The memory cell of claim 1 wherein said gate is formed from one of said column bitlines.

9. A programmable memory array comprising a plurality of row wordlines, a plurality of column bitlines, and a plurality of memory cells at respective crosspoints of the row wordlines and column bitlines, each of the memory cells comprising: a transistor having a gate, a gate dielectric between the gate and over a substrate, and first and second doped semiconductor regions formed in said substrate adjacent said gate and in a spaced apart relationship to define a channel region therebetween and under said gate, the gate being formed from one of said column bitlines; and wherein the second doped semiconductor region of the transistor is connected to one of said row wordlines, said gate dielectric is formed such that the gate dielectric is more susceptible to breakdown near the first doped semiconductor region than said second doped semiconductor region.

11. The memory array of claim 9 wherein said column bitlines are connected to said gate by a column bitline segment.

3. On November 24, 2010, Sidense requested the *inter-partes* reexamination of the '751 patent, arguing *inter alia*, that claims 1, 5, 9 and 11 of the '751 patent were anticipated by U.S. Patent No. 5,331,181 ("Tanaka"). In this request, Sidense asked the PTO to adopt "the broadest reasonable interpretation" of the '751 patent terms "wordline" and "bitline" to mean that such terms were arbitrary and interchangeable. (*See* Khaliq Decl., Ex. A, '751 patent Reexamination Request, dated 12/16/10 at 11-12)("the Examiner can, and for several reasons should, adopt what the Owner has previously asserted that those terms mean, i.e., that the paired terms 'wordlines' and 'bitlines' (and also 'row' and 'column') are arbitrary and interchangeable.").

4. On August 31, 2011, the Court construed the terms as follows:

- **Bitline** and **column bitline** are defined identically as: "a line orthogonal to the row wordline that connects to a terminal of each memory cell in a memory array."

- **Wordline** and **row wordline** are defined identically as: "a line orthogonal to the column bitline that connects to a terminal of each memory cell in a memory array."

5. In the Court's Claim Construction Order, the Court noted that that Sidense "argues that plaintiff's patent claims are limited to memory cells where the bitline is connected to the gate and the wordline is connected to the source. However, defendant's proposed constructions do not merely relate to where the wordlines and bitlines are connected to each memory cell, but more specifically places them within an external structure and operating procedure. Defendant is contended to have infringed claims regarding the internal workings of memory cells and memory arrays containing such cells, not external structures and operating procedures." (Dkt. No. 147 at 9).

6. On February 18, 2011, the USPTO issued an Action Closing Prosecution, rejecting Sidense's "interchangeability" estoppel argument finding that the Tanaka reference did not anticipate claims 1, 5, 9 and 11 because Tanaka disclosed the second doped semiconductor region connected to a bitline and a gate connected to a wordline.  (Khaliq Decl., Ex. B, Action Closing Prosecution at 4-8).

7. On August 22, 2011, Sidense filed a Appeal from this office action on the basis of the Examiner's "refusal to adopt rejections of claims 1, 5, 9 and 11 as anticipated by Tanaka." On October 24, 2011, Sidense filed its appeal brief arguing the Examiner erred by refusing to consider the "interchangeability" argument for these terms in order to consider Tanaka as an anticipating reference. (Khaliq Decl., Ex. C, Sidense's Appeal Brief at 10-17).

8. On January 6, 2012, Kilopass filed a responsive appeal brief. With respect to claim 1 of the '751 patent, Kilopass stated:

> In the Statement of Reasons for Patentability and/or Confirmation as set forth in the Right of Appeal notice mailed July 22, 2011, the Examiner indicated that claim 1 was patentable because Tanaka, U.S. Patent No. 5,331,181 (hereinafter "Tanaka"), didn't disclose at least the limitation of "the second doped semiconductor region of the transistor is connected to one of said row wordlines." While the Patent Owner agrees with the Examiner that Tanaka does not disclose each and every feature of claim 1, it is respectfully submitted that there is another feature that is not disclosed in Tanaka. Specifically, nothing in Tanaka discloses a memory cell with a gate dialectric that is "more susceptible to breakdown **near** the first doped semiconductor region that the second doped semiconductor region."

