KILPATRICK TOWNSEND & STOCKTON LLP
ROGER L. COOK (State Bar No. 55208)
ROBERT D. TADLOCK (State Bar No. 238479)
SARA B. GIARDINA (State Bar No. 278954)
Two Embarcadero Center Eighth Floor
San Francisco, CA  94111
Telephone:   (415) 576-0200
Facsimile:    (415) 576-0300
Email: rcook@kilpatricktownsend.com
        rtadlock@kilpatricktownsend.com
        sgiardina@kilpatricktownsend.com

ERIC M. HUTCHINS (State Bar No. 245462)
1080 Marsh Road
Menlo Park, CA  94025
Telephone:   (650) 326-2400
Facsimile:    (650) 326-2422
Email: ehutchins@kilpatricktownsend.com

Attorneys for Defendant
SIDENSE CORP.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KILOPASS TECHNOLOGY INC., | Case No. CV 10-02066 SI |
| Plaintiff, | **SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES** |
| v. | |
| SIDENSE CORP., | Date:  Nov. 30, 2012<br>Time:  9:00 am |
| Defendant. | Ctrm.:    10, 19th Floor<br>Judge:    Hon. Susan Illston |

**PUBLIC REDACTED VERSION**



# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................................1

II.  RELEVANT FACTS ..................................................................................................3

    A.   Kilopass Knew Before it Filed its Complaint that Sidense Did Not Infringe ........................................................................................................3

        1.   Sidense explained to Kilopass why Sidense did not infringe in 2005 and Kilopass refused a third-party analysis of its infringement claims ........................................................3

        2.   Kilopass' patent lawyer told Kilopass in 2006 and 2008 that Sidense did not infringe Kilopass' patents .......................4

        3.   Kilopass hired Charlie Cheng as CEO in 2008 to monopolize the market by "taking out" Sidense .................................5

        4.   Kilopass failed to conduct a meaningful pre-filing analysis of its claims ...............................................................6

    B.   Kilopass Changed Theories and Misrepresented Facts and Arguments During the Litigation to Try and Keep its Patent Infringement Claims Alive .............................................................................6

        1.   Kilopass took irreconcilable positions before this Court and the USPTO regarding "wordline" and "bitline" and attempted to thwart the Court's disavowal ruling ...................................6

        2.   Kilopass' expert jettisoned the "first doped semiconductor" doctrine of equivalents theory disclosed in Kilopass' infringement contentions but Kilopass never sought leave to amend those contentions ...............................................................................7

    C.   Kilopass Harassed Sidense's Customers During the Lawsuit.............................8

    D.   Kilopass Amended its Complaint to Allege Baseless Business Torts .................................................................................................................9

    E.   Sidense Incurred Significant Attorneys' Fees and Costs Defending Against Kilopass' Baseless Claims .................................................10

III.  THIS IS AN EXCEPTIONAL CASE UNDER THE PATENT STATUTE 35 U.S.C. § 285 ...........................................................................................10

    A.   Legal Authority .................................................................................................10

    B.   Sidense is the Prevailing Party on Kilopass' Patent Claims .............................11

    C.   This is an Exceptional Case ...............................................................................11



**TABLE OF CONTENTS**
(continued)

Page

1.   Kilopass' patent infringement claims were vexatious and unjustified ...................................................11

2.   Kilopass filed this lawsuit with subjective bad faith ..........................14

D.   Kilopass' Litigation Misconduct ...................................................16

E.   Sidense's Attorneys' Fees for Defense of Kilopass' Patent Infringement Claims Are Reasonable ...................................................18

IV.   THIS IS AN EXCEPTIONAL CASE UNDER THE LANHAM ACT – 15 U.S.C. § 1117(a) ...................................................20

A.   Legal Authority ...................................................20

B.   Sidense is the Prevailing Party on Kilopass Business Tort Claims ...................................................20

C.   This is an Exceptional Case ...................................................20

D.   Sidense is Entitled to Attorneys' Fees for Defense Against All of Kilopass' Business Tort Claims ...................................................22

E.   Sidense is Entitled to Reasonable Attorneys' Fees and Non-Taxable Costs ...................................................23

V.   PURSUANT TO ITS INHERENT AUTHORITY THE COURT SHOULD AWARD SIDENSE ITS EXPERT COSTS ...................................................24

VI.   CONCLUSION ...................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1

## TABLE OF AUTHORITIES

2

<u>Page</u>

3

**CASES**

4

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,

5

  314 F.3d 1313 (Fed. Cir. 2003)........................................................................... 13

6

*Ass'n of Mexican-American Educators v. California*,

  231 F.3d 572 (9th Cir. 2000)......................................................................... 20, 21

7

*Automated Bus. Cos. v. NEC Am., Inc.*,

8

  202 F.3d 1353 (Fed. Cir. 2000)........................................................................... 18

9

*BioResource, Inc. v. US Pharmaco Dist., Ltd.*

  2010 U.S. Dist. LEXIS 69836 (N.D. Cal. July 13, 2010)..................................... 22

10

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,

11

  393 F.3d 1378 (Fed. Cir. 2005)........................................................................... 16

12

*Cairns v. Franklin Mint Co.*,

13

  292 F.3d 1139 (9th Cir. 2002)............................................................................. 20

14

*Cel-Tech Comms. Inc. v. Los Angeles Cellular Tel. Co.*,

15

  20 Cal. 4th 163 (1999) ......................................................................................... 22

16

*Central Soya Co. v. Geo. A. Hormel & Co.*,

  723 F.2d 1573 (Fed. Cir. 1983)........................................................................... 19

17

*City of Burlington v. Dague*,

18

  505 U.S. 557 (1992) ........................................................................... 18, 19, 23

19

*Computer Docking Station Corp. v. Dell, Inc.*,

  519 F.3d 1366 (Fed. Cir. 2008)........................................................................... 11

20

*Eltech Sys. Corp. v. PPG Indus., Inc.*,

21

  903 F.2d 805 (Fed. Cir. 1990)....................................................................... 14, 16

22

*Gracie v. Gracie*,

23

  217 F.3d 1060 (9th Cir. 2000)....................................................................... 22, 23

24

*Grove v. Wells Fargo Fin. Cal., Inc.*,

  606 F.3d 577 (9th Cir. 2010)............................................................................... 23

25

*Guichard v. Universal City Studios, LLLP*,

26

  2008 U.S. Dist. LEXIS 120612 (N.D. Cal. May 7, 2008) ................................... 22

27

*Hensley v. Eckerhart*,

28

  461 U.S. 424 (1983) ............................................................................................. 18



**TABLE OF AUTHORITIES**
(continued)

Page

*Highmark, Inc. v. Allcare Health Mgm't Sys., Inc.,*
  687 F.3d 1300 (Fed. Cir. 2012)................................................................ 11, 12, 14, 15

*ICU Med., Inc. v. Alaris Med. Sys., Inc.,*
  558 F.3d 1368 (Fed. Cir. 2009)........................................................................... 17

*Kerr v. Screen Extras Guild, Inc.,*
  526 F.2d 67 (9th Cir. 1975)............................................................................ 23, 24

*Marctec, LLC v. Johnson & Johnson,*
  664 F.3d 907 (Fed. Cir. 2012).......................................................... 11, 15, 16, 24

*Mathis v. Spears,*
  857 F.2d 749 (Fed. Cir. 1988)........................................................................ 17, 18

*Morales v. City of San Rafael,*
  96 F.3d 359 (9th Cir. 1996)................................................................................ 23

*Rambus Inc. v. Infineon Techs. AG,*
  318 F.3d 1081 (Fed. Cir. 2003)........................................................................... 16

*Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.,*
  668 F.3d 677 (9th Cir. 2012)................................................................... 20, 22, 23

*Southwall Techs., Inc. v. Cardinal IG Co.,*
  54 F.3d 1570 (Fed. Cir. 1995)............................................................................ 13

*Takeda Chem. Industs., Ltd. v. Mylan Labs., Inc.,*
  549 F.3d 1381 (Fed. Cir. 2008)..................................................................... 18, 24

*Zenith Ins. Co. v. Breslaw,*
  108 F.3d 205 (9th Cir. 1997)............................................................................. 20

