Rachel Repka (CA Bar No. 248331)
rachel.repka@snrdenton.com
Imran A. Khaliq (CA Bar No. 232607)
imran.khaliq@snrdenton.com
**SNR Denton US LLP**
1530 Page Mill Road, Suite 200
Palo Alto, CA 94304-1125
Telephone: (650) 798-0300
Facsimile: (650) 798-0310

Mark L. Hogge (*Pro Hac Vice*)
mark.hogge@snrdenton.com
Shailendra K. Maheshwari (*Pro Hac Vice*)
shailendra.maheshwari@snrdenton.com
**SNR Denton US LLP**
1301 K Street, NW, Suite 600
Washington, DC 20004
Telephone: (202) 408-6400
Facsimile: (202) 408-6399

*Attorneys for Plaintiff*
KILOPASS TECHNOLOGY, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| KILOPASS TECHNOLOGY, INC., a California Corporation,<br><br>                              Plaintiff;<br><br>        vs.<br><br>SIDENSE CORPORATION, a Canadian Corporation,<br><br>                              Defendant. | Case No. 3:10-cv-02066 SI<br><br>**KILOPASS TECHNOLOGY, INC.' S OPPOSITION TO SIDENSE CORP.'S MOTION FOR ATTORNEYS' FEES**<br><br>**[FILE UNDER SEAL]** |

# TABLE OF CONTENTS

I.   Introduction.................................................................................................. 1

II.  Statement of Facts......................................................................................... 1

    A.   Kilopass' Pre-Filing Investigation Led Kilopass to Believe That
        Sidense Was Infringing Kilopass' Patents-In-Suit ...................................... 1

        1.   Year 2001-2004: Kilopass And Its Patented 1-T Technology................ 1

        2.   Year 2004:  Sidense Enters the Market After Kilopass and
              Copies Kilopass' Patented Technology ...................................... 2

        3.   Kilopass' Begins to Investigate Sidense's Technology and Puts
              Sidense On Notice of Its Patents ............................................ 3

        4.   Kilopass Hires Another Law Firm To Get A Second Opinion
              On Its Infringement Claims Against Sidense ............................ 5

        5.   Year 2008-2010: Kilopass' Engineers Reverse Engineer
              Sidense's 1-T Cell Structure In-Silicon and Verify Infringement........... 6

        6.   Year 2010: Kilopass Files Suit Against Sidense Based On A
              Good Faith Belief Of Infringement After Substantial Pre-Filing
              Due Diligence ....................................................... 7

    B.   Kilopass Has Acted In Good Faith and Did Not Misrepresent Facts and
        Arguments During the Litigation.......................................................... 8

        1.   The Parties' Dispute Over the Constructions of "Bitline" and
               "Wordline" In the Reexaminations and Litigation ................................. 8

    C.   The Case Proceeds to Expert Discovery Phase and Dispositive Motions ......... 10

        1.   Kilopass' Expert Did Not Jettison Kilopass' Doctrine of
               Equivalents Theories for the "First Doped Semiconductor" ................. 11

    D.   Kilopass Did Not Harass Sidense's Customers - Sidense's Business
        Tort Claims Were Dismissed With Prejudice....................................... 12

    E.   Kilopass' Business Tort Claims Were Not Baseless ......................................... 12

III. Argument ...................................................................................................... 14

    A.   THIS IS <u>NOT</u> AN EXCEPTIONAL CASE UNDER THE PATENT
        STATUTE 35 U.S.C. § 285 .................................................................. 14

        1.   Sanctions Should <u>Not</u> be Imposed Against Kilopass Because the
               Litigation Was Brought In Good Faith Was Not Objectively
               Baseless............................................................................. 15

             a)   The Litigation Was Brought in Good Faith............................... 15

             b)   The Litigation Was Not Objectively Baseless............................ 16

-i-

2.       There Was No Litigation Misconduct ................................................... 21

B.     THIS IS <u>NOT</u> AN EXCEPTIONAL CASE UNDER THE LANHAM ACT -- 15 U.S.C. § 1117(A) ................................................................. 22

1.       Legal Authority............................................................................ 22

2.       Kilopass' Lanham Act Claims Were Not Frivolous.............................. 23

C.     SIDENSE'S ATTORNEYS' FEES REQUEST IS NOT REASONABLE ....................................................................................... 25

D.     THE COURT SHOULD NOT AWARD SIDENSE EXPERT COSTS PURSUANT TO THE COURT'S INHERENT POWERS............................... 25

IV.    Conclusion .......................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4
*Applied Information Sciences Corp. v. eBay, Inc.*,
   511 F.3d 966 (9th Cir. 2007) ...................................................................16, 24

5

6
*Brooks Furniture Mfg. Inc. v. Dutalier Int'l Inc.*,
   393 F.3d 1378 (Fed. Cir. 2005) ..........................................................15, 16, 17

7
*Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*,
   962 F.2d 1048 (Fed. Cir. 1992) .....................................................................18

8

9
*CG Roxane LLC v. Fiji Water Co. LLC*,
   No. 07-2258, 2008 WL 4542803 (N.D. Cal. 2008)....................................16, 24

10
*Classic Media, Inc. v. Mewborn*,
   532 F.3d 978 (9th Circuit 2008) ....................................................................24

11

12
*Computer Docking Station Corp v. Dell Inc.*,
   519 F.3d 1366 (Fed. Cir. 2008) .....................................................................19

13

14
*Forest Labs, Inc. v. Abbott Labs*,
   339 F.3d 1324 (Fed. Cir. 2003) ..........................................................15, 16, 17

15
*Gracie v. Gracie*,
   217 F.3d 1060 (9th Cir. 2000) ..................................................................23, 24

16

17
*Kao Corp. v. Unilever U.S., Inc.*,
   441 F.3d 963 (Fed. Cir. 2006) .......................................................................19

18

19
*M2 Software, Inc. v. M2 Communications, LLC.*,
   281 F. Supp. 2d 1166 (C.D. Cal. 2003) .....................................................25, 26

20
*Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*,
   223 F.3d 1143 (10th Cir. 2000) .....................................................................24

21

22
*Perlan Therapeutics, Inc. v. Nexbio, Inc.*,
   2007 WL 935619 (S.D. Cal. Mar. 19, 2007) ....................................................26

23
*Rohm & Haas Co. v. Crystal Chem. Co.*,
   736 F.2d 688 (Fed. Cir. 1984) .......................................................................16

24

25
*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*,
   781 F.2d 198 (Fed. Cir. 1986) .......................................................................16

26
*Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*,
   2010 WL 8500520 (N.D. Cal. 2010) ..............................................................24

27

28

*Serio-US Indus., Inc. v. Plastic Recovery Techs., Inc.,*
459 F.3d 1311 (Fed. Cir. 2006) ...................................................................................18, 19

*Stephen W. Boney, Inc. v. Boney Services, Inc.,*
127 F.3d 821 (9th Circuit 1997) ..............................................................................24

