Rachel Repka (CA Bar No. 248331)
rachel.repka@snrdenton.com
Imran A. Khaliq (CA Bar No. 232607)
imran.khaliq@snrdenton.com
**SNR DENTON US LLP**
1530 Page Mill Road, Suite 200
Palo Alto, CA 94304-1125
Telephone: (650) 798-0300
Facsimile: (650) 798-0310

Mark L. Hogge (*Pro Hac Vice*)
mark.hogge@snrdenton.com
Shailendra K. Maheshwari (*Pro Hac Vice*)
shailendra.maheshwari@snrdenton.com
**SNR DENTON US LLP**
1301 K Street, NW, Suite 600
Washington, DC 20004
Telephone: (202) 408-6400
Facsimile: (202) 408-6399

Attorneys for Plaintiff
KILOPASS TECHNOLOGY, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

KILOPASS TECHNOLOGY, INC., a
California Corporation,

              Plaintiff,

    v.

SIDENSE CORP., a Canadian
Corporation,

              Defendant.

Case No. 3:10-cv-02066 SI

**PLAINTIFF KILOPASS TECHNOLOGY, INC'S MOTION FOR SANCTIONS, ATTORNEYS' FEES AND COSTS AGAINST SIDENSE CORP. AND KILPATRICK TOWNSEND & STOCKTON LLP UNDER 28 U.S.C. SECTION 1927 AND THE COURT'S INHERENT AUTHORITY**

# **TABLE OF CONTENT**

I.     INTRODUCTION .................................................................................................. 2

II.    FACTUAL BACKGROUND ............................................................................... 5

    A.     Sidense Concealed Acts of Direct Infringement --
    Manufacturing of Chips In the U.S. -- and Vexatiously
    Multiplied the Proceedings By Misdirecting Kilopass To Seek
    Discovery From Third Parties ................................................................. 5

    B.     Sidense Vexatiously Multiplied the Litigation By Refusing to
    Stipulate To Dismissal of Kilopass' Business Torts Case ...................... 9

    C.     Kilopass' Fees and Costs Incurred Due to Sidense's
    Unreasonable and Vexatious Multiplication Of the
    Proceedings ........................................................................................... 11

III.   LEGAL AUTHORITY ...................................................................................... 11

    A.     The Court's Inherent Power to Impose Sanctions................................. 11

    B.     Sanctions Under 28 U.S.C. § 1927 ...................................................... 12

IV.    ARGUMENT ...................................................................................................... 14

    A.     Sidense and Its Counsel Should Be Sanctioned For
    Withholding Evidence of Direct Infringement And Causing
    Kilopass to Unnecessarily Seek Expensive Third Discovery of
    Sample Products ................................................................................... 14

    B.     Sidense and Its Counsel Should Be Sanctioned For Refusing
    To Stipulate To Dismissal Of Kilopass' Business Tort Claims ........... 16

V.     CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

CASES

*B.K.B. v. Maui Police Dep't*,
    276 F.3d 1091 (9th Cir. 2002) ........................................................................... 13, 17

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) .................................................................................. 2, 11, 12

*Estate of Blas v. Winkler*,
    792 F.2d 858 (9th Cir. 1986) ............................................................................... 13

*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001) ................................................................ 2, 11, 12, 13

*Girardi v. Down Chemical Co.*,
    611 F.3d 1027 (9th Cir. 2010) ............................................................................. 13

*In re Keegan Mgmt. Co., Securities Litigation*,
    78 F.3d 431 (9th Cir. 1996) ............................................................................. 2, 13

*MGIC Indemnity Corp. v. Moore*,
    952 F.2d 1120 (9th Cir. 1991) ............................................................................. 13

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1980) .......................................................................................... 11

*Salstrom v. Citicorp Credit Services, Inc.*,
    74 F.3d 183 (9th Cir. 1996) ................................................................................ 13

*Trulis v. Barton*,
    107 F.3d 685 (9th Cir. 1996) .............................................................................. 13

*United States v. Blodgett*,
    709 F.2d 608 (9th Cir. 1983) ......................................................................... 12, 14

*Zambrano v. City of Tustin*,
    885 F.2d 1473 (9th Cir. 1989) ............................................................................. 12

STATUTES

28 U.S.C. § 1927 ..................................................................................... passim

35 U.S.C. § 271(a) .................................................................................... 5, 8

35 U.S.C. § 271(b) ....................................................................................... 6

35 U.S.C. § 271(c) ....................................................................................... 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 34(a)(1) ........................................................................................................ 9, 15

Fed. R. Civ. P. 34(a)(2) ........................................................................................................... 9

Fed. R. Civ. P. 41 ................................................................................................................... 11

Fed. R. Civ. P. 54(b) ......................................................................................................... 10, 11

Local Rule 54-5 ......................................................................................................................... 1

KILOPASS' MOTION FOR SANCTIONS                    CASE NO. 3:10-CV-02066 SI

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on November 20, 2012, at 9:00 a.m. in Courtroom 10, 19th floor Federal Building, 450 Golden Gate Avenue, San Francisco, CA 94102, Kilopass Technology Inc. ("Kilopass"), by and through their counsel, will and hereby do move the Court for sanctions against Sidense Corp. ("Sidense") and its counsel at Kilpatrick Townsend & Stockton LLP, pursuant to Fed. R. Civ. P., 28 U.S.C. § 1927 and this Court's inherent powers.

The parties met and conferred pursuant to Civil Local Rule 54-5 on October 15, 2012 in an attempt to resolve any disputes prior to filing this motion.