(emphasis added).  (Khaliq Decl., Ex. D, Respondent's Appeal Brief at 6-8).

For claims 1 and 9 Kilopass argued over Tanaka on the basis of the "location of the susceptibility of the gate dialectric." (*Id.* at 8).  As for dependent claims 5 and 11, Kilopass' stated:

> With respect to claims 5 and 11, the Patent owner agrees with the Examiner that Tanaka does not show a gate formed from a column bit line. As can be seen in Figure 2(b) of Tanaka, the gates of the transistors are coupled to row wordlines.  Therefore claims 5 and 11 are not anticipated by Tanaka.  (*Id.* at 8).

9. On March 23, 2012, Sidense's filed a motion for reconsideration with this Court asking the Court to reconsider it constructions of the terms "wordline" and "bitline" in view of the '751 patent reexamination file history.  Sidense argued that judicial estoppel mandated a change in construction because Kilopass agreed with the examiner that the configuration Tanaka whereby the wordlines are connected to a gate was inconsistent with its position before this Court arguing that the terms "wordline" and "bitline" were interchangeable. (Dkt. No. 192).

10. After briefing was complete, on May 1, 2012, the Court issued an Order on Sidense's motion for reconsideration, holding:

> The Court does find that Kilopass has clearly disavowed the claim scope of the '751.  Kilopass explicitly argued in its January 6, 2012 brief to the BPAI that "Patent Owner agrees with the Examiner that Tanaka does not show a gate formed from a column bit line.  As can be seen [sic] in Figure 2(b) of Tanaka, the gates of the transistors are coupled to row wordlines. Therefore claims 5 and 11 are not anticipated by Tanaka."  (Dkt. No. 224 at 10).

11. On May 2, 2012, Kilopass filed a statement under 37 C.F.R. § 1.985(A) Concerning Ongoing Litigation Activity and Supplement To The Respondent's Brief to Correct An Error Made Without Deceptive Intent.   (Khaliq Decl. Ex. E, Kilopass' 5/2/12 Supplemental Statement).   In this statement filed with the patent office, Kilopass makes clear that it is not distinguishing claims 5 and 11 over Tanaka on the basis of the fact that Tanaka does not show a gate formed from a column bit line.  (*Id.* at 1).   In the supplemental statement, Kilopass states:

> The Patent Owner submits that these terms in the '751 patent should be construed in a manner consistent with the Judge's claim construction

- 5 -

KILOPASS' MOTION FOR RECONSIDERATION                                    CASE NO. 3:10-cv-02066 SI

> order. Claims 5 and 11 are allowable by virtue of their dependency on Claims 1 and 9 respectively and not because of any interpretation of the terms "bitline" or "wordline."
>
> …
>
> For the record, Kilopass has been consistent in its position that the terms bitline and wordline are interchangeable. To the extent that the statement in the previously submitted Respondent brief is interpreted to mean that [sic] [the] reason claims 5 and 11 are patentable is because the Tanaka reference does not show gates formed by column bitlines, and is inconsistent with the position taken by the Respondent in the related litigation, this statement in error is clearly wrong. However, such a mistake is understandable given the complexity of the situation where there is ongoing litigation and where the terms "bitline" and "column bitline", and "wordline" and "row wordline" have been construed by Judge Illston as a matter of law.
>
> ...
>
> For the record, Respondent does not agree with the Examiner that Tanaka does not show a gate formed from a column bitline. While it is true that Figure 29 of Tanaka discloses the gates of the transistors are coupled to row wordlines. Respondent does not agree that that is a distinction from the claims. The '751 claims absolutely cover gates of transistors coupled to row wordlines in accordance with the claim construction of Judge Illston. Rather, claims 5 and 11 are not anticipated by Tanaka because claims 1 and 9 are not anticipated by Tanaka.