**STATUTES**

15 U.S.C. § 1117(a) ........................................................................................... 1, 20

35 U.S.C. § 285 ............................................................................................... passim

California Business and Professions Code § 17200.......................................... passim

Section 35(a) ......................................................................................................... 20

**OTHER AUTHORITIES**

2011 AIPLA "Report of the Economic Survey"..................................................... 19



1

## TABLE OF AUTHORITIES
(continued)

2

<u>Page</u>

3

7 Chisum on Patents § 20.03[4][c][vii][D] ................................................................. 18

4

Federal Rule of Civil Procedure 11 ............................................................... 11, 15

5

Federal Rule of Civil Procedure 26 ....................................................................... 7

6

Local Rule 3-1 and 3-2 ........................................................................................ 7

7

Local rule 3-6 ...................................................................................................... 8

8

Local Rule 7-9 ............................................................................................. 7, 17

9

Local Rule 54-5 ................................................................................................. 11

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that Defendant Sidense Corp. ("Sidense") hereby moves the Court for an order awarding Sidense its attorneys' fees and non-taxable costs under 35 U.S.C. § 285, 15 U.S.C. § 1117(a), and the Court's inherent power. This motion is noticed to be heard before Judge Susan Illston at 9:00 a.m. on November 30, 2012, in Courtroom 10 at 450 Golden Gate Avenue, San Francisco, CA 94102. This motion is based on the Points and Authorities below, the declarations filed herewith in support, the existing record in this case, any matter of which this Court takes judicial notice, and any evidence and argument presented at the hearing.

**CONCISE STATEMENT OF RELIEF**

1.     Sidense seeks its attorneys' fees and non-taxable costs in the amount of $4,217,219.22 under 35 U.S.C. § 285 because Kilopass filed and prosecuted its vexatious patent infringement claims without probable cause and also committed litigation misconduct.

2.     Sidense seeks its attorneys' fees and non-taxable costs in the amount of $428,905.26 under 15 U.S.C. § 1117(a) because Kilopass filed and prosecuted its vexatious Lanham Act False Advertising, defamation/trade libel, intentional interference with prospective economic advantage, and unfair competition claims without probable cause and also committed litigation misconduct.

3.     Sidense seeks recovery of $434,853.56 in costs incurred retaining experts to rebut Kilopass' baseless patent and business tort claims under the Court's inherent authority.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

After proposing to Kilopass' Board of Directors ███████████████ ██████████████████████████████████████, Kilopass' new CEO, Charlie Cheng, sued Sidense in a patent infringement lawsuit that was nothing more than an attempt to drain startup Sidense of resources and drive it out of business. Mr. Cheng was confident this would work, ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████. Mr. Cheng knew, or should have known, that Sidense did not infringe Kilopass' patents.

1    Mr. Cheng and Kilopass knew or should have known this because, years earlier, after

2    Kilopass contacted Sidense about these patents, Sidense provided several reasons why it did not

3    infringe – reasons that were identical to those relied on by the Court when it found several years

4    later that Sidense does not infringe. Moreover, Kilopass' patent counsel, Chun Ng, who had

5    written and prosecuted the patents, and Jack Peng, Kilopass' founder and the named inventor on

6    all three patents, had concluded, in correspondence with Kilopass' then-CEO, Bernie Aronson,

7    that Kilopass had failed to seek patent coverage of the Sidense-style memory cell because it was

8    larger than the memory cell that Kilopass chose to patent and commercialize. Kilopass' patent

9    counsel told Mr. Aronson that Sidense did not infringe the patents and neither Mr. Ng nor Mr.

10   Peng offered to explain, nor had any reason to believe, that the Sidense design that Peng had

11   rejected as inferior was equivalent to the design Kilopass preferred and patented. Indeed, Kilopass

12   never articulated a viable theory of equivalents, nor could it, since any such theory needed to

13   explain why Sidense's use of an insulator was equivalent to a semiconductor – a task that neither

14   Kilopass nor its retained expert ever undertook. Thus, even after obtaining a "favorable" claim

15   construction ruling, Kilopass' patent infringement claims were so littered with holes that the Court

16   found Sidense did not infringe three separate claim elements, each of which on their own would

17   have been sufficient to defeat Kilopass' claims.

18   Kilopass also knew or should have known that its makeweight business tort claims, which

19   Kilopass added to the lawsuit in an amended complaint, were equally baseless. For example, when

20   the Court dismissed Kilopass' defamation claim with leave to amend because of the likelihood

21   that Kilopass could amend to plead the requisite facts, Kilopass never even attempted to do so. By

22   the same token, despite the fact that all remaining claims depended upon proof of Kilopass' false

23   advertising claim – that Sidense did not have patent coverage on its 1T-Fuse™ Logic NVM IP –

24   Kilopass took this claim all the way to the doorstep of trial without even attempting to prove that

25   none of Sidense's numerous patents covered the Sidense memory cell.

26   Kilopass never should have filed this lawsuit, and never should have persisted with its

27   prosecution. Because this is an exceptional case, the Court should grant Sidense its attorneys' fees

28   and non-taxable costs, including expert fees, to recompense Sidense for having to defend against



SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES          - 2 -
CASE NO. C10-02066 SI

1   Kilopass' baseless lawsuit for more than two years.

2   **II.   RELEVANT FACTS**

3        **A.   Kilopass Knew Before it Filed its Complaint that Sidense Did Not Infringe**

4            **1.   Sidense explained to Kilopass why Sidense did not infringe in 2005 and Kilopass refused a third-party analysis of its infringement claims**

5        On November 19, 2005, Jack Peng, Kilopass' founder and former CEO and a named inventor on all three Kilopass patents asserted in this lawsuit, responded to an email from Chun Ng, Kilopass' patent lawyer at the law firm of Perkins Coie, with the subject line "Sidense PCT Application" attaching Sidense's PCT Application. Tadlock Decl., Ex. 1. Mr. Peng believed that Sidense's technology was similar to a split gate cell that Kilopass had developed in 2002 or 2003. *Id.* But, Peng explained, Kilopass chose not to implement this split gate cell in its product "because this split gate Cell is not self-aligned, so [Sidense's] practical cell size will be larger than Our 1.5T cell. ███████████████████████████████████████

███████████ *Id.* (emphasis added). That same day, Mr. Ng responded stating ████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████ *Id.*, Ex. 3.

██████████████████████████████████████

        Kilopass nevertheless wrote a letter to Xerxes Wania, President and CEO of Sidense, on November 28, 2005 informing him of the '757 and '751 patents, which were at issue in this lawsuit. Mr. Ng. requested an "assurance that Sidense's products will avoid Kilopass' patents and that you provide us with an explanation of how these products avoid the claims of those patents." *Id.*, Ex. 4. Mr. Ng did not specifically call out the '540 patent.

        On January 20, 2006, Sidense's attorney Anne Kinsman responded to Mr. Ng stating "it is our opinion that no products produced by Sidense, nor their methods of operation, fall within the scope of the claims of either the '751 or '757 patent." *Id.*, Ex. 5. Ms. Kinsman explained that the claims in these two patents

               "each require that the transistor have (1) ***first and second doped semiconductor regions*** formed in the substrate adjacent the gate; and



SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES        - 3 -
CASE NO. C10-02066 SI

(2) *a second doped semiconductor region connected to the row wordline*. In addition, claims 7 and 9 of the '751 patent and claims 1 and 8 of the '757 Patent, further require that the transistor have (3) its gate formed from one of the column bitlines. Such elements are not present in Sidense's memory cell transistors. *For at least these reasons, and without limitation, we believe Sidense's memory cell transistors do not fall within the claimed subject matter of the '751 and '757 Patents*, and we do not believe any license of these patents is necessary."

*Id.* (emphasis added).

Ms. Kinsman wrote Mr. Ng. another letter on February 22, 2006 offering to "engage in any formal process of review of Sidense's products" so that Kilopass could "satisfy itself with regard to any potential infringement of its patents. . . . Sidense would be prepared to consider a third-party examination. . . ." *Id.*, Ex. 6.  Six days later, Mr. Ng rejected Sidense's offer of a formal review of Kilopass' claims, stating "Kilopass will not agree to submit to, what is, in effect, binding arbitration of a matter of which it has insufficient information to make an informed judgment." *Id.*, Ex. 7.  There was no further correspondence between the parties about the patents until Kilopass filed its lawsuit four years later in May, 2010.