*True Center Leasing, Inc. v. Sonoran Gate, LLC,*
427 F. Supp. 2d 946 (D. Ariz. 2006) .......................................................................26

STATUTES

15 U.S.C. § 1117(a) ...........................................................................................................23

35 U.S.C. § 102(e) ...............................................................................................................2

35 U.S.C. § 285...............................................................................................15, 16, 18, 19

OTHER AUTHORITIES

37 C.F.R. § 1.985(A) .........................................................................................................10

Fed. R. Civ. P. 11...............................................................................................................15

N.D. Cal. Local Patent Rule 3-1.....................................................................................8, 13

S. Rep. No. 79-1503 (1946)...............................................................................................16

I.    **INTRODUCTION**

Sidense is not entitled to fees and costs because the case is not exceptional and Kilopass conducted a thorough review of its patent infringement claims prior to bringing suit against Sidense, including obtaining opinions from counsel and reverse engineering Sidense's accused product. Kilopass litigated the case in good faith, and as controlling Federal Circuit authority holds, the fact that Sidense prevailed on summary judgment for non-infringement does not entitle it to fees and costs, when Sidense cannot show both bad faith and objectively baseless infringement claims. Similarly, Kilopass had valid business tort claims against Sidense for misrepresentation of its intellectual property and these issues were contested up until the pre-trial conference.  As the Ninth Circuit law holds, if there are debatable issues of law and fact, then it cannot be said that a Lanham Act case is an "exceptional" one warranting an award of attorney fees.

II.    **STATEMENT OF FACTS**

A.    **Kilopass' Pre-Filing Investigation Led Kilopass to Believe That Sidense Was Infringing Kilopass' Patents-In-Suit**

1.    **Year 2001-2004: Kilopass And Its Patented 1-T Technology**

Kilopass was founded in 2001 by Jack Peng, an entrepreneur who invented, with others, a novel way of storing data permanently inside integrated circuits ("IC") by creating a breakdown in the transistor, safely and reliably, now referred to as embedded Non-Volatile Memory ("eNVM"). Peng's discovery was compelling and attracted tier-one investors from all over the world.  Kilopass' patents cover several different architectures of eNVM, ranging from one-transistor (1T), two-transistors (2T), to three and a half (3.5T) transistors.  Kilopass has been granted at least five U.S. 1T patents:  6,777,757; 6,856,540; 6,898,116; 6,940,751; and 6,992,925.

The three Kilopass patents-in-suit asserted against Sidense in this litigation are:  U.S. Patent No. 6,777,757 ("the '757 patent"), filed on April 26, 2002, issued on August 17, 2004, entitled "High Density Semiconductor Memory Cell and Memory Array Using A Single Transistor" (Dkt. No. 113-2); U.S. Patent No. 6,856,540 ("the '540 patent"), filed on May 30, 2003, issued February 15, 2005 entitled "High Density Semiconductor Memory Cell and Memory Array Using A Single Transistor" (Dkt. No. 113-3); and U.S. Patent No. 6,940,751 ("the '751 patent"), filed on January 26, 2004,

issued on September 6, 2005, entitled, "High Density Semiconductor Memory Cell and Memory Array Using A Single Transistor and Having Variable Gate Oxide Breakdown" (Hogge Decl., Exh. 15; Dkt. No. 113-1). The '751 and '540 patents are related to (continuations of) the '757 patent. The '757, '540, and '751 patents all generally relate to single transistor (1-T) memory devices and arrays of such devices. More particularly, they relate to nonvolatile memory devices (*i.e.*, memory devices that retain their state even when power is removed). (Hogge Decl., Exh. 1, at ¶ 29).

       **2.**       **Year 2004: Sidense Enters the Market After Kilopass and Copies Kilopass' Patented Technology**

Sidense was formed in 2004 to develop one-time programmable ("OTP") memory products, competing in the same space as Kilopass. (Dkt. No. 308, at p. 8). ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ On May 6, 2005, Sidense filed a PCT patent application titled, "Split-Channel Antifuse Array Architecture." (Ng Decl., Exh. 1).

Kilopass patents were cited as prior art in Sidense's patent applications, and were the basis for the USPTO rejecting Sidense's attempts to claim the Kilopass bitcell design. (Dkt. No. 252-8 at 6); *see also* Dkt. No. 252-5 at cols. 3-4. Sidense was unable to secure a patent on its core memory cell design, relying instead on peripheral circuitry limitations to gain allowance for its patents. (Dkt. No. 252-7) (*see e.g.*, claim 10 adding "sense amplifier" limitation). ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

1 ████████████████████████████████████████

2 ██████████████

### 3. Kilopass' Begins to Investigate Sidense's Technology and Puts Sidense On Notice of Its Patents

In November of 2005, well after Kilopass had filed its 1-T patents, ████████████

5 █████████████████████████████████████████

6 ████████████████████████████████████████

7 ████████████████████████████████████████

8 ██████████████████████████████████████

9 ███████████████████████████████

10 ████████████████████████████████████

11 █████████████████████████████████████████

12 ████████████████████████████████████

13 █████████████████████████████████████████

14 ████████████████████████████████████

15 ████████████████████████████████████

16 █████████████████████████████████████████

17 █████████████████████████████████████████

18 █████████████████████

19 ████████████████████████████████████

20 ████████████████████████████████████████

21 ██████████████████████████████████

22 ████████████████████████████████████████

23 █████████████████████████████████████

24 ████████████████████████████████

25 ████████████████████████████████

---

[1] "Tadlock Decl." refers to Declaration of Robert D. Tadlock In Support of Sidense Corp.'s Motion for Attorney Fees.

KILOPASS' OPPOSITION TO SIDENSE'S MOTION FOR ATTORNEYS' FEES
CASE NO. 3:10-cv-02066 SI

KILOPASS' OPPOSITION TO SIDENSE'S MOTION FOR ATTORNEYS' FEES
CASE NO. 3:10-cv-02066 SI

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20          **4.      Kilopass Hires Another Law Firm To Get A Second Opinion On
                     Its Infringement Claims Against Sidense**

21

22

23

24

25

26 _____

27 [2] Although Sidense's attorneys have these documents in their possession as a result of the Court's
order finding a waiver of privilege, Sidense ignored these documents and decided instead to
selectively cite to the record to paint a misleading picture that Kilopass did not conduct a reasonable
28 due diligence.



5.      **Year 2008-2010: Kilopass' Engineers Reverse Engineer Sidense's 1-T Cell Structure In-Silicon and Verify Infringement**

Dr. Luan has over 20 years of experience in the semiconductor field and is more than qualified as one of ordinary skill in the art in the technology.  (Luan Decl., at ¶ 1).  Dr.

---

[3] In relevant part, the '751 patent states: "Alternatively, as will be seen below, since there is no current through the drains, the drains of adjacent devices need not be connected where a shallow trench isolation (STI) is used to isolate two memory cells."  (Hogge Decl., Exh. 15, '751 Patent, col. 5, ll. 40-44; *see also* Figure 14).