This motion is made on grounds that Sidense and its counsel needlessly and vexatiously multiplied the proceedings, took unreasonable and indefensible positions, and caused Kilopass to expend unnecessary resources litigating issues that should never have been litigated in the first instance.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and the Declaration of Mark Hogge, the pleadings, files and records in this action, and such other and further evidence and argument as may be presented at the hearing on the motion.

//

//

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.      INTRODUCTION**

3       This motion is made on grounds that Sidense and its counsel needlessly and vexatiously

4   multiplied the proceedings, took unreasonable and indefensible positions, and caused Kilopass to

5   expend unnecessary resources litigating issues that should never have been litigated in the first

6   instance.  The statutory support of the motion comes from 28 U.S.C. § 1927 and the Court's

7   inherent authority to regulate its courtroom.

8       The idea of a "vexatious" litigant is one who has unreasonably, recklessly (or in bad faith)

9   prolonged litigation to either the detriment of the court's or the opposing party's resources.  More

10   precisely, district courts "may levy fee-based sanctions when a party has acted in bad faith,

11   vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken

12   actions in the litigation for an improper purpose."  *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir.

13   2001); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).

14       Section 1927 provides:

15           "Any attorney or other person admitted to conduct cases in any court of
            the United States . . . who so multiplies the proceedings in any case
16           unreasonably and vexatiously may be required by the court to satisfy
            personally the excess costs, expenses, and attorneys' fees reasonably
17           incurred because of such conduct." 28 U.S.C. § 1927.

18   The statute "applies only to unnecessary filings and tactics once a lawsuit has begun." *In re*

19   *Keegan Mgmt. Co., Securities Litigation*, 78 F.3d 431, 435 (9th Cir. 1996).

20       There are two primary complained of acts whose cumulative cause and effect led to

21   unnecessary and prolonged litigation.

22       The first concerns Sidense's obfuscation of evidence of direct infringement.  Sidense and

23   its counsel informed the Court that Sidense could not be held liable for direct infringement

24   because it did not manufacture chips in the United States using the 1-T eNVM accused

25   technology.  Based on this representation, Kilopass went on a wild goose chase searching for

26   evidence of direct infringement from third parties.  This was unnecessary, wasteful, and

27   unjustified.  The reality is, Sidense hid evidence from Kilopass and its attorneys during the entire

28   discovery period; Sidense had actually manufactured its chips in the United States in an IBM

1    foundry.

2         Kilopass' original amended complaint set forth direct infringement claims based on Form

3    18 of the Federal Rules of Civil Procedure.  Sidense attacked the complaint by filing a motion to

4    dismiss supported specifically by the declaration of its Chief Technology Officer, Wlodek

5    Kurjanowicz, on July 28, 2010.  Mr. Kurjanowicz specifically declared under oath that, "Sidense

6    does not manufacture semiconductor chip products, but instead licenses its memory designs to

7    customers for their use in manufacturing their own semiconductor chip products."  This statement

8    was <u>false</u>.  The motion to dismiss, citing to Mr. Kurjanowicz's declaration, repeated the same false

9    contention and represented to the Court that Sidense's customers were the source of direct

10   infringement.  Kilopass relied on that sworn declaration, removed the direct infringement claim,

11   extensively amended indirect infringement, and pursued discovery from customers for evidence of

12   direct infringement.  Some 19 months later, Mr. Kurjanowicz admitted in a continued deposition

13   after the close of fact discovery that Sidense made chips in the U.S. at an IBM foundry somewhere

14   between 2005-2011.  Sidense had the chips and withheld them during the whole discovery period.

15        In the intervening 19 months, Kilopass was forced to subpoena some 50 customers and

16   prospective customers looking for Sidense designs, when Sidense had the chips all along and

17   could have very easily produced them at the outset of the litigation.  Sidense's purported

18   justification for withholding this evidence is that only the "commercial" product was of concern,

19   not the test chips.  That has never been the law in the United States and cannot be a basis for

20   withholding or failing to voluntarily produce evidence of direct of infringement.  Sidense's

21   litigation attorneys include registered patent attorneys, and it is simply not possible for them to

22   have a good faith belief in such frivolous argument.  As a result, Kilopass was forced to subpoena

23   numerous third parties for chips containing Sidense's accused designs, and even then Sidense and

24   its counsel irrationally fought third party discovery leading to unnecessary motions to compel and

25   protective order motion practice.  Sidense and its counsel had no reasonable justification for

26   resisting third party discovery from Sidense's customers, especially after withholding evidence of

27   Sidense's own U.S. manufactured chips.

28        After Kilopass learned of this deceit, Kilopass demanded the chip samples, and requested

- 3 -

1    that Sidense stipulate to Kilopass' filing of a third amended complaint with direct infringement

2    claims.  Sidense and its counsel refused Kilopass' request.  This forced Kilopass to expend

3    additional resources and file a motion for leave to amend its complaint and bring these facts to the

4    Court's attention.  Sidense's position was so completely frivolous that it did not even oppose

5    Kilopass' motion for leave to amend and instead filed a statement of non-opposition.  Such tactics

6    were conceived in bad faith and had no other basis other than to hide evidence of direct

7    infringement, pressure Kilopass to search for chips, and multiply the proceedings.