## III. LEGAL STANDARDS

Under Civ. L.R. 7-9, a party may file a motion for leave to file a motion for reconsideration at any time before final judgment if: "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought . . [or] [t]he emergence of new material facts or a change of law occurring after the time of such order." (Civ. L.R. 7-9 (b)(1)-(2)).

## IV. ARGUMENT

### A. Kilopass' Recently Filed Supplemental Statement To The PTO Requires Reconsideration Of The Court's Order As It Clarifies Its Position On The Patentability Of Claims Of The '751 Patent Over Tanaka

Kilopass' motion for reconsideration is based on the emergence of new facts since the Court's entry of the Order finding that Kilopass had disclaimed subject matter of the claims of the '751 patent. Specifically, Kilopass submits that the reexamination of the '751 patent is under appeal and that Kilopass has submitted a statement after its appeal brief to the PTO clarifying that it is not distinguishing claims 5 and 11 over the Tanaka reference on the basis of an interpretation of its

claims that would cover *only* gates connected to column bitlines and a second doped semiconductor region connected to row wordlines. (*See supra,* Facts, ¶ 11).

The statement in question relied upon by the Court to find a "clear disavowal" was based on a statement by Kilopass accepting the Examiner's arguments that Tanaka did not anticipate dependent claims 5 and 11 because the gates in Tanaka are coupled to row wordlines. However, Kilopass did not distinguish claims 1 and 9 on this basis and clearly argued that Tanaka did not anticipate those claims because "nothing in Tanaka discloses a memory cell with a gate dialectric that is 'more susceptible to breakdown **near** the first doped semiconductor region than the second doped semiconductor region.'" (Khaliq Decl., Ex. D, Respondent's Appeal Brief at 6).  *See Martek Biosciences Corp. v. Nutrinova Inc.,* 579 F.3d 1363 (Fed. Cir. 2009)(An applicant does not clearly and unmistakably disavow a particular feature when the applicant distinguishes the prior art on alternative grounds that are unrelated to the way the feature is used in the prior art reference).

In order to clarify that Kilopass is not attempting to benefit from the Examiner's interpretation of Tanaka and the rowline and bitline configuration as they pertain to connecting to either a gate, drain or source, and to avoid any issue that Kilopass is attempting to benefit from inconsistent positions, Kilopass has filed a supplemental statement with the PTO stating that it is <u>not</u> adopting the Examiner's position that Tanaka does not show a gate formed by a column bitline. (Facts, ¶ 11). Kilopass has clarified that while Tanaka discloses that gates of the transistors are coupled to row wordlines, Kilopass does not agree that this fact is a distinction from the claims of the '751 patent. (Khaliq Decl., Ex. E, Supplemental Statement at 2-3).  Rather, the '751 patent, in accordance with the Court's Claim Construction Order covers gates of transistors coupled to row wordlines. (*Id.*).

### B. In View of Kilopass' Supplemental Statement To The PTO, As Matter Of Law, Kilopass Cannot Be Found To Have Clearly Disclaimed Subject Matter

The prosecution history may not be used to infer the intentional narrowing of a claim absent the applicant's clear disavowal of claim coverage. *Amgen v. Hoeschst Marion Roussel Inc.,* 314 F.3d 1313, 1327 (Fed. Cir. 2003).   To be given effect, such a disclaimer must be "clear and unmistakable." *Omega Eng'g, Inc. v. Raytek Corp*., 334 F.3d 1314, 2003 (Fed. Cir. 2003). Specifically, "a patentee may limit the meaning of a claim term by making a clear and unmistakable

disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006). A patentee could do so, for example, by clearly characterizing the invention in a way to try to overcome rejections based on prior art. *See, e.g., Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) (limiting the term "transmitting" to require direct transmission over telephone line because the patentee stated during prosecution that the invention transmits over a standard telephone line, thus disclaiming transmission over a packet-switched network).