### 2. Kilopass' patent lawyer told Kilopass in 2006 and 2008 that Sidense did not infringe Kilopass' patents

Kilopass continued to monitor Sidense after these initial communications. After receiving Ms. Kinsman's January 20, 2006 letter identifying why Sidense does not infringe, Mr. Ng wrote an email to Kilopass stating, "if in fact they have eliminated the first doped region (112), then they would NOT infringe our claims literally. If that is the case, then we would have to go through a "reissue" proceeding in the patent office that may take 2 years in order to modify our claims to include the situation where there is no first doped region." *Id.*, Ex. 8 (emphasis in original).

Over two years later, on February 7, 2008, Kilopass' attorney Mr. Ng wrote an email to Craig Rawlings, another Kilopass employee, stating ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ *Id.*, Ex. 9 (emphasis added). That same day, Mr. Rawlings responded, writing "They have inter-changed the bit line with word line in the split gate bit cell since apparently we did not manage our patents in the beginning as well as we might



SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES
CASE NO. C10-02066 SI

- 4 -

1    have done. ██████████████████████████████████████████." *Id.*

2        **3.    Kilopass hired Charlie Cheng as CEO in 2008 to monopolize the
3             market by "taking out" Sidense**

4        In October, 2008, while struggling during the recession, Kilopass hired a new CEO,

    Charlie Cheng, to run the company. ████████████████████████████████
5    ████████████████████████████████████████████████████████
6    ████████████████████████████████████████████████████████
7    ████████████████████████████████████████████████████████
8    ██████████████████████████████████████████████████████████
9    ██████████████████████████████████████████████
10   ████████████████████████████████████████████████████████
11   ██████████████████████████████████████████████████████████
12   ██████████████████████████████████████████████████████████
13   ████████████████████████████████████

14       In his first presentation to Kilopass' Board of Directors in October, 2008, Mr. Cheng

15   presented a slide ██████████████████████████████████████
16   ██████████████████████████████████████████████
17   ██████████████████████████████████████████████████████████
18   ████████████████████████████████████████████
19   ██████████████████████████████████████████████████
20   ██████████████████████████████████████████████████████████
21   ██████████████████████████████████████████████████████████
22   ██████████████████████████████████████████████████████████
23   ██████████████████████████████████████████████████
24   ██████████████████████████████████████████████

25       On May 11, 2010, Sidense issued a press release stating that it had raised $5 million in

26   Series B funding. Tadlock Decl., Ex. 13. Three days later, on May 14, 2010, Kilopass filed suit

27   against Sidense alleging infringement of Kilopass' '751 patent. (Dkt. 1.) Then, on June 18, 2010,

28



SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES          - 5 -
CASE NO. C10-02066 SI

1  before Sidense responded to Kilopass' original complaint, Kilopass filed an amended complaint

2  adding allegations that Sidense infringed the '757 and '540 patents and counts for

3  defamation/trade libel, false advertising under the Lanham Act, intentional interference with

4  prospective economic advantage, and unfair competition under California Business and

5  Professions Code § 17200.

6           **4.**      **Kilopass failed to conduct a meaningful pre-filing analysis of its claims**

7        Even though Kilopass had approximately five years to analyze Sidense's technology

8  before filing suit, was aware of Sidense's arguments about why it did not infringe, and had been

9  told by its own patent lawyer that Sidense did not literally infringe, Kilopass nevertheless filed suit

10  based on theories its own expert could not defend and that Kilopass would later scramble to

11  abandon. As this Court noted in its Summary Judgment Order, "Kilopass' assertion of a new

12  theory of equivalence is ***particularly inappropriate*** in light of evidence that Kilopass has known

13  for many years that Sidense does not literally infringe its patents." (Dkt. 272 at n.8) (emphasis

14  added).

15      **B.**      **Kilopass Changed Theories and Misrepresented Facts and Arguments During the Litigation to Try and Keep its Patent Infringement Claims Alive**

16

17          **1.**      **Kilopass took irreconcilable positions before this Court and the USPTO regarding "wordline" and "bitline" and attempted to thwart the Court's disavowal ruling**

18

19        Recognizing that Sidense's technology had the opposite wordline/bitline configuration

20  from the diagrams in the patents-in-suit, Kilopass originally argued during claim construction that

21  the terms wordline and bitline were interchangeable and simply a matter of perspective. (Dkt. 113

22  at 5.) The Court largely found in Kilopass' favor, finding the only difference between the two

23  terms was their position in relation to one another. (Dkt. 272 at 9.)

24        Having persuaded the Court to adopt most of its proposed construction in an effort to prove

25  that Sidense infringed the patents-in-suit, Kilopass then took a directly contrary position before the

26  USPTO during *inter partes* reexamination of the '751 patent in order to overcome cited prior art

27  and preserve the validity of that patent. (Dkt. 224 at 5.) After Sidense brought these irreconcilable

28  positions to the Court's attention, the Court found that Kilopass had "disavowed coverage of



SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES          - 6 -
CASE NO. C10-02066 SI

1   claims where the gates of the transistors are coupled to row wordlines." (*Id.* at 11.)

2        Knowing that the Court's disavowal Order mortally wounded its infringement claims,

3   Kilopass desperately tried to reverse course at the Board of Patent Appeals and Interferences by

4   introducing new "facts" into the prosecution history and moving this Court to reconsider its

5   disavowal ruling. (Dkt. 235 at 5.) This Court refused to reconsider its ruling, stating:

> The Court finds that ***the rule does not apply where the "new material fact" is merely a party's attempt to undo a strategic position for which it has been penalized***. It was in Kilopass's interest to argue that wordlines are different from bitlines in its BPAI brief; however, after that position damaged its case in this Court, Kilopass sought to reverse its position before the BPAI.

(*Id.* at 5.) (emphasis added). The Court concluded, "[t]his type of gamesmanship is not the purpose

for which Civil Local Rule 7-9 allows for reconsideration." (*Id.* at 6.)

     Unable to convince the Court to overturn its own disavowal Order, Kilopass then

attempted to change its infringement theory in the June 1, 2012, rebuttal report of its expert Dr.

Dean Neikirk. As the Court's summary judgment order noted "[t]o avoid summary judgment on

this issue, Kilopass has introduced a new theory," which the Court rejected because it was

introduced at such a late date and would have rendered the Court's claim disavowal Order

"meaningless." (Dkt. 272 at 10).

> ### 2.    Kilopass' expert jettisoned the "first doped semiconductor" doctrine of equivalents theory disclosed in Kilopass' infringement contentions but Kilopass never sought leave to amend those contentions

     In his Rule 26 report, Kilopass' expert, Dr. Neikirk, employed an equivalency theory –

geometric, rather than electrical – that was materially different from the only theory asserted by

Kilopass more than a year before in its Patent Local Rule 3-1 and 3-2 infringement contentions.

The original theory was that both Sidense's STI and the "first doped semiconductor region"

function as a "channel stop" to prevent the flow of current in the region occupied by those

features. Tadlock Decl., Ex. 14 at Exhibit 1, p. 3. Sidense spent considerable resources preparing

its defense against this particular theory, but Dr. Neikirk could not defend it and, as a result, did

not adopt it. Instead, for the first time in his expert report served after the close of fact discovery,

Dr. Neikirk opined that Sidense infringed the "first doped semiconductor region" limitation under



SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES       - 7 -
CASE NO. C10-02066 SI

the doctrine of equivalents based on the geometric properties of Sidense's bitcell rather than the electrical properties of the "channel stop" disclosed in Kilopass' infringement contentions. *Id.*, Ex. 15 at ¶¶ 62-64. But Kilopass never sought leave to amend its infringement contentions, as required by Patent Local rule 3-6. The Court found that "Kilopass amended its infringement contentions with respect to the doctrine of equivalents far past the applicable deadlines without Court approval." (Dkt. 272 at 12.) As noted above, the Court stated that Kilopass' changing theories of equivalence so late in the litigation were "particularly inappropriate in light of evidence that Kilopass has known for many years that Sidense does not literally infringe its patents" citing to the January 20, 2006, email from Kilopass' patent counsel stating that Sidense does "NOT infringe our claims literally." (Dkt. 272 at n.8.)