On or about March 2010, Dr. Luan conducted infringement analysis on Sidense's 1-T bit cell design against claim 1 of the '751 patent.  (*Id.,* at ¶ 6).  Dr. Luan compiled his analysis in the form of slides for presentation to Kilopass' board.  (*Id.*; Exh. 4).  The slides show a side-by-side comparison of Kilopass' patented 1-T cell structure against Sidense's 1-T accused technology as revealed from Sidense's publications and from reverse engineering Sidense's cell structure.  (*Id.*, Exh. 4).

### 6. Year 2010: Kilopass Files Suit Against Sidense Based On A Good Faith Belief Of Infringement After Substantial Pre-Filing Due Diligence

After thorough investigation into Sidense's infringement and ███████████████ ███████████████████████████, Kilopass brought this action on May 14, 2010, alleging that Sidense's 1T eNVM technology willfully infringed Kilopass' '751 patent.  (Dkt. No. 1).  On October 14, 2010, Kilopass filed a Second Amended Complaint ("Kilopass' SAC), including additional counts of willful infringement of the related '757 and '540 patents and business tort claims, based in part on Sidense's false advertising of its intellectual property.  (Dkt. No. 38; *see* ¶¶ 48-66).  On May 22, 2012, Kilopass filed a Third Amended Complaint ("Kilopass' TAC"), including additional counts of direct infringement of the patents-in-suit after obtaining samples of Sidense's manufactured chips which Sidense had withheld in discovery.  (*See* Dkt. Nos. 234 and 333).

Pursuant to Patent Local Rule 3-1, Kilopass served Sidense its Disclosures of Asserted Claims and Infringement Contentions on January 28, 2011.  (Hogge Decl., ¶ 14).  On April 4, 2011, Kilopass served Sidense its Amended Disclosures of Asserted Claims and Infringement Contentions.  (*Id.*; Exh. 8).  Kilopass' Infringement Contentions provide detailed claim charts for the patents-in-suit., mapping each and every element of its claims against the accused Sidense 1T-OTP memory cell device based on Sidense's literature and the decapped XMOS chip results.  (*Id.).*  Additionally, though not required by the Patent Local Rules, Kilopass went further and disclosed its doctrine of equivalents analysis for each asserted claim element consistent with its pre-filing analysis. Consistent with its pre-filing due diligence, Kilopass asserted an equivalence theory of infringement for Sidense's use of an STI in lieu of the first doped region.  (*Id.*).

**B.     Kilopass Has Acted In Good Faith and Did Not Misrepresent Facts and Arguments During the Litigation**

      **1.     The Parties' Dispute Over the Constructions of "Bitline" and "Wordline" In the Reexaminations and Litigation**

On November 24, 2010, Sidense requested the *inter-partes* reexamination of the '751 patent, arguing *inter alia*, that claims 1, 5, 9 and 11 of the '751 patent were anticipated by U.S. Patent No. 5,331,181 ("Tanaka"). (Dkt. No. 228-3, at pp. 33-37). In this request, Sidense asked the PTO to adopt "the broadest reasonable interpretation" of the '751 patent terms "wordline" and "bitline" to mean that such terms were arbitrary and interchangeable. (*Id.* at 11-12).[4] This position is directly contradictory to the position Sidense has taken in this litigation when it sought to construe the terms "bitline" and "wordline" during claim construction. (Dkt. No. 122, at pp. 4-10). The Court issued its construction on August 31, 2011, adopting neither Kilopass' nor Sidense's construction for the terms "bitline" and "wordline". (Dkt. No. 147, at pp. 8-9).

On February 18, 2011, the USPTO issued an Action Closing Prosecution, rejecting Sidense's "interchangeability" estoppel argument and found that the Tanaka reference did not anticipate claims 1, 5, 9 and 11. (Dkt. No. 228-4 at pp. 4-8). On August 22, 2011, Sidense filed a Appeal from this office action. On October 24, 2011, Sidense filed its appeal brief arguing the Examiner erred by refusing to consider the "interchangeability" argument for "bitline" and "wordline" in order to consider Tanaka as an anticipating reference. (Dkt. No. 228-5 at pp. 10-17). On January 6, 2012, Kilopass filed a responsive appeal brief. (Dkt. No. 228-6). With respect to claim 1 of the '751 patent, Kilopass stated: "Specifically, nothing in Tanaka discloses a memory cell with a gate dialectric that is "more susceptible to breakdown **near** the first doped semiconductor region that the second doped semiconductor region." (*Id.* at pp. at 6-8) (emphasis added).

For claims 1 and 9, Kilopass argued over Tanaka on the basis of the "location of the susceptibility of the gate dialectric." (*Id.* at 8). As for dependent claims 5 and 11, Kilopass' stated:

---

[4] Sidense phrased this as an estoppel argument, attempting to attribute the "interchangeability" position to Kilopass, but the USPTO rejected this in view of the fact that Sidense had submitted a sworn declaration from Mr. Kurjanowicz "explicitly stating that the terms wordlines and bitlines are not interchangeable arbitrary terms." (Dkt. 228-4, at pp. 4-8).

With respect to claims 5 and 11, the Patent owner agrees with the Examiner that Tanaka does not show a gate formed from a column bit line.  As can be seen in Figure 2(b) of Tanaka, the gates of the transistors are coupled to row wordlines.  Therefore [dependent] claims 5 and 11 are not anticipated by Tanaka  (*Id.* at 8).

On March 23, 2012, Sidense asked the Court to reconsider it constructions of the terms "wordline" and "bitline" in view of the above statement under the doctrine of judicial estoppel.  (Dkt. No. 192).  On April 6, 2012 Kilopass opposed, arguing that there could not be judicial estoppel as a matter of law based on incomplete proceedings and that Kilopass did not clearly and unequivocally disavow claim scope because it was arguing a different distinction over the Tanaka reference for the independent claims and those distinctions would follow the dependent claims notwithstanding the Examiner's comments regarding the configuration of the wordline being connected to the gate in Tanaka.  (Dkt. No. 207 at 4).[5]  On May 1, 2012, the Court issued an Order on Sidense's motion for reconsideration, refusing to apply judicial estoppel, but nevertheless finding disavowal.  (Dkt. No. 224 at 10).

Although Kilopass in good faith believed that it did not disavow claim scope, in order to set the record straight, on May 2, 2012, Kilopass filed a statement with the patent office to clarify why it believed the '751 patent was novel over Tanaka.  (Dkt. No. 228-7).  In this statement, Kilopass makes clear that it is not distinguishing claims 5 and 11 over Tanaka on the basis that Tanaka does not show a gate formed from a column bit line.  (*Id.* at 1).  The reexamination of the '751 patent is continuing on appeal and the PTO has not made a final determination on the basis for distinguishing the '751 patent over the Tanaka.  (Hogge Decl., ¶ 15).  On May 15, 2012, Kilopass moved for reconsideration of the Court's disavowal Order of claim scope and argued that its statement of correction to the PTO to clarify its distinctions over Tanaka provided the basis for reconsidering the Court's order.  (Dkt. No. 228 at pp. 5-7).  Kilopass also agued that the distinctions were made with respect to dependent claims, not the independent claims and that the distinction could not and should not apply across the board to all of Kilopass' patents.  (*Id.* at pp. 1-2, 7, 10).  The Court did not accept these arguments and on May 24, 2012, denied Kilopass' request for reconsideration from the disavowal order.  (Dkt.