8           The second basis for sanctions against Sidense arises from Sidense's post-summary

9    judgment conduct.  After the Court's order on summary judgment of non-infringement favoring

10   Sidense, Kilopass moved immediately to stay its business torts case and appeal the non-

11   infringement order to the Court of Appeals for the Federal Circuit.  Initially, Sidense and its

12   counsel refused to stipulate to a stay of both Kilopass' and Sidense's business tort cases, but rather

13   insisted on pursuing Sidense's own business torts case (*Sidense Corp. v. Kilopass Technology Inc.*

14   *et a*l., CV 11-4112-SI).  Sidense wanted Kilopass to dismiss its business tort claims without

15   prejudice and only resurrect them if Kilopass could prevail on its patent infringement appeal

16   before the Federal Circuit.  Meanwhile, Sidense offered to pursue its own remaining business tort

17   claims, of which, 80% had already been dismissed on summary judgment and early Rule 12

18   motion practice.

19          While previously feeling full of gusto for its business tort claims, Sidense then *voluntarily*

20   dismissed its business tort claims *with prejudice* a month later.  Even after dismissing Sidense's

21   own case, Sidense and its counsel refused to allow Kilopass to dismiss Kilopass' business torts

22   claims *without prejudice* on the same terms that Sidense previously offered Kilopass.  That is, a

23   dismissal *without prejudice* and only resurrect them if there is a reversal from the Federal Circuit.

24   Because Sidense refused to dismiss the case, Kilopass had no recourse but to seek dismissal from

25   the Court, which the Court granted *with prejudice.*

26          In light of Sidense's false declaration, unreasonable and vexatious multiplication of the

27   proceedings, delay, and bad faith representations to the Court and Kilopass, Kilopass seeks

28   sanctions against Sidense's counsel under 28 U.S.C. § 1927 and against Sidense and its counsel

1    under the Court's inherent powers.

2    **II.    FACTUAL BACKGROUND**

3              **A.    Sidense Concealed Acts of Direct Infringement -- Manufacturing of Chips In
                      the U.S. -- and Vexatiously Multiplied the Proceedings By Misdirecting
4                     Kilopass To Seek Discovery From Third Parties**

5              Kilopass filed an Amended Complaint for patent infringement against Sidense on June 18,

6    2010 alleging infringement of U.S. Patent Nos. 6,940,751 ("the '751 patent"), 6,77,757 ("the '757

7    patent"), and 6,856,540 ("the '540 patent").  (Dkt. No. 6).  Kilopass' asserted patents are

8    collectively referred to as "the patents-in-suit."  In this Complaint, Kilopass alleged that Sidense

9    "infringed and continues to infringe the [patents-in-suit] by its active manufacture, use, sale, offer

10   for sale, export and/or import of the 1T eNVM technology."  (*Id.*, at ¶¶ 28, 34, 40).

11             On July 28, 2010, Sidense and its counsel filed a motion to dismiss Kilopass' Amended

12   Complaint, contending, *inter alia*, that Kilopass had failed to state a cause of action for direct

13   infringement under 35 U.S.C. § 271(a).  (Hogge Decl., Exh. 4 (Dkt. No. 12) at pp. 15-16).  In this

14   motion, Sidense and its counsel declared that:

15             -"Sidense does not manufacture semiconductor chip products, but instead licenses
              its memory designs to customers for their use in manufacturing their own
16            semiconductor chips."  (*Id.* at p. 3);

17            - "Sidense does not make, use, offer to sell, or sell any apparatus or method -- its
              business is licensing its technology, i.e., designs, to customers, who in turn use
18            those designs to build embedded bit cells and bit cell arrays in chips manufactured
              by or for them."  (*Id.* at p. 11);
19
              - "Sidense's only 'product' is its memory macro-cell design, which Sidense
20            licenses to customers who download computer 'GDS' files containing those
              designs from Sidense's server in Ottawa, and who use those files to build
21            semiconductor devices in which memory cells manufactured according to
              Sidense's designs are embedded."  (*Id.*)
22

23             These facts were sworn to by Mr. Wlodek Kurjanowicz, Sidense's Chief Technology

24   Officer and a Founder of Sidense.  (Hogge Decl., Exh. 5 (Dkt. No. 14)).  Mr. Kurjanowicz stated

25   in this sworn declaration that, "Sidense does not manufacture semiconductor chip products, but

26   instead licenses its memory designs to customers for their use in manufacturing their own

27   semiconductor chip products."  (*Id.* ¶ 4).  This statement is false.

28             Sidense and its counsel further asserted that Sidense had limited knowledge of its

- 5 -

customers' actions and products, "[Sidense] had limited knowledge about its customers actions and products; its knowledge was limited to the fact its customers used the Accused Products to make non-volatile memory." (Hogge Decl., Exh. 6 (Dkt. No. 199-2 Exh. 8) at p. 2).

From the start of the litigation, Sidense had made clear that it was not a maker, but just a designer of the accused memory array and that its customers make the semiconductor devices using the accused technology. (Hogge Decl., Exh. 4 (Dkt. No. 12)). Sidense also repeatedly stressed that it believes its macros and GDS files are not sufficient for Kilopass infringement theories and that Kilopass was required to review and analyze the chips themselves. (*Id*.). All the while, Sidense was hiding its own chips.

Relying on Sidense's representations to the Court, on August 17, 2010, Kilopass filed a motion for leave to file a Second Amended Complaint and removed any allegations of direct infringement. (Dkt. No. 21). On October 12, 2010, this Court granted Kilopass' motion for leave to file a Second Amended Complaint and dismissed Sidense's Motion to Dismiss. (*See* Dkt. No. 37).

On October 14, 2010, Kilopass filed a Second Amended Complaint against Sidense. (Dkt. No. 38). In this Complaint, Kilopass amended its allegations to state causes for inducement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271(c), based on the representations made by Sidense, its Chief Technology Officer, and its counsel, that Sidense does not manufacture any chips in the United States using the accused 1-T eNVM design, but rather enables Sidense's customers to manufacture such chips using the accused designs. (*Id*., at ¶ 44).