The doctrine of prosecution disclaimer "protects the public's reliance on definitive statements made during prosecution" by "precluding patentees from recapturing through claim interpretation specific meanings [clearly and unmistakably] disclaimed during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1323-24 (citing in part *Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 220-21, 61 S. Ct. 235, 85 L. Ed. 132, 1941 Dec. Comm'r Pat. 802 (1940)) (bracketed material added). Claims should not be construed "one way in order to obtain their allowance and in a different way against accused infringers." *Chimie v. PPG Indus.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (citation omitted).

However, it is the "totality of the prosecution history" which informs the disavowal inquiry. *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1326 (Fed. Cir. 2002). Courts should assess whether a patentee relinquished a particular claim construction based on the totality of the prosecution history, which includes amendments to claims and arguments made to overcome or distinguish references. *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999) ("Because it is the totality of the prosecution history that must be assessed, not the individual segments of the presentation made to the Patent and Trademark Office by the applicant, it is irrelevant whether Elkay relinquished this potential claim construction in an amendment to the claim or in an argument to overcome or distinguish a reference.").

Moreover, prosecution disclaimer does not apply to an ambiguous disavowal. *See N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1293-95 (Fed. Cir. 2000) (holding that prosecution disclaimer did not "support the judicial narrowing of a clear claim term" because the inventors' statements were amenable to multiple reasonable interpretations); *Pall Corp. v. PTI Techs. Inc.*, 259

F.3d 1383, 1393-94 (Fed. Cir. 2001) (remanding because the scope of disclaimer over the prior art reference was ambiguous), vacated on other grounds, 535 U.S. 1109, 122 S. Ct. 2324, 153 L. Ed. 2d 152 (2002). Prosecution disclaimer does not apply, for example, if the applicant simply describes features of the prior art and does not distinguish the claimed invention based on those features. *See Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1337 (Fed. Cir. 2005). And if the specification expressly defines a claim term and "remarks made to distinguish claims from the prior art are broader than necessary to distinguish the prior art, the full breadth of the remark is not 'a clear and unambiguous disavowal of claim scope as required to depart from the meaning of the term provided in the written description.'" *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373 (Fed. Cir. 2003) (quoting *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 833 (Fed. Cir. 2003)).

For example, in *Northern Telecom v. Samsung*, the Federal Circuit considered whether prosecution history disclaimer should apply to claims of the asserted patent directed to "plasma etching" and whether the patentee disclaimed "ion bombardment etching" in view of characterizing the prior art. 215 F.3d 1281 (Fed. Cir. 2000). The district court had held that "plasma etching refers to a chemical process without excluding the non-chemical process of ion bombardment." *Id.* at 1284. On appeal, Samsung argued that the patent owner had disclaimed ion bombardment because it had characterized the claims to cover only plasma etching, in view of statements during prosecution such as: "the references . . . are concerned with a totally different process . . . In the references the plasma plays no part of the etching, being incidental. In the present invention the plasma is part of the etching process in that the etching process . . ." *Id.* at 1294. The Federal Circuit held that such statements did not amount to a clear and unmistakable disavowal:

> Again, much like the specification, this language evinces the inventors' clear focus on plasma etching. It does not explicitly call for ion bombardment; but neither does it specifically state its exclusion as part of the invention. *See, e.g., Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1458, 46 U.S.P.Q.2D (BNA) 1169, 1175-76 (en banc) (refusing to limit scope of claim language where prosecution history did not clearly call for a narrower definition).

Similar to *Northern Telecom*, it cannot be said that Kilopass has clearly and unequivocally disclaimed claim coverage that would exclude gates of transistors connected to

1  row wordlines.   Such a result from the reading of the prosecution history in view of Federal

2  Circuit authority would be erroneous.

3  First, Kilopass has specifically distinguished claims 1 and 9 of the '751 patent over

4  Tanaka based on other features that have nothing to do with the configuration of the row

5  wordlines and column bitlines and the external structures to which they happen to be connected.