**C.    Kilopass Harassed Sidense's Customers During the Lawsuit**

Kilopass also used the lawsuit as a pretext to spread fear, uncertainty, and doubt about Sidense in the marketplace. Initially, the mere fact of the litigation caused Sidense to lose customers. Moreover, Kilopass embarked on a series of statements intended to further bury Sidense under this lawsuit. Kilopass threatened Sidense's customers with lawsuits and actions at the International Trade Commission. Tadlock Decl., Ex. 16. After subpoenaing more than fifty of Sidense's customers,[1] Mr. Cheng wrote an email to all of them stating that Sidense "has refused to take responsibility for its customers' chips" and that "Sidense indicat[ed] to the court that it is its licensees who should be charged as direct infringers." *Id.*, Ex. 17. Kilopass also put out a "Litigation Update" stating that Sidense was licensing invalid intellectual property. *Id.*, Ex. 18. Lastly, Kilopass told Sidense's customers that Sidense was going bankrupt and would not be able to fulfill its indemnity obligations when Kilopass sued Sidense's customers. *Id.*, Ex. 19.[2]

---

[1] Kilopass argued that it was necessary to subpoena fifty Sidense customers to prove infringement, but Kilopass cited to *none* of the evidence it received from Sidense's customers in its expert reports or its opposition to Sidense's motion for summary judgment. These subpoenas were just another tool to harass Sidense in the marketplace.

[2] Kilopass also recently updated its website, stating it took comfort in the fact that its appeal would be heard by the Federal Circuit, which specializes in patent cases, because it is a forum where "our appeal will be heard where our evidence is understood under the law." Tadlock Decl., Ex. 20. Kilopass also noted that "Sidense has been unable to show a single US patent that covers the 1T bit cell used in their products" forgetting that it is Kilopass' burden to prove this, and that it wholly failed to do so during the litigation, resulting in Kilopass' voluntary dismissal.



### D.      Kilopass Amended its Complaint to Allege Baseless Business Torts

Kilopass amended its complaint to add claims for defamation/trade libel, false advertising under the Lanham Act, intentional interference with prospective economic advantage, and unfair competition under California Business and Professions Code § 17200. (Dkt. 38.) The Court dismissed Kilopass' defamation/trade libel claim for failure to state a claim, but gave Kilopass leave to amend noting "the likelihood that plaintiff could provide the necessary detail" to support its claim. (Dkt. 50 at 8-9.)  Despite telling the Court in its opposition that it could "readily identify numerous deterred customers and the ensuing lost sales" (Dkt. 42 at 14), Kilopass never could allege the necessary detail and did not amend its defamation/trade libel claim.

All of Kilopass' remaining tort claims depended on the Lanham Act claim, which was premised on Kilopass' allegation that Sidense falsely advertised that its 1T-Fuse™ Logic NVM IP is patented. (Dkt. 234 at ¶ 63.) While this claim required the Court to construe all of Sidense's patents (including foreign patents), Kilopass never made Sidense's patents a part of the litigation. Kilopass then tried to expand the scope of its remaining business tort claims in the Pretrial Conference Statement to include allegations and evidence that were far beyond the what it pleaded in the Third Amended Complaint. Because Kilopass continued to pursue these claims, Sidense was forced to prepare for trial on these claims, including identifying witnesses and exhibits, drafting jury instructions, drafting motions *in limine*, and objecting to all of Kilopass' pretrial disclosures.

Sidense sought to exclude most of Kilopass' evidence in motions *in limine*. In an effort to keep these claims alive, Kilopass made several misrepresentations at the pretrial conference regarding the record in this case. The Court recognized some of them in its Order on Sidense's motions *in limine*, noting that Kilopass' counsel had asserted that Mr. Kurjanowicz admitted during his deposition that Sidense's patents do not cover its technology, but finding that a review of Mr. Kurjanowicz's testimony did not support that claim. (Dkt. 323 at 3-4.)[3]

---

[3] These misrepresentations were only the tip of the iceberg. As detailed in a letter sent to Kilopass' counsel shortly after the pretrial conference, Sidense identified additional misrepresentations and asked Kilopass to identify support for its statements in the record. Tadlock Decl., Ex. 21. Kilopass never substantively responded. *Id.*, Ex. 22.



SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES                                              - 9 -
CASE NO. C10-02066 SI

1   Then, within hours of the Court granting most of Sidense's motions *in limine* (and

2   excluding virtually all of Kilopass' proposed evidence), Kilopass filed a motion to voluntarily

3   dismiss without prejudice, seeking to achieve a stay by other means (since the Court had rejected

4   its previous request for a stay) and keep its claims alive for another day rather than have the Court

5   enter judgment against it. (Dkt. 325).[4]

### E. Sidense Incurred Significant Attorneys' Fees and Costs Defending Against Kilopass' Baseless Claims

The original agreement between Sidense and its counsel at Kilpatrick Townsend and

Stockton ("KTS") ████████████████████████████████

████ Cook Decl., ¶ 18. Before being hired, KTS presented Sidense with a budget of

approximately $5.4 million to defend against Kilopass' original complaint (which included only

an infringement claim of a single patent). Tadlock Decl., Ex. 25., at Tab 4. In April, 2011, Sidense

and KTS renegotiated their agreement, ████████████████████████████

████████████████████████████████████. *Id.*, Ex. 26. On October 17, 2011, Sidense

announced a Series C round of funding in the amount of $5.6 million. *Id.*, Ex. 27.

Sidense seeks attorneys' fees in this case as though it would have been paid for the total

hours worked at a 10% discount off of its fees as was originally agreed to between the parties.

With the deductions described in the Declaration of Roger L. Cook, submitted herewith, Sidense

seeks $4,617,000 in attorneys' fees. Sidense additionally seeks non-taxable costs, including expert

fees, in the amount of $619,912.04.

## III. THIS IS AN EXCEPTIONAL CASE UNDER THE PATENT STATUTE 35 U.S.C. § 285

### A. Legal Authority

35 U.S.C. § 285 of the Patent Act provides that "[t]he court in exceptional cases may

award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "When deciding whether

to award attorneys' fees under § 285, a district court engages in a two-step inquiry. First, the court

---

[4] At the October 2, 2012 pretrial conference, Kilopass' counsel told the Court he had "done everything in my power" to end Kilopass' case, including "sen[ding] over dismissals with prejudice." Tadlock Ex. 23 (Oct. 2 Hearing Tr. 3:16-25.) This was not accurate, as all of Kilopass' attempts to stipulate to dismissal required Sidense to forego its right to fees and costs. Tadlock Decl., Ex. 24. Kilopass never offered to dismiss its claims with prejudice without any conditions.



1    must determine whether the prevailing party has proved by clear and convincing evidence that the

2    case is exceptional. . . . If the district court finds that the case is exceptional, it must then

3    determine whether an award of attorney fees is justified." *Marctec, LLC v. Johnson & Johnson*,

4    664 F.3d 907, 915-16 (Fed. Cir. 2012).

5            **B.      Sidense is the Prevailing Party on Kilopass' Patent Claims**

6            On August 16, 2012, the Court granted Sidense's motion for summary judgment of non-

7    infringement. (Dkt. 72.) Sidense is thus the prevailing party on Kilopass' patent claims.[5]

8            **C.      This is an Exceptional Case**

9            "A case may be deemed exceptional under § 285 where there has been . . . misconduct

10   during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil

11   Procedure 11, or like infractions." *Marctec*, 664 F.3d at 916 (internal citation omitted). "Where, as

12   here, the alleged infringer prevails in the underlying action, factors relevant to determining

13   whether the case is exceptional include 'the closeness of the question, pre-filing investigation and

14   discussions with the defendant, and litigation behavior.'" *Id.*, citing *Computer Docking Station

15   Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008).

16                   **1.      Kilopass' patent infringement claims were vexatious and unjustified**

17           To establish that Kilopass' lawsuit was vexatious and unjustified, Sidense must establish

18   that the case is objectively baseless and that Kilopass brought the lawsuit in subjective bad faith.