---

[5] Tanaka programs the source and avoids programming in the channel and thus teaches away from the '751 patent.  (*Id*).

No. 235).  Despite the disavowal order, the Court did not *sua sponte* dismiss Kilopass' infringement claims, nor did Sidense ask the Court for dismissal of the case or move immediately for summary judgment.  An open and unresolved question still remained as to whether Sidense's alleged "wordline" was a "bitline".  A question that was then addressed by Kilopass' and Sidense's experts.

### C.     The Case Proceeds to Expert Discovery Phase and Dispositive Motions

Kilopass main concern with the Court's disavowal order was that Sidense would attempt to use that Order and its self serving product diagram illustrations to argue that it had a "wordline" connected to the gate of its bit cell and that Kilopass' patents covered only what is termed a "bitline" connected to the gate of the bit cell.  (*See* Dkt. No. 233).  What Sidense was calling its "wordline" was always considered by Kilopass to be a "bitline" as the line operates to program the cell sending bits down the connection to the gate and rupturing the gate oxide layer.  (Hogge Decl., Exh. 8, at Amended Exh. 1 pp. 1-2).  Kilopass' expert, Dr. Dean Neikirk also supported this theory providing extensive factual analysis and data.  (Hogge Decl., Exh. 1 at ¶¶ 76-82; Exh. 9 at ¶¶ 32-34, 42, 76-89).  Sidense moved to exclude Dr. Neikirk's testimony on the basis that his opinions were inconsistent with the Court's disavowal order.  (Dkt. No. 241).  Although the Court found in Sidense's favor on this issue in its summary judgment order, Kilopass has always maintained from the very beginning that Sidense's so-called "wordline" is the same as the "bitline".  (Hogge Decl., Exh. 8, at Amended Exh. 1 pp. 1-2).

Sidense argues that Kilopass' expert changes his theories.  This is simply not true.  Dr. Neikirk's opening expert report was due on April 13, 2012, before the Court's order on disavowal came down on May 1, 2012. ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████. (Hogge Decl., Exh. 9 at ¶¶ 42, 222-223).

     **1.**    **Kilopass' Expert Did Not Jettison Kilopass' Doctrine of Equivalents Theories for the "First Doped Semiconductor"**

     Dr. Neikirk's position is consistent and does not substantially depart from Kilopass' Infringement Contentions on what constitutes an equivalent of a "first doped semiconductor region." (Dkt. No. 254, at pp. 9-10).[6] In its Infringement Contentions, Kilopass clearly states that the "first doped region" is equivalent to Sidense's STI drain region. (Hogge Decl., Exh. 8, at Amended Exhibit 1, p. 3). ████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████. (Hogge Decl., Exh. 1, at ¶ 64; Exh. 8, at Amended Exhibit 1, p. 3). Although the Court disagreed and has found Dr. Neikirk's

---

[6] Kilopass timely disclosed its expert's theory during the expert phase. (Dkt. No. 254, at p. 4). Further, Sidense's expert fully responded to Kilopass' expert report, making no mention of any perceived discrepancies between Kilopass' Patent Local Rule 3-1 disclosures and Dr. Neikirk's expert report. (*Id.*) Sidense's counsel even deposed Dr. Neikirk and fully explored the opinions Dr. Neikirk sets forth in his expert reports. (*Id.*) During Dr. Neikirk's deposition, Sidense's counsel spent considerable time on Dr. Neikirk's analysis based on the doctrine of equivalents opinion regarding the first doped semiconductor region among other issues. (*Id.* at pp. 4-5). Indeed, at no time during the expert discovery phase did Sidense raise any issues concerning any discrepancies or differences between Kilopass' Patent Local Rule 3-1 disclosures and Dr. Neikirk's expert reports. As such, Kilopass did not seek leave to amend its Infringement Contentions.

theory on equivalence of a "first doped semiconductor region" to be new, this is not evidence of misrepresentation of facts or arguments, and clearly not evidence of bad faith.

**D.   Kilopass Did Not Harass Sidense's Customers - Sidense's Business Tort Claims Were Dismissed With Prejudice**

Section II.C of Sidense's Motion complains of conduct that formed the basis of Sidense's dismissed business tort claims.  Sidense alleges that Kilopass unnecessarily subpoenaed Sidense's customers, made misleading statements in Kilopass' "Litigation Update Document" and in an e-mail that Mr. Cheng sent to customers stating that Sidense has refused to responsibility for its customers. These allegations are the very same allegations that Sidense' raised in complaints that were dismissed as a matter of law by the Court on Kilopass' 12(b)(6) motions, summary judgment motion, and then voluntarily by Sidense.  (*See* Dkt. Nos. 35, 99, and 116).  Kilopass clearly is the prevailing party in these allegations.  Sidense cannot attempt to relitigate these issues in the form of its fee motion when clearly Sidense had no legal basis to allege these accusations in the first place.[7]  (*Id.*).

**E.   Kilopass' Business Tort Claims Were Not Baseless**

While Sidense espoused that Kilopass raised baseless business tort claims, it never once, during the prescribed summary judgment schedule, moved for summary judgment on Kilopass' business tort claims.  Had Sidense believed that Kilopass raised baseless claims, it should have moved for early summary judgment.  It did not.  Rather, Sidense cross-motioned for leave to file a summary judgment motion at the eve of trial, whereby the parties fully briefed the issues, and which this Court denied Sidense's motion.  (Hogge Dec., Exh. 16 at p. 11).

Contrary to Sidense's assertion, Kilopass had ample support for its business torts claims.  *See e.g.*, evidence cited in Kilopass' Opposition to Sidense's Motion for Leave to File a Motion for Summary Judgment On Kilopass' Business Torts (Dkt. No. 285), Kilopass' Opposition to Sidense's Motion in Limine #2 (Dkt. No. 311), and Joint Pretrial Conference Statement (Dkt. No. 308).

---

[7] The allegation in footnote one of Sidense's motion that Kilopass subpoenaed Sidense's customers for chips and then cited to none of this evidence in Kilopass' expert reports or opposition to Sidense's subpoena and the subpoena responses is untrue.  Kilopass' expert cited to XMOS' responses to Kilopass' subpoena and the subpoena responses confirming third party implementation of Sidense's technology would have been introduced at trial as evidence of direct infringement.  (Hogge Decl., Exh. 9 at ¶ 91, Exh. 10 (*see e.g.*, PEX 3-30, PX 59, 374, 378, 412-413, 418, 423, 428, 438-439).

Throughout the litigation, Kilopass has had a good faith belief that the allegations in its complaints are not based solely on the Lanham Act.  Only following the Court's orders on motions in limine was Kilopass' evidence limited to the Lanham Act claim.  (Dkt. No. 323).