Because Sidense represented that it did not manufacture memory chips, Kilopass was forced to drop its direct infringement claim against Sidense and pursue evidence of direct infringement from Sidense's customers. Accordingly, Kilopass and its attorneys were left with no option but to take discovery of third parties to obtain samples of chips, related technical information, and sales information. Over the course of several months, Kilopass issued 52 subpoenas to third parties in order to obtain evidence of direct infringement. (Hogge Decl., ¶ 9).

Sidense's attorneys, representing at least 14 of the subpoenaed parties, refused to provide discovery from these subpoenaed parties and withheld evidence of direct infringement and

1   customer test chips.  (Hogge Decl., ¶ 9, and Dkt. No. 108-1).  After countless hours of

2   correspondence and meet and confers, which led nowhere, Kilopass moved to compel Amimon's

3   (one of the subpoenaed parties represented by Sidense's counsel) production of documents and

4   things in response to Kilopass' subpoena.  (Dkt. No. 106).  In response, Sidense's counsel moved

5   for a protective order, hoping to quash 48 subpoenas Kilopass had issued to Sidense's customers

6   up to that time.  (Dkt. No. 108).  On June 12, 2011, this Court granted Kilopass' motion to compel

7   discovery from Amimon, ordering it to produce all non-privileged documents that fall within

8   Kilopass' narrowed subpoena request.  (Dkt. No. 117).  Additionally, the Court denied Sidense's

9   motion to quash all 48 subpoenas issued up to that time, holding that Kilopass' requests for

10  documents from third parties were not duplicative of materials previously requested from Sidense.

11  (*Id*.).  Sidense's attorneys forced Kilopass to pay for the costs of the chips before agreeing to

12  produce the Amimon chips.  (Hogge Decl., ¶ 9).  Sidense should have produced its chips to avoid

13  all that wasteful effort, but Sidense continued withholding its own chips made in the U.S.

14          On March 12, 2012, Sidense filed a motion for contempt and order to show cause for

15  Kilopass' and its counsel's alleged violation of the Protective Order in this case.  (Dkt. No. 180).

16  Sidense argued that Kilopas and its counsel violated the protective because Kilopass subpoenaed

17  customers from Sidense's confidential customer list and that Kilopass became privy to this list.

18  (Dkt. No. 180).  On March 26, 2102, Kilopass filed a response to this motion expending

19  substantial time and energy into submitting evidence to the Court that Kilopass' knowledge of this

20  parties was not confidential and that Kilopass' lawyers did not violate the Protective Order.  On

21  April 4, 2012, the Court denied Sidense's contempt motion, finding that the list of subpoenaed

22  parties was not confidential.  (Dkt. No. 206).

23          Although Sidense was under a duty to identify its manufacture of these chips in its initial

24  disclosures and in response to Kilopass' First Set of Requests for Production, on October 28,

25  2011, Kilopass propounded a specific request on Sidense seeking: "Samples of all chips showing

26  actual successful programming of Sidense's OTP technology, 1-T Fuse Logic NVM, Sidense's

27  GDS files and the Sidense designs and technology . . ."  (Hogge Decl., Exh. 7, Kilopass' 2nd Set

28  of Requests for Production).  On December 1, 2011, Sidense served its objections to Kilopass'

1   requests for chip samples stating that, "Sidense will produce samples of chips responsive to this

2   request, to the extent such things are located within its possession, custody or control and subject

3   to a reasonable search." (Hogge Decl., Exh. 8, Sidense's Response to Kilopass 2nd Set of Requests

4   for Production).  Despite Sidense's promise to produce such chips after a reasonable investigation,

5   no chips were actually produced or made available for inspection at this time.  This was a bad faith

6   discovery response.

7        On February 24, 2012, Kilopass took the continued deposition for Mr. Wlodek

8   Kurjanowicz on the design and implementation of Sidense's macros and GDS files.  During this

9   deposition, Mr. Kurjanowicz testified for the first time that Sidense had manufactured test chips

10  with the accused technology in an IBM foundry in the United States.  (*See* Hogge Decl., Exh. 9,

11  Kurjanowicz 02/24/12 Depo. Tr. at pg. 269-271, 295).  This was, of course, contrary to his sworn

12  declaration.

13       On March 1, 2012, Kilopass sent a meet and confer letter to Sidense requesting that

14  Sidense immediately produce or make available for inspection the chips that Sidense had

15  manufactured at the IBM foundry in the United States.  (Hogge Decl., Exh. 10).  Furthermore,

16  based on Mr. Kurjanowicz's testimony and the existence of these test chips produced by Sidense

17  in the U.S., Kilopass requested that Sidense stipulate to an amendment to Kilopass' Complaint to

18  include allegations for direct infringement under 35 U.S.C. § 271(a).  (*Id*.).

19       More than three weeks after Kilopass' meet and confer letter, on March 22, 2012, Sidense

20  opposed Kilopass' request for a stipulation to permit Kilopass' to amend its complaint to include

21  allegations of direct infringement.  (Hogge Decl, Exh. 11) ("Sidense nevertheless maintains its

22  opposition to Kilopass' attempt to amend its complaint long after the close of discovery.").