6  The Court should not find that the subject matter of these claims is disclaimed by reference to a

7  statement made in connection with more narrow dependent claims.  *See e.g., Sunrace Roots*

8  *Enterprise Co. v. SRAM Corp.,* 336 F.3d 1298, 1306 (Fed. Cir. 2003) (the Federal Circuit

9  reversed the district court which found prosecution history disclaimer to limit all the claim terms

10 to a meaning of "shift actuator" that would include a cam mechanism based on a statement

11 made in connection with single claim)("the cited statement, however was not specific to method

12 claim 16 and in fact appears from  its context to relate to the apparatus claims.").

13 Second, Kilopass did not affirmatively make any arguments during the reexamination of

14 the '751 patent based on the Examiner's reasons affirming the patentability of the claims over

15 Tanaka other than agreeing with the Examiner at the appeal stage that claims 5 and 11 were not

16 anticipated because Tanaka did not show a gate formed by a column bitline.  Even though

17 Tanaka does not teach this specific configuration, Kilopass did not argue that this is the sole

18 distinction over Tanaka that would necessarily limit the coverage of *all* claims of the '751

19 patent, including independent claims 1 and 9 to a configuration whereby gates connected by row

20 wordlines would be excluded.  This is contrary to the Court's claim construction order and

21 inconsistent with the position that Kilopass has taken all along throughout the litigation that row

22 wordlines and column bitlines can be interchangeable in terms of how they are laid out in a

23 memory array.

24 Now, to make it abundantly clear that Kilopass is not seeking to benefit from any

25 inconsistency before this Court and the PTO, as noted above, Kilopass recently filed a

26 supplemental statement with the PTO explicitly informing the patent office that the distinction

27 over Tanaka based on Tanaka's configuration of the wordlines being connected to the gates is

28 not a material distinction for purposes of claim scope or validity of the claims.  Given the

ongoing appeal of the '751 patent, and the statement by Kilopass clarifying its position on the patentability of claims 5 and 11 over Tanaka, there is simply no basis at this point to find a "clear and unmistakable disavowal of claim scope that would include gates of transistors coupled to row wordlines." (*See* Dkt. No. 224).   Such an interpretation of the claims is contrary to the Court's Claim Construction Order and the full breadth of the claims as supported by the specification and prosecution history.

## V.   CONCLUSION

For the foregoing reasons, Kilopass respectfully requests that the Court grant Kilopass' motion for reconsideration and vacate the Order the holding that the Court "considers Kilopass to have disavowed coverage of claims where the gates of transistors are coupled to row wordlines." (Dkt. No. 224 at 11).   In the alternative, Kilopass respectfully requests that the Court vacate its order finding claim scope disavowal until the prosecution history record is complete on reexamination.

Dated:  May 15, 2012

Respectfully Submitted,
SNR Denton US LLP

By:   */s/ Imran A. Khaliq*
     Imran A. Khaliq
     Attorneys for Plaintiff
     KILOPASS TECHNOLOGY, INC.

# CERTIFICATE OF SERVICE

I, Jocasta Wong, hereby declare:

I am over the age of eighteen years and not a party to the within action.  My business address is SNR Denton US LLP, 1530 Page Mill Road, Suite 200, Palo Alto, California 94304.

On May 15, 2012, the following document, described as:

**KILOPASS TECHNOLOGY, INC.'S MOTION FOR RECONSIDERATION OF COURT'S ORDER ON CLAIM SCOPE DISAVOWAL**

to be served via CM/ECF by the Clerk of the Court, upon all counsel of record registered to receive electronic filing, as indicated on the Court's website, or by United States Mail, upon those parties not registered for electronic filing.

I declare under penalty of perjury that the above is true and correct.  Executed on May 15, 2012, in Palo Alto, California.

                                                /s/ *Jocasta Wong*
                                                   Jocasta Wong