19   *Marctec*, 664 F.3d at 916. These are both questions of law for the Court. *Highmark, Inc. v. Allcare

20   Health Mgm't Sys., Inc.*, 687 F.3d 1300, 1309-10 (Fed. Cir. 2012).

21                           **(a)      Kilopass' patent claims are objectively baseless**

22           The Federal Circuit has recently held that "[t]o be objectively baseless, the infringement

23   allegations must be such that no reasonable litigant could reasonably expect success on the

24   merits." *Highmark, Inc.*, 687 F.3d at 1309. "[T]he objective prong requires a retrospective

25   ─────────────

26   [5] Pursuant to Civil Local Rule 54-5, Sidense contacted Kilopass on October 11 requesting a
     meet and confer with regard to this motion for attorneys' fees. Tadlock Decl., Ex. 28. The next
     day, Kilopass' counsel responded, setting the meet and confer for 5:00 p.m. the day before

27   Sidense's motion is due and advising that Kilopass "will meet-and-confer at that time with you
     about Kilopass' motion for sanctions." *Id.*, Ex. 29. Kilopass' motion, submitted on October 16,

28   2012 is another example of its pattern of filing baseless motions and increasing the costs of this
     litigation even after it has lost.



SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES                                          - 11 -
CASE NO. C10-02066 SI

1   assessment of the merits of the entire litigation determined 'based on the record ultimately made in

2   the infringement proceedings'" and is a question of "whether, in light of that record, no reasonable

3   litigant could realistically expect success on the merits." *Id.* at 1310 (internal citation omitted).[6]

4       The record makes clear that this was not a close case. As the Court held, no reasonable jury

5   could have believed that Sidense infringes Kilopass' patents for three separate reasons, each of

6   which alone would have been sufficient to defeat Kilopass' entire case. This, after Kilopass

7   supposedly obtained a "favorable" ruling on claim construction that "greatly strengthen[ed]

8   [Kilopass'] patent infringement complaint". Tadlock Decl., Ex. 30. This was not an instance of a

9   litigant's case being derailed because it lost a closely contested claim construction argument. Here,

10  Kilopass by and large persuaded the Court to construe the claims as it wished, but, even under that

11  best-case scenario for Kilopass, its claims still failed to raise an issue of fact.

12      The first, and most glaring, reason Kilopass' infringement claims were objectively

13  unreasonable is because Kilopass' infringement theory on the "first doped semiconductor" claim

14  term required Kilopass to prove that an insulator is equivalent to a semiconductor even though

15  Kilopass agreed to a claim construction of the term "semiconductor" that specifically excluded

16  insulators. The Court flatly rejected this argument, stating plainly that "a semiconductor is not an

17  insulator, nor its equivalent" and noting that, not only had Kilopass provided no evidence to

18  support its position, the only evidence in the record was to the contrary. (Dkt. 272 at 13-14.)

19  Perhaps the most compelling evidence that Kilopass' infringement claims were objectively

20  baseless is the fact that Kilopass' expert could not support Kilopass' original infringement theory

21  even though Kilopass had five years to analyze the issue before filing this lawsuit. Sidense

22  specifically told Kilopass its technology did not include a first doped semiconductor region in its

23  2006 correspondence and Kilopass' own patent lawyer told Kilopass that Sidense did not literally

24  infringe this claim limitation. But Kilopass could only put forward an infringement theory that

25  even its own expert could not support.

26      Kilopass also acknowledged that the STI and second doped semiconductor region in

27  ───────────────

    [6] This analysis is done on a claim by claim basis. *Highmark*, 687 F.3d at 1311. Here, because
28  all of the claim terms at issue in Sidense's motion for summary judgment were present in all
    asserted claims, no claim by claim analysis is necessary.

1  Sidense's technology were in physical contact, but nevertheless argued that they were in a "spaced

2  apart relationship" as the claims required. To avoid the parties' agreed upon construction of

3  "spaced apart relationship" (in physical contact), Kilopass argued that Sidense's technology

4  should only be analyzed "in a cross-section of the cell" because "nowhere in the Asserted patents

5  is the three dimensional (3D) construct of a bitcell mentioned or described." (Dkt. 272 at 16.) Not

6  only was this blatantly false (see '751 patent, figure 2), the Court rejected the argument both

7  because it required the Court to add a new limitation not present in the claims and would have

8  rendered the phrase "spaced apart relationship" superfluous. (*Id.*) No reasonable litigant could

9  have expected to prevail on this argument since it required the finder of fact to ignore the Sidense

10  technology as it actually exists and instead only analyzed a drawing of the accused technology

11  from a single perspective.

12     Finally, Kilopass' theories of infringement regarding "wordline" and "bitline" suffered

13  tortuous treatment, with Kilopass arguing to this Court that the terms were interchangeable, while

14  at the same time arguing to the USPTO that the terms were materially different. It is black letter

15  law, however, that claim terms must be construed in the same manner for infringement and

16  validity, a rule any competent patent lawyer knows well. *See, e.g., Southwall Techs., Inc. v.*

17  *Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in

18  order to obtain their allowance and in a different way against accused infringers."); *Amgen Inc. v.*

19  *Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) ("[i]t is axiomatic that claims

20  are construed the same way for both invalidity and infringement."). The Court recognized

21  Kilopass' irreconcilable positions, which would have been necessary to prove both infringement

22  and sustain the validity of the '751 patent in the litigation, and reached the only reasonable

23  conclusion: that Kilopass had disavowed claim scope that explicitly covered Sidense's technology.

24  No reasonable litigant could have expected to maintain these irreconcilable positions and prevail

25  on both validity and infringement, which is why Kilopass took the risk of saying one thing to this

26  Court and another thing to the USPTO.

27     Thus, even after achieving the claim construction it desired, Kilopass was unable to present

28  *any* material facts supporting its infringement allegations. Taking the entire record of this case into



1   account, no reasonable litigant could have believed that it would prevail with Kilopass' positions.[7]

2   They were instead baseless and Kilopass knew it before filing – or at least would have known it

3   had it done an adequate pre-filing investigation.

### 2.   Kilopass filed this lawsuit with subjective bad faith

5   Sidense must also show "that the lack of objective foundation for the claim was so obvious

6   that it should have been known by the party asserting the claim." *Highmark*, 687 F.3d at 1309

7   (internal citation omitted). The court must "take into account the totality of circumstances" when

8   considering a party's subjective state of mind. *Id.* at 1311; *see also Eltech Sys. Corp. v. PPG*

9   *Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990) ("[w]here . . . the patentee is manifestly

10   unreasonable in assessing infringement, while continuing to assert infringement in court, an

11   inference is proper of bad faith. . . .").

12   From the very first time Kilopass contacted Sidense about the patents-in-suit, Sidense

13   provided several reasons why its products did not infringe. In Ms. Kinsman's January 20, 2006

14   letter, she informed Kilopass that Sidense did not infringe because its technology did not have first

15   and second doped semiconductor regions, and did not have a second doped semiconductor region

16   connected to a row wordline. Tadlock Decl., Ex. 5. *These are two of the very same reasons the*

17   *Court granted Sidense summary judgment of infringement more than six years (and several*

18   *million dollars) later.* Kilopass then refused Sidense's offer to have a neutral third party analyze

19   its technology against Kilopass' patents and there was no further communication between the

20   parties. This refusal to meaningfully engage with Sidense before filing suit is evidence of

21   Kilopass' bad faith.

22   Furthermore, Kilopass' own lawyer, in response to Ms. Kinsman's letter, informed

23   Kilopass that, if Sidense "eliminated the first doped region (112), then they would NOT infringe

24   our claims literally." *Id.*, Ex. 8. And, two years later, Mr. Ng warned Kilopass again that Sidense

25   had "redesigned their memory cell to avoid infringement of our patents." *Id.*, Ex. 9. More

---

26   [7] Moreover, two of the three patents in suit, the '757 and '540 patents, have been found invalid
27   by the USPTO after reexamination. Tadlock Decl., Exs. 31-32. The third patent, the '751 patent,
    was only validated because Kilopass took contrary positions. All three reexaminations are on
28   appeal before the BPAI. The invalidity of these patents is additional evidence that Kilopass'
    patent claims were objectively baseless.



1   importantly, Mr. Peng, who was the named inventor on the patents-in-suit, admitted that Kilopass

2   had not filed a patent covering the Sidense technology. *Id.*, Ex. 1 ████████████████████

3   ██████████████████████████████████████; *Id.*, Ex. 3. █████████████████████

4   █████████████████████████████. █████████████████████

5   ████████████████████████████████████████████████████

6   ████████████████████████████████████ *Id.*, Ex. 9.