Even so, Kilopass has ample support for its Lanham Act claim.  *See e.g.*, evidence cited in Kilopass' Opposition to Sidense's Motion for Leave to File a Motion for Summary Judgment On Kilopass' Business Torts (Dkt. No. 285), Kilopass' Opposition to Sidense's Motion in Limine #2 (Dkt. No. 311), and Joint Pretrial Conference Statement (Dkt. No. 308).  For example, on the technology page on Sidense website, Sidense displayed a stylized representation of its bit cell technology, captioned "Patented Split-Channel Cell." (Hogge Decl., Exh. 12). ████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████ (Hogge Decl., Exh. 13) (emphasis added).

Sidense has repeatedly cited the USPTO re-examination proceedings and its "bit cell patent" in discussing the Kilopass lawsuit, which focuses solely on the bit cell in isolation. ████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████. (Hogge Decl., Exh. 11).

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

8      Moreover, Sidense falsely accused Kilopass of dragging the case out.  Indeed, following the

9 Court's summary judgment order on non-infringement, Kilopass tried everything in its power to stop

10 the case, from moving to certify the Court's summary judgment order for appeal under Fed. R. Civ.

11 P. 54(b) and to stay all proceedings between both parties pending the outcome of an appeal to the

12 Federal Circuit Court of Appeals, (Dkt. No. 274), which Sidense opposed (Dkt. No. 278), to

13 mediation.  However, nothing works and Kilopass was forced to file a motion to dismiss its business

14 torts claims.  (Dkt. No. 325).

15 **III.   ARGUMENT**

16    **A.     THIS IS <u>NOT</u> AN EXCEPTIONAL CASE UNDER THE PATENT STATUTE 35 U.S.C. § 285**

17      The determination of whether to award fees under § 285 involves a two-step process.  First,

18 the district court must determine whether the prevailing party has shown that the case is

19 "exceptional" by clear and convincing evidence.  *Forest Labs, Inc. v. Abbott Labs*, 339 F.3d 1324,

20 1327 (Fed. Cir. 2003).  A case may be deemed exceptional when there has been some "material

21 inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or

22 inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified

23 litigation, conduct that violated Fed. R. Civ. P. 11, or like infractions."  *Brooks Furniture Mfg. Inc. v.*

24 *Dutalier Int'l Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).  "Absent misconduct in conduct of the

25 litigation or in securing the patent, sanctions may be imposed against the patentee ***only if both*** (1) the

26 litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless."  *Id.*

27 (emphasis added).  If the first requirement (subjective bad faith) is not satisfied, then the Court need

28

not decide whether the second (objectively baseless) standard was met. *See id.* at 1381-1382. "That second inquiry does not depend on the state of mind of the plaintiff at the time that the action was commenced, but rather requires an objective assessment of the merits." *Id*. at 1382. "There is a presumption that the assertion of an infringement of a newly granted patent is made in good faith." *Id*.

Second, if the court finds the case exceptional, it must determine whether, as a matter of the court's discretion, an award of fees is appropriate. *Forest Labs, Inc.*, 339 F.3d at 1328. "Even an exceptional case does not require in all circumstances the award of attorney fees." *See S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986). "It is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits." *Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 690-91 (Fed. Cir. 1984) (quoting S. Rep. No. 79-1503 (1946)). In the context of fee awards to prevailing accused infringers, courts have observed that § 285 is limited to circumstances in which it is necessary to prevent "a gross injustice" to the accused infringer and "have upheld findings of exceptionality to prevent such an injustice only when the patentee has procured its patent in bad faith (*i.e.*, committed inequitable conduct before the Patent Office) or has litigated its claim of infringement in bad faith." *Forest Labs, Inc.*, 339 F.3d at 1329.

### 1.   Sanctions Should <u>Not</u> be Imposed Against Kilopass Because the Litigation Was Brought In Good Faith Was Not Objectively Baseless

#### a)   The Litigation Was Brought in Good Faith

There is a presumption that the commencement of a patent infringement action is brought in good faith. *See Brooks Furniture Mfg. Inc. v. Dutalier Int'l Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). "[P]revailing on the merits alone does not create a presumption that the suit was vexatious or in bad faith." *CG Roxane LLC v. Fiji Water Co. LLC*, No. 07-2258, 2008 WL 4542803, at *2 (N.D. Cal. 2008); *see also Applied Information Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 968 (9th Cir. 2007) (affirming lower court's denial of attorney's fees after granting summary judgment in favor of the defendant). ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

1  ███████████████████████████████████████████████

2  ████████████████████████████████████████████████  nt.  (Facts at II.A).

3  The full record, as discussed above, shows that Kilopass has good faith and legitimate claims for

4  patent infringement against Sidense.

5  ████████████████████████████████████████████████

6  ████████████████████████████████████████████████████

7  ██████████████████████████████████.  *See Brooks Furniture Mfg. Inc. v. Dutalier Int'l Inc.*, 393

8  F.3d 1378, 1382 (Fed. Cir. 2005) (vacating the district court's grant of attorney fees, finding that the

9  patentee had a good faith belief in asserting its patent, regardless of the patentee's aggressive conduct

10 in the marketplace); *see also Forest Labs, Inc. v. Abbott Labs*, 339 F.3d 1324, 1327-29 (Fed. Cir.

11 2003) (reversing the district court's finding of "exceptional" case based on the patentee's pre-

12 litigation conduct) ("We have not, however, upheld a finding of exceptionality based on a patentee's

13 bad-faith business conduct toward an accused infringer prior to litigation, and we decline to expand

14 the scope of the statutory term "exceptional" in that manner.").

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ██████████████████████████████████.  (Cheng Decl., at ¶ 3).  The lawsuit was

18 brought against Sidense as a valid exercise of Kilopass' legal rights to enforce its patents.  (*Id.* at ¶ 2).

19 Kilopass brought the lawsuit only after thoroughly analyzing Sidense's infringing products and

20 obtaining opinions of counsel.  (*Id.*).  The patent infringement and business torts lawsuit against

21 Sidense was brought to target what Kilopass believed to be unlawful competition from Sidense and to

22 stop Sidense from infringing Kilopass' patents.  (*Id.*).

23 **b)    The Litigation Was Not Objectively Baseless**

24 ████████████████████████████████████████████████

25 ██████████████████████████████████████████████

26 ████████████████████████████████████████████

27 ██████████████████████████.  (Facts at II.A.5).  *See Serio-US Indus.,*

28 *Inc. v. Plastic Recovery Techs., Inc.,* 459 F.3d 1311, 1322 (Fed. Cir. 2006) (upholding trial court's

finding that defendant was not entitled to award of attorney fees under § 285 when plaintiff relied on opinion of patent counsel and made efforts to talk with defendant before bringing suit); *Cambridge Prods., Ltd. v. Penn Nutrients, Inc.,* 962 F.2d 1048, 1050 (Fed. Cir. 1992) (concluding that reasonable pre-filing inquiry shown by plaintiffs testing of sample of allegedly infringing product and acquiring documentary evidence that appeared to confirm that accused product fell within the patented method).  On the basis of Kilopass' pre-filing due diligence alone, Sidense is not entitled to a finding that the case was objectively baseless.