23  Sidense and its counsel further stated in bad faith that they did not believe that Kilopass' request

24  for production (Request No. 44) could reasonably be read to include a request for "test chips" but

25  rather, Sidense had unilaterally construed this request to cover only "commercial chips."  (Hogge

26  Decl, Exh. 8).  Sidense's position is directly contradicted by the plain language of Kilopass'

27  Request No. 44, which seeks "[s]amples of **all** chips showing actual successful programming of

28  Sidense's OTP technology" (emphasis added) and does not draw any distinction between test

1    chips or commercial chips.  Hogge Decl, Exh. 7).  In addition, Sidense stated that Kilopass had

2    delayed in uncovering this information because Sidense had produced "volumes of qualification

3    test data on October 31, 2011," from which a search for "product test data" would yield 3200 hits,

4    "some of which were emails, but hundreds of which were test reports."  (Hogge Decl, Exh. 11).  In

5    the same letter, Sidense goes on to state, "[a]s far as the test chips themselves are concerned, the

6    IBM test chips are located at Sidense in Ottawa.  However, as advised, this project was cancelled,

7    possibly before qualification testing, so there may not be test data, although IBM produced a huge

8    amount of IBM documents."  (*Id*.).  On March 27, 2012 Sidense finally made the IBM test chips

9    available for inspection at its Menlo Park office.  (Hogge Decl, Exh. 12, Mr. Hutchins' 3/27/12e-

10   mail).

11          Because Sidense and its counsel refused to stipulate to Kilopass' filing of a third amended

12   complaint, on April 11, 2012, Kilopass was then forced to file a motion with the Court for leave to

13   amend its complaint to add allegations of direct infringement.  (Dkt. No. 212).  Sidense then,

14   surprisingly, filed a statement of non-opposition to this request, even though earlier Kilopass had

15   requested a stipulation to amend its complaint.  (Dkt. No. 223).  This again caused unnecessary

16   motion practice.

17          On May 22, 2012, Kilopass requested sampling and testing of the IBM test chips pursuant

18   to Fed. R. Civ. P. 34(a)(2).  (Hogge Decl., Exh. 12).  Sidense was not initially willing to provide

19   the chips for testing even though it had several copies of these chips and despite the fact that Rule

20   34 requires a party to make discovery items available for testing.  (*Id.*).  This led to yet another

21   round of meet and confers with Sidense and Kilopass was again forced to expend further efforts

22   and resources to convince Sidense to provide the chips for testing and sampling under Fed. R. Civ.

23   P. 34(a)(1).  (*Id.*).  It was not until June 7, 2012, that Sidense finally agreed to provide the test

24   chips to Kilopass for sampling.  (*Id.*).

25   **B.**      **Sidense Vexatiously Multiplied the Litigation By Refusing to Stipulate To
              Dismissal of Kilopass' Business Torts Case**

26

27          On August 16, 2012, the Court granted summary judgment of non-infringement to Sidense

28   on Kilopass' patents-in-suit.  (Dkt. 272).  In the related case of *Sidense v. Kilopass,* Case No. 3:11-

- 9 -

1   cv-04112, the Court partially granted Kilopass' summary judgment on Sidense's business tort

2   claims.  (Dkt. No. 99).

3   　　　　Because the summary judgment order of non-infringement effectively disposed of

4   Kilopass' main patent case, on August 23, 2012, Kilopass filed a motion to certify the Court's

5   summary judgment order for appeal under Fed. R. Civ. P. 54(b) and to stay all proceedings

6   between both parties pending the outcome of an appeal to the Federal Circuit Court of Appeals.

7   (Dkt. No.  274).  Kilopass requested this relief because it was the most expedient and efficient way

8   to end the litigation between the parties and appeal to the Federal Circuit.

9   　　　　On August 29, 2012, Sidense wrote to Kilopass stating that it was willing to stipulate to a

10  certification of the Court's order on summary judgment of non-infringement for appeal under Rule

11  54(b) on condition that Kilopass not bring its tort claims if it was unsuccessful with its patent

12  appeal (essentially, a dismissal without prejudice).  (Hogge Decl., Exh. 13).  On August 30, 2012,

13  Kilopass responded, agreeing to these conditions, as long as Sidense would also agree to stay its

14  own business tort case.  (Hogge Decl., ¶ 17, Exh. 14).  On September 4, 2012, Sidense rejected

15  that offer and was not willing to agree to a stay of its own business tort claims, although it was

16  willing to allow Kilopass to dismiss its claims without prejudice.  (Hogge Decl., Exh. 15).

17  　　　　On September 12, 2012 the Court held a hearing on Kilopass' motion to certify the patent

18  case for immediate appeal under Rule 54(b) and Sidense's cross-motion for leave to file a

19  summary judgment motion on Kilopass' remaining business tort claims.  The Court denied both

20  motions.

21  　　　　Subsequently, on September 18, 2012, Kilopass and Sidense entered into a stipulation for

22  voluntary dismissal with prejudice of Sidense's remaining tort allegations.  (Dkt. 115).  The Court

23  granted this stipulation and dismissed Sidense's case on September 25, 2012.  (Dkt. 116).  At that

24  point, because all that remained was Kilopass' business torts case, Sidense should have willingly

25  allowed Kilopass to dismiss its business torts case without prejudice on the same conditions it was

26  willing to stipulate to on September 4, 2012.  The parties thereafter entered mediation and Sidense

27  still showed no willingness to compromise and dismiss the claims on the same terms it was

28  previously willing to agree to.

1   After the Court granted a number of motions *in limine* (Dkt. No. 323), on September 28,

2   2012, Kilopass yet again sought stipulation by Sidense for dismissal of Kilopass' business tort

3   case without prejudice.  (Dkt. No. 325-3).  Sidense once again rejected that proposal.  (*Id.*).  The

4   same day, Kilopass was forced to file a motion to dismiss its business tort claims pursuant to Fed.