7        Kilopass ignored what Sidense and its patent attorney told Kilopass about its infringement

8   claims. Had Kilopass done any meaningful pre-filing investigation, it would have known what

9   Sidense told it in 2005, what its patent lawyer told it over the next five years, and what the Court

10  later confirmed – Sidense did not infringe for a number of reasons. Kilopass' hapless infringement

11  contentions, which it later attempted to abandon, are clear evidence that Kilopass did no

12  meaningful infringement analysis before filing this lawsuit.[8] *See Marctec*, 664 F.3d at 920-21

13  (affirming attorneys' fee award for defendant where "[plaintiff] not only initiated a frivolous

14  lawsuit, it persisted in advancing unfounded arguments that unnecessarily extended this litigation

15  and caused [defendant] to incur needless litigation expenses").

16        Instead, Kilopass filed suit three days after Sidense announced that it had raised $5 million

17  in capital to ████████████████████████████████████████████████

18  ██████████████████████████████████████████████████

19  ████████████; sue and then begin a marketplace campaign to drain Sidense of its funds

20  before Sidense could grow and before the lawsuit was ever resolved on the merits. Tadlock Decl.,

21  Ex. 10. Specifically, Kilopass filed suit ██████████████████████████

22  ████████████████████████████████ *Id.*, Exs. 11, 12. Kilopass

23  also pursued manifestly unreasonable infringement allegations, further evidencing its bad faith.

24        [8] Because Kilopass knew or should have known that its patent claims were frivolous from the
    very beginning, even if Kilopass could establish that it conducted a reasonable pre-filing
25  investigation, that would not negate a finding that it acted in bad faith. *See Highmark*, 687 F.3d at
    1313 n.4 ("Since we have concluded that Allcare engaged in bad faith from the inception –
26  because it knew or should have known that the allegation of infringement of claim 102 was
    frivolous – we need not examine the prefiling investigation."). However, failure to conduct an
27  adequate pre-filing investigation, particularly in light of the communication with Sidense and its
    patent attorney, independently supports an award of attorneys' fees under Rule 11, which is a
28  separate basis under which the Court may award Sidense its attorneys' fees. *Id.*



SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES                                    - 15 -
CASE NO. C10-02066 SI

1   *See Eltech Systems Corp.*, 903 F.2d at 810 ("A party confronted with the difficulty of proving

2   what is in an adversary's mind must be at liberty to prove facts establishing that the adversary

3   should have known, i.e. to prove facts to render the 'I didn't know' excuse unacceptable.").

4         In addition to filing the baseless lawsuit, Kilopass also began a pattern of poisoning the

5   market against Sidense, including: (1) threatening Sidense's customers with lawsuits; (2)

6   subpoenaing more than fifty of Sidense's customers and then sending each of those subpoena

7   recipients an email stating that "Sidense indicat[ed] to the court that it is its licensees who should

8   be charged as direct infringers"; (3) telling customers that Sidense was licensing invalid

9   intellectual property; and (4) telling customers that Sidense was going bankrupt. These

10  marketplace activities are further evidence of Kilopass' true intent with this lawsuit; to drain

11  Sidense of resources by requiring it to incur litigation costs while at the same scaring customers

12  away from doing business with Sidense.

13        Kilopass was advised time and again that it had no legitimate claim against Sidense for

14  patent infringement but filed suit anyway in an effort to destroy a smaller competitor with

15  litigation costs. Thus, it had the requisite subjective bad faith to make this a vexatious lawsuit.

16          **D.**    **Kilopass' Litigation Misconduct**

17        Not content to file a baseless lawsuit, Kilopass continually changed its positions during the

18  litigation as the Court ruled against it and then attempted to manipulate and misrepresent the

19  record in both the USPTO and this Court to prolong this lawsuit. "[I]t is well-established that

20  litigation misconduct and 'unprofessional behavior may suffice, by themselves, to make a case

21  exceptional under § 285.'" *Marctec*, 664 F.3d at 919 citing *Rambus Inc. v. Infineon Techs. AG*,

22  318 F.3d 1081, 1106 (Fed. Cir. 2003); *see also Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,

23  393 F.3d 1378, 1381 (Fed. Cir. 2005) (Where a party engages in litigation misconduct, fees can be

24  awarded pursuant to section 285 even absent clear and convincing evidence that an asserted claim

25  or defense is objectively baseless.).

26        From the time Kilopass served its original infringement contentions in April, 2011, its

27  infringement theories were in flux depending on what Kilopass needed to do to perpetuate its

28  claim. In particular, as described in detail above, Kilopass' theory of infringement of the "first



SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES         - 16 -
CASE NO. C10-02066 SI

1   doped semiconductor region" claim limitation changed markedly throughout the lawsuit. More

2   than a year and half after serving its infringement contentions, and after the close of fact

3   discovery, Kilopass' expert disclosed a new theory. *Id.*, Ex. 15. Dr. Neikirk testified that he did

4   not consider Kilopass' original infringement contentions in forming his opinions. Tadlock Decl.,

5   Ex. 33 (Neikirk Depo. Tr. 26:20-35:3.) The Court found that Kilopass had violated the Patent

6   Local Rules by failing to seek leave to amend its infringement contentions to assert this previously

7   undisclosed theory of infringement. (Dkt. 272 at 12-13.) The Court further noted that Kilopass'

8   changing theories of equivalence so late in the litigation were "particularly inappropriate" in light

9   of counsel's email informing Kilopass that Sidense did not literally infringe. (Dkt. 272 at n.8.)

10         Kilopass also made multiple misrepresentations to the Court throughout the entire case,

11  beginning with its opposition to Sidense's motion to dismiss and continuing all the way through to

12  the final pretrial conference. *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1380 (Fed.

13  Cir. 2009) (Litigation misconduct includes where a party makes "multiple, repeated

14  misrepresentations to the Court."). The most glaring example was Kilopass' effort to dodge the

15  Court's claim disavowal Order. In opposing Sidense's motion that led to the disavowal Order,

16  Kilopass repeatedly represented to the Court that it's "position at the PTO was fully consistent

17  with its earlier position." (Dkt. 207 at 6-9.) However, one day after the Court ruled that Kilopass

18  had disavowed claim scope, Kilopass changed its tune and filed a document with the USPTO

19  claiming its previous statements were made in error. (Dkt. 228, Ex. E.) Kilopass then sought leave

20  to file a motion for reconsideration, which would have asked the Court to withdraw its claim

21  disavowal Order. (Dkt. 228.) The Court refused Kilopass' request, holding:

22              The Court finds that ***the rule does not apply where the "new material***
             ***fact" is merely a party's attempt to undo a strategic position for***
23           ***which it has been penalized***. It was in Kilopass's interest to argue that
             wordlines are different from bitlines in its BPAI brief; however, after
24           that position damaged its case in this Court, Kilopass sought to
             reverse its position before the BPAI.
25
    (Dkt. 235 at 5.) (emphasis added). The Court concluded, "this type of gamesmanship is not the
26
    purpose for which Civil Local Rule 7-9 allows for reconsideration." (*Id.* at 6.) *See Mathis v.*
27
    *Spears*, 857 F.2d 749, 752 (Fed. Cir. 1988) (affirming attorney fee award where plaintiff
28



SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES                                    - 17 -
CASE NO. C10-02066 SI

1   "blatantly mis[led] the PTO" and "then wasted the resources of the trial and appellate courts and

2   those of seven defendants in a charade . . . to employ the courts as handmaidens to its iniquity").

3         Yet, in the face of the disavowal ruling that gutted Kilopass' case, Kilopass persisted with

4   its claims and attempted to effectively undo the Court's disavowal order on its own. In Dr.

5   Neikirk's subsequent expert report, he submitted a new theory of infringement of the "wordline"

6   "bitline" claim elements. Again, the Court thwarted Kilopass' effort to change its theories, noting

7   that "[t]o avoid summary judgment on this issue, Kilopass has introduced a new theory" and

8   stating that "Kilopass did not argue [this new theory] during claim construction" but "[i]nstead

9   argued that the two terms should be given the same definition." (Dkt. 272 at 10.)  The Court

10  refused to allow Kilopass to argue this new theory because it was not presented during claim

11  construction and because it would have rendered the Court's disavowal Order "meaningless."