The fact that the Court granted summary judgment for non-infringement to Sidense on three separate issues does not mean that Kilopass had no reasonable basis to succeed on the merits of its claims.  A similar situation presented itself in *Computer Docking Station Corp v. Dell Inc.,* 519 F.3d 1366 (Fed. Cir. 2008).  In *Computer Docking,* the district court granted defendant Dell summary judgment for non-infringement based on a finding that plaintiff had disavowed "laptops" from the scope of the asserted claims.  After the Court construed the asserted claims in a manner that prevented plaintiff CDSC from maintaining its infringement claims against laptop computers, plaintiff tried to obtain final judgment for non-infringement to expedite the appeal, but the parties could not agree with respect to the "all connections" limitation which defendant claimed was not present in all its products.  *Id.* at 1373.  Defendant then moved for summary judgment of non-infringement, which the Court granted, and then followed with a motion for fees and costs under 35 U.S.C. § 285.  The district court declined to find the case exceptional which the Federal Circuit upheld on appeal.  The Federal Circuit stated:

> This court detects no clear error in the district court's finding that this case is not exceptional.  ***With respect to CDSC's decision to file suit, the district court found that the applicants' disavowal of laptops "did not seem self-evident at the beginning of the claim construction analysis."***  Fees Order, 2007 U.S. Dist. LEXIS 24045, at *12.  ***The district court also found that CDSC "engaged in a serious effort to evaluate the likelihood of success on its patent claims" Id. at *13.  The record supports this finding.  CDSC submitted affidavits from its employees and its in-house and outside counsel, who attested to CDSC's pre-filing investigation of the patent, prosecution history, and the accused devices.  Before filing suit, one of CDSC's engineers dismantled and performed various electrical tests on one of the Defendants' accused products, CDSC engaged in licensing discussions or attempted to do so with each Defendant, and CDSC sent infringement charts to each Defendant.  Id. at *12.***  Although this court agrees with the district court that the applicants clearly disavowed laptops in the prosecution history, based on the evidence of pre-filing activities in the record, the district court's finding that the action was not objectively baseless was not clearly erroneous.  *See Serio*, 459 F.3d at

1322; *see also Kao Corp. v. Unilever U.S., Inc., 441 F.3d 963, 974* (Fed. Cir. 2006) (affirming denial of attorney fees despite the patentee's knowledge that the claims did not cover salt forms of copolymer and that the accused infringer's products used a salt form of polymer.

The Court also found that plaintiff's decision to continue the litigation after the district court's claim construction did not make the case exceptional. *Id.* at 1380. The facts of *Computer Docking* are very similar to this case, although in Kilopass' case, the alleged disavowal, which Kilopass is appealing, happened two years into the lawsuit, not during the original prosecution. This fact makes it even a closer case on the merits. Also, like *Computer Docking,* Kilopass engaged in serious efforts to evaluate the likelihood of success on its patent claims, ████████████████████████████, and submitted affidavits from employees and experts, all who believed that Kilopass had a reasonable chance of success on its patent infringement claims. (Facts at II.A; Declarations of Hogge, Luan, and Ng). As for Sidense's non-infringement arguments, these were all close issues that were hotly disputed in claim construction, expert discovery, and summary judgment motion practice. (Facts at II.B-C).

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████. (Hogge Decl., Exh. 8). The parties' agreed upon definition for "semiconductor" did not necessarily preclude an argument by Kilopass that the STI was equivalent to the first doped semiconductor region.[8] The fact that the STI may have properties as insulator, does not prevent an argument under the doctrine of equivalents that using an STI in place of first doped region, serves the

---

[8] The parties agreed on a definition of semiconductor to mean, "a material, like silicon, whose conductivity is in the range between that of metals and insulators, and whose conductivity can be altered by the introduction of an impurity." (Dkt. No. 147 at 4).

1    same purpose, that is, to serve as a channel stop and prevent current leakage.  Indeed, the '751 patent

2    specifically contemplates the use of the STI to serve as a channel stop and isolate two memory cells.

3    (Hogge Decl., Exh. 15, '751 patent, col. 5, ll. 40-43).  Kilopass' expert, Dr. Neikirk, also supported

4    this theory.  *See* Hogge Decl., Exh. 1, Neikirk Expert Report at ¶ 71:



11   This was confirmed by the fact that Kilopass' inventors actually developed 1-T test cells in

12   2002 using the STI instead of the first doped region in silicon as proof of concept.  (Luan Decl., ¶ 7,

13   Exh. 5; Hogge Decl., Exh. 1, at ¶ 71).  Sidense's argument that the STI is substantially different as it

14   makes the bitcell larger rather than smaller, an argument accepted by the court in its summary

15   judgment order, does not find support in the patents, which teach the use of STI in the making of

16   these memory arrays.  Sidense's argument that the STI cannot be equivalent to the first doped region

17   based on the passage from the '751 patent in Col. 5: "However, in each of the memory cells

18   described above the cell size is relatively large.  The present invention provides a much smaller cell

19   size, thereby allowing a higher density."  (Hogge Decl., Exh. 15, at col. 5, ll. 23-26).  Sidense latched

20   onto that statement which was referring to the multiple transistor arrangements in Kilopass' other

21   patents, and argued that the STI was substantially different to the first doped region because it made

22   the cell larger.  Sidense is wrong.  The patents teach how to make cells smaller with the STI.

23   Second, Sidense argues that Kilopass' infringement theories with respect to first and second

24   doped regions being "spaced apart" in the language of the claims was frivolous because Kilopass was

25   looking at Sidense's technology from the perspective of the cross section of the cell and not as it

26   "actually exists."  The parties agreed in claim construction that spaced apart means "not in physical

27   contact" with the caveat that "not in physical contact" did not mean, "not in electrical contact".  (Dkt.

28   No. 147 at 4).  Sidense argued and the Court accepted on summary judgment that "spaced apart"

1   meant that all points of the STI could not be in physical contact with one another, as opposed to the

2   space between the channel region formed between the first and second doped semiconductor regions

3   as Kilopass was arguing.  (Dkt. No. 272, at p. 16-17).

4        Kilopass' arguments were not objectively baseless.  The claims require that the first and

5   second doped regions be formed in the substrate in a "spaced apart relationship to define a channel

6   region." ███████████████████████████████████████████████████████████████████

7   ███████████████████████████████████████████████████████████████████████████

8   ████████████████████████████ (Id.).  The claims were written to convey this perspective to

9   one of ordinary skill in the art who would view a functional diagram of the bitcell in a two-

10  dimensional cross section where one can clearly see that a channel region is formed between the first

11  and second doped areas.  (Hogge Decl., Exh. 1, at ¶ 72). ███████████████████████████

12  █████.  (Id.).