5   R. Civ. P. 41.  (Dkt. No. 325).  After the hearing on October 2, 2012, the Court granted Kilopass'

6   motion to dismiss the remaining claims with prejudice.  (Dkt. No. 328).

7       **C.**    **Kilopass' Fees and Costs Incurred Due to Sidense's Unreasonable and**
**Vexatious Multiplication Of the Proceedings**

8

9   Due to Sidense's obfuscation, deception, delay and bad faith litigation tactics, Kilopass has

10  expended tremendous resources.  Kilopass estimated the excess costs, expenses, and attorneys'

11  fees reasonably incurred because of Sidense's conduct are:  $504,755.18 in legal fees (Hogge

12  Decl., Exh. 1) and around $20,155.14 in costs and expenses (*Id*. at Exh. 3).  Kilopass also

13  provided a summary of the services rendered by each individual related to the claimed fee tasks.

14  (Hogge Decl., Exh. 2).

15  **III.**    **LEGAL AUTHORITY**

16      **A.**    **The Court's Inherent Power to Impose Sanctions**

17  Federal courts have inherent power to impose sanctions against attorneys and parties for

18  bad faith conduct.  *See, e.g*., *Chambers*, 501 U.S. at 43 (discussing the nature of courts' inherent

19  powers); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-66 (1980) (same).  The court's

20  inherent powers "are governed not by rule or statute but by the control necessarily vested in courts

21  to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

22  *Chambers*, 501 U.S. at 43.  While "each of the other mechanisms [for sanctions in federal statutes

23  or the Rules of Civil Procedure] reaches only certain individuals or conduct, the inherent power

24  extends to a full range of litigation abuses."  *Id.* at 46.  A court has discretion to determine whether

25  sanctions should be awarded in the exercise of its inherent power or under a specific rule or

26  statute.  *See, e.g.*, *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) ("Fink argues that the district

27  court erred in basing its decision on inherent authority and declining to consider sanctions

28  available under Rule 11 or 28 U.S.C. § 1927.  It is well settled, however, that the district court

1    may, in its informed discretion, rely on inherent power rather than the federal rules or § 1927,"

2    citing *Chambers*, 501 U.S. at 50).

3         "Under both *Roadway* and *Chambers*, [ ] the district court has the inherent authority to

4    impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink*,

5    239 F.3d at 992. The Ninth Circuit has held that "[s]anctions [imposed pursuant to the court's

6    inherent powers] are available for a variety of types of willful actions, including recklessness

7    when combined with an additional factor such as frivolousness, harassment, or an improper

8    purpose." *Id.* at 994. *See also, e.g.*, *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir.

9    1989) ("Although it is now unchallenged in this circuit that a district court has inherent authority

10   to sanction miscreant attorneys, there are factual and legal prerequisites to the exercise of this

11   power. Because 'inherent powers are shielded from direct democratic controls, they must be

12   exercised with restraint and discretion.' . . . To insure that restraint is properly exercised, we have

13   routinely insisted upon a finding of bad faith before sanctions may be imposed under the court's

14   inherent power. . . . A specific finding of bad faith by the trial judge or magistrate must

15   accompany the sanction order in all such cases" (citations omitted)).

16        District courts "may levy fee-based sanctions when a party has acted in bad faith,

17   vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken

18   actions in the litigation for an improper purpose." *Id.* at 992 (citation omitted); *see also*

19   *Chambers*, 401 U.S. at 45 ("[T]he less severe sanction of an assessment of attorney's fees [rather

20   than dismissal] is undoubtedly within a court's inherent power as well" (citation and quotation

21   marks omitted)). When invoking their inherent power to sanction a party for litigating in bad

22   faith, courts relate the amount or nature of the sanctions to the severity of the misconduct in

23   question. *See, e.g.*, *United States v. Blodgett*, 709 F.2d 608, 611 (9th Cir. 1983) ("[C]ases that

24   have considered the district court's inherent power to sanction attorneys for litigating in bad faith

25   have related such sanctions to the amount of fees incurred by the opposing party").

26        **B.    Sanctions Under 28 U.S.C. § 1927**

27        Section 1927 provides:

28             "Any attorney or other person admitted to conduct cases in any court of

- 12 -

the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

The statute "applies only to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt. Co.*, 78 F.3d at 435. To be sanctionable under § 1927, counsel's conduct must multiply the proceedings in both an "unreasonable and vexatious manner." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002). "The key term in the statute is 'vexatiously'." *Girardi v. Down Chemical Co.*, 611 F.3d 1027, 1061 (9th Cir. 2010). Case law has not been clear whether a finding of mere recklessness alone may suffice to impose sanction for attorneys' fees under § 1927 or whether there must be a finding of subjective bad faith." *Id*. Recent cases suggest that recklessness suffices for § 1927. *See, e.g., Fink,* 239 F.3d at 993 (holding that "recklessness suffices for § 1927, but bad faith is required for sanctions under the court's inherent power"). *See also B.K.B.,* 276 F.3d at 1107 ("[R]ecklessness plus knowledge was sufficient to justify the imposition of § 1927 sanctions."). Older cases, however, require that § 1927 sanctions must be supported by a finding of subjective bad faith. Bad faith is present when an attorney knowingly or recklessly raises a *frivolous* argument [.]" *Salstrom v. Citicorp Credit Services, Inc.*, 74 F.3d 183, 184 (9th Cir. 1996). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co.*, 78 F.3d at 436 (quoting *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986)). However, "what is clear from our case law is that a finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927 … and a finding that the attorneys recklessly raised a *frivolous* argument which resulted in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927." *Id.* (internal citations omitted).