12  (*Id.*). Kilopass' misconduct during the litigation is a separate reason this is an "exceptional" case.

13  **E.    Sidense's Attorneys' Fees for Defense of Kilopass' Patent Infringement Claims
            Are Reasonable**

14

15        "The methodology of assessing a reasonable award under 35 U.S.C. § 285 is within the

16  discretion of the district court." *Automated Bus. Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed.

    Cir. 2000) citing *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988). "[T]he most critical factor

17  [to consider when determining the amount of a fee award] is the degree of success obtained."

18  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "Where . . . a prevailing party has obtained

19  excellent results, his attorney should recover a fully compensatory fee. Normally this will

20  encompass all hours reasonably expended on the litigation. . . ." *Mathis*, 857 F.2d at 755 (internal

21  citation omitted); *see also City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (noting a "strong

22  presumption" that a lodestar analysis represents a "reasonable fee").[9] In addition to attorney fees,

23  disbursements and expenses incurred in defending a case are also recoverable. *Takeda Chem.*

24  *Industs., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008); *Automated*, 202 F.3d at

25  1356; *Mathis*, 857 F.2d at 759 (Recoverable expenses include separate expenses actually billed for

26  secretaries and paralegals, lodging expenses, other disbursements in connection with the legal

27

28        ⁹ This includes the time spent seeking fees. *See* 7 Chisum on Patents, § 20.03[4][c][vii][D]
       ("Courts award attorney fees for attorney time spent on attorney fee award issues.").



SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES                                    - 18 -
CASE NO. C10-02066 SI

services rendered.); *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983).

While Sidense's agreement with KTS called for Sidense to pay a discounted rate in exchange for a success fee, Sidense does not seek to recover the entire amount it will pay KTS. *See City of Burlington*, 505 U.S. at 566-67 (holding that enhancement of attorneys' fees awards to account for contingency is not permitted). Nor does Sidense seek to recover fees at KTS' normal rates. Rather, Sidense seeks to recover the amount equal to the total number of hours worked multiplied by KTS' rates at a 10% discount – the amount Sidense would have had to pay KTS under the terms of their original agreement. This "lodestar" analysis of the fees incurred defending against the patent claims results in an attorneys' fee award of $4,048,816.00. Sidense also seeks to recover its non-taxable costs in the amount of $168,403.22. These costs were billed to Sidense separately from attorneys' fees. Cook Decl., ¶ 31.

The hours worked and the rates charged are reasonable for several reasons. First, Sidense has achieved a great result – it has prevailed on all of Kilopass' claims and has invalidated two of Kilopass' patents during reexamination. Second, Sidense does not seek fees for a significant amount of work done in this litigation. For example, Sidense has excluded from its award the fees for Sidense's motion to stay pending reexamination, its responses to Kilopass' dirty tricks in the marketplace, its representation of third-parties in response to Kilopass' subpoenas. *See* Cook Decl., ¶¶ 21-23. Third, this was a "bet the company" case for Sidense, in which Kilopass not only sought in excess of $60 million in damages but an injunction that would have effectively shut Sidense down. Additionally, KTS had to spend significant time illuminating Kilopass' litigation misconduct, including its changing theories and misrepresentations. The fees that Sidense seeks are reasonable for high stakes patent litigation. *See* Declaration of Judge Charles B. Renfrew ¶ 32. The 2011 AIPLA "Report of the Economic Survey" also confirms that the fees Sidense seeks are reasonable. Tadlock Decl., Ex. 34 (median cost for patent litigation with more than $25 million at risk is $5 million).

**IV.      THIS IS AN EXCEPTIONAL CASE UNDER THE LANHAM ACT – 15 U.S.C. § 1117(a)**

**A.      Legal Authority**

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15. U.S.C. § 1117(a). A Lanham Act claim "may be considered exceptional when a plaintiff's case is groundless, unreasonable, vexatious, _**or**_ pursued in bad faith." *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 687 (9th Cir. 2012) (internal citations omitted) (emphasis added). "[A]n action is exceptional under the Lanham Act if the plaintiff has no reasonable or legal basis to believe in success on the merits." *Id.* at 687-88, citing *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002) ("The false advertisement claim was groundless and unreasonable because the statements in the advertisements at issue were true and [plaintiff] had no reasonable basis to believe they were false."). "[E]xceptional cases include instances where plaintiff's case is frivolous or completely lacking merit." *Id.*

**B.      Sidense is the Prevailing Party on Kilopass Business Tort Claims**

On October 2, 2012, the Court dismissed Kilopass' remaining claims with prejudice and entered judgment. (Dkt. 327, 328.) Because Kilopass dismissed its claims with prejudice, Sidense is the prevailing party. *See Zenith Ins. Co. v. Breslaw*, 108 F.3d 205, 207 (9th Cir. 1997), abrogated on other grounds by *Ass'n of Mexican-American Educators v. California*, 231 F.3d 572 (9th Cir. 2000) (defendant was "clearly the prevailing party on the dismissed claims" when they were dismissed with prejudice).

**C.      This is an Exceptional Case**

Kilopass had no reasonable basis to believe that it would succeed on its business tort claims and it pursued them in bad faith. These claims were a side show meant simply to increase Sidense's cost of litigation. As their rapid demise and Kilopass' desperate attempt to dismiss them on the eve of trial makes clear, these claims were baseless from the beginning.

The Court granted Sidense's motion to dismiss Kilopass' defamation/trade libel claim without prejudice noting "the likelihood that plaintiff could provide the necessary detail." (Dkt. 50



SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES                                    - 20 -
CASE NO. C10-02066 SI

at 8-9.) Despite representing to the Court that it could "readily identify numerous deterred customers and the ensuing lost sales" (Dkt. 42 at 14), Kilopass never even attempted to amend its dismissed defamation/trade libel claim. As discussed above with regard to Kilopass' patent claims, this began a pattern of misrepresentations to the Court.

All of Kilopass' remaining claims hinged on its allegation that none of Sidense's patents covered its 1T-Fuse™ Logic NVM IP. But, as the Court noted in its Order on Sidense's motions *in limine*, even though claim construction is a matter of law, Kilopass intended to have the jury "determine the scope of *all* of Sidense's patents . . . ." (Dkt. 323 at 3.) The Court further noted that "[a]t no point in the prior two years of motions has Kilopass submitted any evidence concerning any of Sidense's patents, nor requested this broad claim construction of *all* of Sidense's patents." *Id.* In fact, in response to Sidense's interrogatory seeking the factual and legal bases for Kilopass' false advertising and derivative claims, Kilopass never once disclosed why it believed that none of Sidense's patents covered its own technology. Tadlock Decl., Ex. 35.

Recognizing that it had no evidence to support its claims, Kilopass then tried to add new allegations and evidence in its pretrial statement in an effort to salvage its case. Kilopass' counsel also made repeated misrepresentations about the record during the pretrial conference to sustain its business tort claims. Kilopass' counsel told the Court "One of their inventors admitted that the '855 patents did not cover the bit cell he tried to patent," that "[Sidense's] own inventor stated, when we showed him the bit cell in deposition, that he didn't have a patent on this bit cell" and that "when we showed [Mr. Kurjanowicz] the advertisements or showed him what everybody was being presented with, he said, no, we don't have a patent on that product." Tadlock Decl., Ex. 36 (Sept. 25, 2012 Pretrial Conference Tr. at 7, 11). As the Court's motion *in limine* Order noted, Mr. Kurjanowicz did not say what Kilopass' counsel told the Court he said. In fact, he said the opposite. (Dkt. 323 at 3-4.) Kilopass' counsel also argued that Sidense was "marketing [the '855 patent] to their customers as giving them the so-called right to sell the 1T bit cells" and that "the '855 patent is the patent that we are focusing on because that's the patent their inventor is claiming gives them the right to market this 1T NVM fuse technology." Tadlock Decl., Ex. 36 (Sept. 25,

1    2012 Pretrial Conference Tr. at 7, 14).[10] There is no support for these statements in the record and,

2    when Sidense asked Kilopass to identify such support after the pretrial conference, Kilopass did

3    not substantively respond.