13       Finally, Sidense argues that Kilopass' infringement theories for "wordline" and "bitline" were

14  made baseless because it argued inconsistent positions before the USPTO and this Court.  This

15  argument ignores the fact that Sidense put Kilopass' patents in reexamination and that Sidense argued

16  to the PTO that wordline and bitline should be interpreted interchangeably on reexam but not in

17  litigation so that Sidense could benefit from different positions.  (Facts at II.B).  Although the court

18  resolved the disavowal in favor of Sidense, ███████████████████████████████████

19  ███████████████████████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████████

21  (Facts at II.A.).  Although the disavowal order provided Sidense with the arguments to make on

22  summary judgment that its structure fell within the scope of the allegedly disclaimed subject matter,

23  Kilopass disputes this and is appealing this issue.  The reexamination of the '751 patent appeal is

24  ongoing and Kilopass has clarified with the USPTO that it does not believe that a wordline connected

25  to a gate is a material difference over the claims.  (Facts at II.B.).  The complexity of these issues in

26  view of the multiple proceedings does not warrant a finding that Kilopass' arguments are objectively

27  baseless.  Indeed, this Court acknowledged that, "Kilopass derives benefit from this construction

28  [wordline/bitline] because it preserves its infringement allegation against Sidense's opposite

- 20 -

1   configuration." (Dkt. No. 224, p. 6). Sidense even admits that up until the Court's order on

2   disavowal, Kilopass had a valid infringement argument that its "wordline" structure was the same as

3   the "bitline" connected to the gate. (Dkt. 250, at pp. 4-15).

4        On all three of these points, Kilopass' arguments were not objectively baseless because they

5   were supported by substantial evidence, expert testimony and the ███████████████████████.

6                    **2.      There Was No Litigation Misconduct**

7        There was no litigation misconduct by Kilopass. First, Sidense complains that Kilopass'

8   changed its theories on what constitutes a "first doped semiconductor region" because its expert, Dr.

9   Neikirk did not consider Kilopass' Patent Local Rule Infringement Contentions. (Sidense Mot., at

10  17). This is not true. ████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████

12  ███████  (Tadlock Decl., Exh. 33, Neikirk Depo. Tr. At 26:20-27:11). As discussed above, Dr.

13  Neikirk's expert opinions under the doctrine of equivalents are consistent with Kilopass'

14  Infringement Contentions, albeit Dr. Neikirk elaborated on the function, way, result analysis as

15  experts generally do. ████████████████████████████████████████████

16  ██████████████████████████████. (Facts at II.A.3-5).

17        Second, Sidense complains that Kilopass made misrepresentations to the Court in an attempt

18  to "dodge the court's disavowal Order." (Sidense's Mot., at 17). Kilopass did not make

19  misrepresentations, but rather in good faith opposed Sidense's motion for reconsideration. In its

20  opposition to Sidense's motion for reconsideration, Kilopass argued that the statement in Kilopass'

21  appeal brief, acknowledging the examiner's statement as to what the Tanaka prior art taught

22  compared to dependent claims 5 and 11 of the '751 patent, did not constitute a clear an unmistakable

23  disavowal of claim scope across all of Kilopass' patents-in-suit. (Facts at II.B). When the Court

24  disagreed with this position, Kilopass filed a statement at the PTO to prevent the patent office from

25  issuing the patent on the basis that the '751 patent was distinguished solely from Tanaka because

26

27

28

Tanaka taught a wordline connected to the gate.  (*Id.*).[9]  The appeal of the '751 reexamination is continuing and this question still remains open.  (Hogge Decl., ¶ 15).

Third, Sidense argues that Kilopass and its expert, Dr. Neikirk introduced new theories of infringement after the court's disavowal Order.  However, the so-called new theories of how Sidense's "wordline" is same as the claimed "bitline" are the same theories that Kilopass has been pursuing from the beginning of this case.  Dr. Neikirk, in is Reply Report, attempted to explain how the Court's disavowal Order did not change this fact because the function of Sidense's "wordline" was functioning the same way as Sidense's bitline.  (Facts at II.C.1).

## B. THIS IS <u>NOT</u> AN EXCEPTIONAL CASE UNDER THE LANHAM ACT -- 15 U.S.C. § 1117(A)

### 1. Legal Authority

A district court has discretion to award attorneys' fees to a prevailing party under the Lanham Act, but only in "exceptional cases."  *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."); *Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir. 2000).  "[T]he Lanham Act *permits*, but does not mandate an award of attorneys' fees to the prevailing party in 'exceptional circumstances.'"  *Id.* (emphasis in original).  The Ninth Circuit interprets the "exceptional circumstances" requirement "rather narrowly."  *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 1071 (9th Circuit 2008).  "Exceptional circumstances can be found when the non-prevailing party's case is groundless, unreasonable, vexatious, or pursued in bad faith."  *Gracie*, 217 F.3d 1071 (internal quotation marks omitted); *see also Classic Media*, 532 F.3d at 990.

A claim is unreasonable or groundless for purposes of a permissible award of fees only if it is frivolous and fails to raise colorable or debatable issues.  *Applied Info. Sciences Corp. v. eBay Inc.*, 511 F.3d 966, 973 (9th Cir. 2007).  Thus, if the claim raises "debatable issues of law and fact," then it cannot be said that the case is an "exceptional" one warranting an award of attorney fees.  *Stephen W. Boney, Inc. v. Boney Services, Inc.*, 127 F.3d 821, 827 (9th Circuit 1997); *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 2010 WL 8500520 (N.D. Cal. 2010) (denying motion for attorneys' fees

---

[9] Litigation counsel are prevented under the Protective Order from participating in the reexamination and thus cannot be accused of taking inconsistent positions at the PTO and before this Court. Prosecution counsel separately handles the reexamination.  (Dkt. No. 102, ¶8).

1   where plaintiff had a debatable issues of law and fact under the Lanham Act); *CG Roxane LLC v. Fiji*

2   *Water Co. LLC*, 2008 WL 4542803 (N.D. Cal. 2008) (denying motion for attorneys' fees where

3   plaintiff had a colorable claim under the Lanham Act).  The terms "groundless' and 'unreasonable"

4   reflect the objective merits of the case, and emphasize that it is not enough that the plaintiff does not

5   prevail.  Rather, to be an 'exceptional' case within the meaning of the statute, the plaintiff's suit must

6   lack any reasonable foundation."  *Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues,*

7   *Inc.*, 223 F.3d 1143, 1147 (10th Cir. 2000).  "A case is not exceptional simply because the court

8   granted summary judgment; otherwise, every Lanham Act case in which a summary judgment

9   motion was granted would be considered an 'exceptional' case."  *Sand Hill Advisors,* 2010 WL

10  8500520, at *3.

### 2.   Kilopass' Lanham Act Claims Were Not Frivolous

12         As explained above, Kilopass asserted false advertising claims on the basis, *inter alia*, that

13  Sidense was misrepresenting to customers and the public that it had a bitcell patent on its 1-T Fuse

14  Logic NVM IP was patented.  (Facts at II.E).  Sidense's advertising in the U. S. claims that it has a

15  patent covering its bitcell.  (*Id*.).  ████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████████████████████

18  ████████████.  (*Id*.).