The decision to sanction a party rests in the sound discretion of the district court. *See, e.g*., *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1996) (district court abused its discretion by not awarding § 1927 sanctions); *MGIC Indemnity Corp. v. Moore*, 952 F.2d 1120, 1121 (9th Cir. 1991) (district court abused its discretion by awarding § 1927 sanctions). As with sanctions

1    awarded pursuant to the court's inherent powers, § 1927 sanctions must be tailored to the

2    particular conduct challenged.  *See, e.g.*, *Blodgett*, 709 F.2d at 610-11 ("Section 1927 only

3    authorizes the taxing of excess costs arising from an attorney's unreasonable and vexatious

4    conduct; it does not authorize imposition of sanctions in excess of costs reasonably incurred

5    because of such conduct").  Here, as will be demonstrated below, Sidense's conduct was not only

6    reckless, but was in bad faith and must be sanctioned.

7    **IV.    ARGUMENT**

8         **A.    Sidense and Its Counsel Should Be Sanctioned For Withholding Evidence of
             Direct Infringement And Causing Kilopass to Unnecessarily Seek Expensive
9             Third Discovery of Sample Products**

10        Sidense and its counsel vexatiously and needlessly multiplied the proceedings and

11   litigation in this matter by submitting a false declaration from Mr. Kurjanowicz and representing

12   to the Court and Kilopass that Sidense does not manufacture any chips containing the accused

13   designs.  (Facts at Section II.A, p. 5).  These representations were either reckless and/or made in

14   bad faith, and in any event, led to extensive unnecessary discovery and litigation consuming both

15   the court's and Kilopass' resources.

16        Based on Sidense's representation that it did not make chips in the U.S., Kilopass was

17   forced to amend its complaint to remove allegations of direct infringement against Sidense and

18   then undertake costly and expensive discovery from Sidense's customers to obtain chips

19   containing the accused Sidense memory designs, i.e., Sidense's 1-T eNVM products.  Kilopass

20   would not have subpoenaed Sidense's customers for chips had Sidense been upfront about its U.S.

21   activities, even if they merely involved creating test chips.  After months of motion practice

22   (motions to compel and protective order motions), subpoenas, letters, and meet and confers,

23   Kilopass was finally able to obtain chips that contain the accused Sidense designs, at its own cost,

24   from third parties  (Facts at Section II.A, p. 7).

25        Then, almost two years into the litigation, on February 24, 2012, Sidense's CTO and

26   Founder, for the first time testified that Sidense had actually manufactured test chips "a few years

27   ago."  (Facts at Section II.A, p. 8).  Despite this admission on the record, Kilopass was still forced

28   to fight with Sidense's attorneys to obtain samples of these chips.  (*Id.* at pp. 8-9).  To make

1    matters more difficult, Sidense filed a contempt motion, frivolously accusing Kilopass and its

2    attorneys for violating the Protective Order in this case. Kilopass had to expend additional time

3    and resources to oppose that motion.   The Court denied that motion, finding that Sidense's

4    arguments lacked merit.  (Dkt. No. 206).

5         Finally, after much back and forth and threatened motions to compel, Sidense finally

6    relented and made the test chips available for inspection on March 27, 2012.  Even then, Sidense

7    was not initially willing to provide the chips for testing even though it had several copies of these

8    chips and despite Rule 34 requiring a party to make discovery items available for testing.  At the

9    same time, Sidense's counsel refused to enter into a stipulation that would permit Kilopass to file a

10   third amended complaint.  In April 2012, Kilopass was forced to file an unnecessary motion for

11   leave to amend its complaint, which Sidense later did not oppose.  (Facts at Section II.A, p.9).

12   Kilopass had to then expend further efforts to convince Sidense to provide the chips for testing

13   and sampling under Fed. R. Civ. P. 34(a)(1).  (*Id*.).

14        As required by *In re Keegan,* and other leading Ninth Circuit authorities, Sidense's counsel

15   acted both in an "unreasonable and vexatious manner" in withholding test chips from Kilopass,

16   which it should have been produced at the very outset of the litigation.  By falsely representing to

17   the Court that Sidense does not produce chips and that it merely sold its design to customers,

18   Kilopass was forced to amend its complaint and undertake costly third party discovery to obtain

19   chip samples, which was completely unnecessary in view of the fact that Sidense itself had chips

20   manufactured at an IBM foundry in the United States.  All that was required to support Kilopass

21   direct infringement and indirect infringement claims is one instance of direct infringement.  Once

22   that was obtained, Kilopass would not have to seek chips from third parties and embark on costly

23   subpoena and motion practice.  Even after finally obtaining Sidense's agreement to produce the

24   test chips, Sidense further vexatiously multiplied the litigation by refusing to stipulate to Kilopass'

25   request to file a third amended complaint and then refusing to provide the chips for testing and

26   sampling as required by Rule 34.