4         Then, hours after the Court granted most of Sidense's motions *in limine*, which effectively

5    stripped Kilopass of any evidence to present at trial, Kilopass filed a voluntary motion to dismiss

6    *without prejudice*. (Dkt. 325.) This was a cynical attempt to achieve a stay of its business tort

7    claims (even though the Court had already rejected Kilopass' motion to stay) and to avoid losing

8    on its business tort claims despite requiring Sidense to litigate them up until the week before trial.

9    All of this evidence makes clear that Kilopass' business tort claims were frivolous and Kilopass

10   had no reasonable or legal basis to include them in the Second Amended Complaint, let alone to

11   pursue them up until the eve of trial. *Secalt S.A.*, 668 F.3d at 687-88.

12        **D.    Sidense is Entitled to Attorneys' Fees for Defense Against All of Kilopass'
                  Business Tort Claims**

13        Ordinarily, a prevailing party may not recover legal fees incurred litigating non-Lanham

14   Act Claims "unless the Lanham Act claims and non-Lanham Act claims are so intertwined that it

15   is impossible to differentiate between work done on claims." *Guichard v. Universal City Studios,*

16   *LLLP*, 2008 U.S. Dist. LEXIS 120612, *5 (N.D. Cal. May 7, 2008); *Gracie v. Gracie*, 217 F.3d

17   1060, 1069-70 (9th Cir. 2000). "[A]pportionment or an attempt at apportionment is required

18   unless the court finds the claims are so inextricably intertwined that even an estimated adjustment

19   would be meaningless." *Id.* Here, all of the business torts are inextricably intertwined.

20        As the Court has recognized, Kilopass' intentional interference and unfair competition

21   claims are "related to the false advertising claim because they too require a showing that Sidense

22   violated the Lanham Act." (Dkt. 323, n.3 citing *BioResource, Inc. v. US Pharmaco Dist., Ltd.*

23   2010 U.S. Dist. LEXIS 69836, *8 (N.D. Cal. July 13, 2010) and *Cel-Tech Comms. Inc. v. Los*

24   *Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).) Specifically as to Kilopass' § 17200

25

26        [10] Kilopass' counsel also represented at the October 2, 2012 pretrial conference that he had
     "tried everything in his power" to dismiss Kilopass' business tort claims, but that Sidense had

27   inappropriately prolonged the litigation. This was another misrepresentation. Kilopass' only offer
     to dismiss its claims with prejudice was tied to Sidense's agreement to forego attorneys' fees and

28   costs. In fact, when Sidense communicated that it would stipulate to dismissal with prejudice,
     Kilopass' counsel never responded. Tadlock Decl., Ex. 24.



1   claim, the Court has noted that "Kilopass' unfair competition claim is limited to the 'unlawful'

2   prong of § 17200 and therefore the practices that form the basis of this claim consist of plaintiff's

3   other tort claims." (Dkt. 323 at n.3.) Sidense's defenses against these other claims consisted

4   entirely of defeating Kilopass' Lanham Act claim, so the Court does not need to apportion any

5   fees related to Sidense's defense against Kilopass' business tort claims.

6        **E.    Sidense is Entitled to Reasonable Attorneys' Fees and Non-Taxable Costs**

7        The Ninth Circuit has stated:

> When it sets a fee, the district court must first determine the
> presumptive lodestar figure by multiplying the number of hours
> reasonably expended on the litigation by the reasonable hourly rate.
> Next, in appropriate cases, the district court may adjust the
> "presumptively reasonable" lodestar figure based upon the factors
> listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir.
> 1975), that have not been subsumed in the lodestar calculation.

12  *Gracie*, 217 F.3d at 1070. The *Kerr* factors that have not been subsumed within the lodestar

13  analysis are "(1) the novelty and complexity of the issues, (2) the special skill and experience of

14  counsel, (3) the quality of representation, [and] (4) the results obtained." *Morales v. City of San*

15  *Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996).[11]

16       The Ninth Circuit has also held that "attorney's fees under the Lanham Act may also

17  include reasonable costs that the party cannot recover as the 'prevailing party.'" *Secalt S.A.*, 668

18  F.3d at 690 citing *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) ("we

19  repeatedly have allowed prevailing plaintiffs to recover non-taxable costs where statutes authorize

20  attorney's fees awards to prevailing parties."). To award such fees, the court must find them to be

21  reasonable and also "determine whether it is the prevailing practice in the given community for

22  lawyers to bill those costs separate from their hourly rates." *Id.*

23       As detailed in the Cook Declaration, Sidense seeks attorneys' fees in the amount of

24  $412,250 for its defense of Kilopass' business tort claims. Cook Decl., ¶ 30. These fees are

25  reasonable. Renfew Decl., ¶ 32; Tadlock Decl., Ex. 34 (AIPLA 2011 Survey showing median cost

26

27       [11] Sidense proposes that the Court undertake the same analysis for all attorneys' fees – both
     defending against the patent claims and business tort claims – incurred in this case. As noted
28   above, the United States Supreme Court has foreclosed consideration of contingency fee
     arrangements in an attorney fee award. *City of Burlington*, 505 U.S. at 566-67.



SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES                                    - 23 -
CASE NO. C10-02066 SI

1   of trademark litigation between $1-25 million is $775,000). Moreover, the *Kerr* factors would

2   support increasing the fee award above the lodestar figure that Sidense has requested. Sidense

3   unquestionably obtained a complete victory, forcing Kilopass to dismiss its claims with prejudice.

4   These claims also involved novel issues at the intersection of patent and false advertising law,

5   requiring sophisticated representation.

6       Sidense also seeks its non-taxable costs related to the defense against Kilopass' business

7   tort claims in the amount of $16,655.26. These include travel, ediscovery, mail, and other vendor

8   costs that are typically billed separately from the attorneys' fees. Cook Decl. ¶31, 34.

9   **V.    PURSUANT TO ITS INHERENT AUTHORITY THE COURT SHOULD AWARD
        SIDENSE ITS EXPERT COSTS**

10      "A district court has inherent authority 'to impose sanctions in the form of reasonable

11  expert fees in excess of what is provided for by statute." *Marctec*, 664 F.3d at 921 citing *Takeda*,

12  549 F.3d at 1391. "The use of this inherent power is reserved for cases with 'a finding of fraud or

13  abuse of the judicial process." *Takeda*, 549 F.3d at 1391. The Federal Circuit noted, however, that

14  even though Takeda's conduct "did not amount to fraud, courts may use sanctions in cases

15  involving bad faith that cannot be otherwise reached by rules or statutes." *Id.*

16      In *Marctec*, the Federal Circuit affirmed an award of reasonable expert fees where the

17  defendant "was forced to incur expert witness expenses to rebut [plaintiff's] unreliable and

18  irrelevant expert testimony" and "the amount [defendant] was required to expend on experts was

19  not compensable under § 285." *Marctec*, 664 F.3d at 921. The same is true here. Sidense was

20  forced to incur expert expenses to hire an expert to rebut Dr. Neikirk's expert report, parts of

21  which the Court excluded because Kilopass violated the Patent Local Rules. Moreover, because

22  Kilopass continued to pursue its claims, even in the face of substantial evidence showing that

23  Sidense did not infringe, Sidense incurred additional expert expenses, including an expert to rebut

24  Kilopass' damages expert as well as paying Dr. Gosney to provide an opinion on the invalidity of

25  Kilopass' patents-in-suit. Because section 285 does not allow for recovery of these extensive

26  costs, the Court should use its inherent authority to adequately sanction Kilopass and make

27  Sidense whole for the full amount of damage that Kilopass' baseless claims have caused and

28



SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES                                    - 24 -
CASE NO. C10-02066 SI

1    award Sidense its expert costs in the amount of $434,853.56.

2    **VI.    CONCLUSION**

3         For the reasons stated above, the Court should award Sidense $4,617,000 in attorneys' fees

4    and $619,912.04 in non-taxable costs.

5

6    DATED:  October  16, 2011          Respectfully submitted,

7                                   KILPATRICK TOWNSEND & STOCKTON LLP

8

9                                   By: */s/ Roger L. Cook*

10                                     ROGER L. COOK

11                                  Attorneys for Defendant
                                    SIDENSE CORP.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   64590671V.1