19         Thus, the totality of the evidence, based on representations that Sidense made on its website,

20  in ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████████████████

23  ████████████.  (Facts at II.E).

24         Sidense argues that Kilopass' litigated meritless claims and failed to properly pursue these

25  claims in discovery because it did not analyze Sidense's other patents, seek claim constructions or

26  utilize a technical expert. (Sidense's Motion at 21).  However, the fact that Sidense has foreign

27  patents was not relevant to Kilopass' tort claims based on the '855 patent.  Also, Kilopass did not

28  believe it was necessary to seek claim construction on the claims of the '855 patent because the file

1   history and amended claims clearly recited structures that are not a part of the bit cell and the

2   testimony of the fact witnesses coupled with patent office record provided ███████████

3   ████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   (Facts at II.E).

6          Kilopass had good faith Lanham Act claims and Sidense never moved for summary judgment

7   on these claims.  The fact that the Court eventually dismissed Kilopass' evidence on the motion *in*

8   *limine* stage does not warrant the grant of attorneys' fees.  *See M2 Software, Inc. v. M2*

9   *Communications, LLC.*, 281 F. Supp. 2d 1166, 1176-1177 (C.D. Cal. 2003) (holding that a plaintiff's

10  misconduct that was not egregious enough to constitute bad faith and did not warrant an award of

11  attorneys' fees; additionally excluding plaintiff's only evidence via motion in limine did not warrant

12  penalizing Plaintiff again by awarding attorneys' fees).  In *M2 Software*, the Court granted motion in

13  limine that excluded plaintiff's evidence.  The Court rejected defendant's motion for attorney fees,

14  reasoning that that the Court granting a motion *in limine* in that case excluding Plaintiff's only

15  evidence does not warrant penalizing Plaintiff again by awarding attorneys' fees.  *Id.* at 1176-77.

16         A similar situation also presented itself in *True Center Leasing, Inc. v. Sonoran Gate, LLC*,

17  427 F. Supp. 2d 946, 950 (D. Ariz. 2006) (holding that misconduct falling short of bad faith or

18  opprobrious conduct does not provide evidence that a case is exceptional).  In *True Center*, the Court

19  granted summary judgment for the defendant, finding that the plaintiff had not produced evidence of

20  a false statement of fact made in a commercial setting.  Nevertheless, the Court rejected defendant's

21  motion for attorneys' fees, reasoning that the alleged similarity between the plaintiff and defendant's

22  accused products, and plaintiff's contention that the marketing of such products by defendants

23  impliedly represented that defendant had invented the accused products, provided at least a colorable

24  basis, for the claims.  *Id.* at 950-951.  Indeed, even where Supreme Court case law has rendered a

25  plaintiff's claim "fruitless and perhaps groundless," courts have denied attorney fees absent any

26  "direct evidence . . . that [p]laintiff's counsel was aware" of this fact "and still proceeded in bad faith

27  or vexatiously."  *Perlan Therapeutics, Inc. v. Nexbio, Inc.*, 2007 WL 935619, at *4 (S.D. Cal. Mar.

28  19, 2007) (emphasis added).

1

**C.     SIDENSE'S ATTORNEYS' FEES REQUEST IS NOT REASONABLE**

2     Sidense has asked for attorneys fees, costs, and expert fees in connection with defending the

3  patent infringement and business tort claims.  However, the reasonableness of Sidense's fees cannot

4  yet be addressed by Kilopass until there is determination by the Court as to whether Sidense is even

5  entitled to fees and costs.  In the event that the Court determines that Sidense is entitled to some

6  portion of its fees or costs, Kilopass will need to evaluate the reasonableness of Sidense's claimed

7  fees and costs and examine Sidense's attorney and expert invoices.  Sidense has not submitted

8  attorney or expert invoices but is asking the Court to award over $5.2 million in fees and costs

9  without full disclosure of invoices.  Kilopass reserves its objections to the reasonableness of the

10  claimed fees until there is a determination by the Court as to whether Sidense is entitled to such fees.

11
**D.     THE COURT SHOULD NOT AWARD SIDENSE EXPERT COSTS
PURSUANT TO THE COURT'S INHERENT POWERS**

12
     Sidense is not entitled to the award of expert costs under the Court's inherent authority.

13
Kilopass incorporates by reference the arguments made above as to why Kilopass' patent

14
infringement and business torts cases were subjectively brought in good faith and were not

15
objectively baseless.  Sidense claims it incurred unnecessary expert fees because Dr. Neikirk's

16
opinions were allegedly unreliable and that the Court excluded portions of his opinions.  However,

17
there was no finding in this case that Dr. Neikirk's opinions were unreliable and the Court did not

18
grant Sidense's Daubert motion.  Rather, the Court held that Kilopass did not amend its infringements

19
contentions and portions of Dr. Neikirk's opinions would be considered new theories not disclosed in

20
the infringement contentions.  (Dkt. No. 272).  Therefore, although the Court did not consider Dr.

21
Neikirk's equivalence theory for the "first doped semiconductor" region, neither Dr. Neikirk Nor

22
Kilopass advanced these theories in bad faith.

23
**IV.     <u>CONCLUSION</u>**

24
     For the reasons discussed herein, Kilopass respectfully requests that Sidense's motion for

25
 attorneys' fees be denied.

26

27

28

Dated:  October 30, 2012

Respectfully Submitted,
SNR Denton US LLP


By:   _/s/ Mark Hogge_____
          Mark Hogge
Attorneys for Plaintiff
KILOPASS TECHNOLOGY, INC.

KILOPASS' OPPOSITION TO SIDENSE'S MOTION FOR ATTORNEYS' FEES
CASE NO. 3:10-cv-02066 SI

1    <u>**CERTIFICATE OF SERVICE**</u>

2         I, Jocasta Wong, hereby declare:

3         I am employed in the City and County of Palo Alto, California in the office of a member of

4    the bar of this court whose direction the following service was made.  I am over the age of eighteen

5    years and not a party to the within action.  My business address is SNR Denton US LLP, 1530 Page

6    Mill Road, Suite 200, Palo Alto, California 94304.

7         On October 30, 2012, the following document, described as:

8    **KILOPASS TECHNOLOGY, INC.' S OPPOSITION TO SIDENSE CORP.'S**
     **MOTION FOR ATTORNEYS' FEE**
9

10   to be served via CM/ECF by the Clerk of the Court, upon all counsel of record registered to receive

11   electronic filing, as indicated on the Court's website, or by United States Mail, upon those parties not

12   registered for electronic filing.

13        I declare under penalty of perjury that the above is true and correct.  Executed on

14   October 30, 2012, in Palo Alto, California.

15                                              _____/s/ *Jocasta Wong*_____
16                                                   Jocasta Wong

17

18

19

20

21

22

23

24

25

26

27

28