27        Throughout this ordeal, Sidense's attorneys behaved unreasonably and without sufficient

28   justification for withholding key evidence from the case, which led to both unnecessary discovery,

1   motion practice, and attorneys fees and expense for Kilopass.  Had Sidense properly represented to

2   the Court that it did manufacture chips with the accused design in the United States, Kilopass

3   would not have amended its complaint to withdraw allegations of direct infringement and then

4   seek chips from third parties which Sidense stubbornly resisted.  Moreover, even after Sidense's

5   misrepresentations were exposed, Sidense's counsel again behaved unreasonably and vexatiously

6   by refusing to provide the chips for testing and sampling and refusing to stipulate to a simple

7   amendment to the complaint.  As the court in *In re Keegan* explicitly stated, attorneys that

8   "recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927 … and

9   a finding that the attorneys recklessly raised a *frivolous* argument which resulted in the

10  multiplication of the proceedings is also sufficient to impose sanctions under § 1927."  792 F.2d at

11  860.

12          Accordingly, the Court should use its inherent authority and powers vested under 28

13  U.S.C. § 1927 to sanction Sidense and its attorneys for needlessly and unreasonably multiplying

14  these proceedings.

15          **B.      Sidense and Its Counsel Should Be Sanctioned For Refusing To Stipulate To
                     Dismissal Of Kilopass' Business Tort Claims**

16

17          On August 23, 2012, just a week after the Court issued its order granting summary

18  judgment of non-infringement to Sidense, Kilopass moved swiftly to end the district court

19  litigation and appeal the Court's order.  At that point, Sidense could have easily stipulated to

20  Kilopass' request to stay the business tort cases on both sides.  (Facts at Section II.B, p. 10).

21  Instead, Sidense refused Kilopass' request to stay the business tort litigation and insisted that

22  Kilopass dismiss its claims while Sidense pursued its own baseless torts case.  (*Id.*).

23          This exercise proved to be futile, because almost a month later, on September 18, 2012,

24  Sidense dismissed its remaining business tort claims with prejudice.  The majority of its

25  allegations had already been dismissed under Rule 12 and Rule 56.  (*Id.*).  At that point, Sidense

26  should have willingly allowed Kilopass to dismiss its business torts case without prejudice on the

27  same conditions it was willing to stipulate to on September 4, 2012.  (*Id.*).  Instead, Sidense

28  needlessly prolonged the proceedings and insisted that it be deemed the prevailing party on

1    Kilopass' business tort claims.  After the Court granted a number of motions *in limine*, Kilopass

2    again asked Sidense to stipulate to dismissal of the claims without prejudice or with prejudice with

3    each side to bear its own fees and costs.  (*Id*. at p. 11).  Sidense and its counsel, again, in bad faith

4    refused Kilopass' request.  Kilopass was forced to file a motion to dismiss its claims on September

5    28, 2012, which Sidense did not oppose.

6           Sidense's vexatious and unreasonable conduct needlessly dragged out the case in the last

7    five weeks when it could have been dismissed much earlier if Sidense was willing to be reasonable

8    and stipulate to the same terms and conditions that Kilopass was willing to provide Sidense.  To

9    be sanctionable under § 1927, counsel's conduct must multiply the proceedings in both an

10   "unreasonable and vexatious manner."  *B.K.B.,* 276 F.3d at 1107.  Sidense has done just that.

11   Accordingly, the court should use its inherent authority and powers vested under 28 U.S.C. § 1927

12   to sanction Sidense and its attorneys for needlessly and unreasonably multiplying these

13   proceedings.

14   **V.    CONCLUSION**

15          For at least the foregoing reasons, Kilopass respectfully requests that this Court impose

16   sanctions against Sidense and its attorneys, pursuant to 28 U.S.C. §1927 and this Court's inherent

17   powers, in an amount to be paid to Kilopass equal to all costs, expenses and reasonable attorneys'

18   fees Kilopass incurred in having to unnecessary expend time and litigation resources devoted to

19   litigating against Sidense's unreasonable positions, gamesmanship, withholding of evidence, as

20   well such additional amount to be paid to the Court to punish and deter Sidense and its counsel,

21   and others, from engaging in such conduct in the future.  Should the Court find that Sidense has

22   acted unreasonably or vexatiously on any issue raised in this motion, Kilopass will submit and

23   itemized accounting of its fees and costs expended to litigate the unnecessary and vexatious

24   conduct.

25   Dated:  December 5, 2012                       Respectfully submitted,
                                                     SNR DENTON US LLP
26

27                                                  /s/ *Mark Hogge*
                                                     Mark Hogge
28
                                                     Attorneys for Plaintiff
                                                     KILOPASS TECHNOLOGY, INC

1 | **<u>CERTIFICATE OF SERVICE</u>**

2 |     I, Jocasta Wong, hereby declare:

3 |     I am employed in the City and County of Palo Alto, California in the office of a member of

4 | the bar of this court whose direction the following service was made. I am over the age of

5 | eighteen years and not a party to the within action. My business address is SNR Denton US LLP,

6 | 1530 Page Mill Road, Suite 200, Palo Alto, California 94304.

7 |     On December 5, 2012, the following documents, described as:

8 | **PLAINTIFF KILOPASS TECHNOLOGY, INC'S  MOTION FOR**
**SANCTIONS, ATTORNEYS' FEES AND COSTS AGAINST SIDENSE**
9 | **CORP. AND KILPATRICK TOWNSEND & STOCKTON LLP UNDER 28**
**U.S.C. SECTION 1927 AND THE COURT'S INHERENT AUTHORITY**
10 |

11 | to be served via CM/ECF by the Clerk of the Court, upon all counsel of record registered to

12 | receive electronic filing, as indicated on the Court's website, or by United States Mail, upon those

13 | parties not registered for electronic filing.

14 |     I declare under penalty of perjury that the above is true and correct. Executed on

15 | December 5, 2012, in Palo Alto, California.

16 |                                  /s/ *Jocasta Wong*

17 |                                  Jocasta Wong