1  DURIE TANGRI LLP
   DARALYN J. DURIE (SBN 169825)
2  ddurie@durietangri.com
   ALEX J. FEERST (SBN 270537)
3  afeerst@durietangri.com
   217 Leidesdorff Street
4  San Francisco, CA 94111
   Telephone:    415-362-6666
5  Facsimile:    415-236-6300

6  Attorneys for Plaintiff
   KILOPASS TECHNOLOGY INC.

7

8                  IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11
   KILOPASS TECHNOLOGY INC.,            Case No. 3:10-cv-02066-SI
12
                        Plaintiff,      **KILOPASS TECHOLOGY INC.'S
13                                      OPPOSITION TO SIDENSE CORP.'S
          v.                            SUPPLEMENTAL FEE CALCULATION
14                                      MEMORANDUM IN SUPPORT OF ITS
   SIDENSE CORP.,                       MOTION FOR ATTORNEY'S FEES**
15
                        Defendant.      Date:    October 17, 2014
16                                      Time:    9:00 a.m.
                                        Ctrm:    10, 19th Floor
17                                      Judge:   Honorable Susan Illston

18

19

20

21               *PUBLIC REDACTED VERSION*

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   FACTS ...............................................................................................................2

III.  ARGUMENT ....................................................................................................3

    A.    Sidense's Fee Request is Unreasonable in Light of the Law and the Facts of this Case...................................................................................................3

        1.    The Amount of Fees to be Awarded Under Section 285 Must be Related to the Degree to Which the Case is "Exceptional" and Need Not Amount to the Full Reasonable Fees Incurred by the Prevailing Party ......................................3

        2.    Sidense is Not Entitled to its Contingent "Success Bonus" from Kilopass............7

        3.    Sidense Has Failed to Provide Evidence That Any of Its Requested Fees Were Reasonably Incurred........................................................................9

        4.    Any Award of Fees Should be Limited to Reasonable Fees for Work Done starting in May 2012, and Should Take Into Account Both the Limited Severity of the Conduct at Issue and the Limited Ability of Kilopass to Pay an Award....................................................................................................13

    B.    Other Considerations Support Limiting the Award ...........................................18

        1.    Awarding Sidense its Requested Amount           ...................18

        2.    National Security Concerns Militate for a Limited Award...................................19

IV.  CONCLUSION....................................................................................................19

---

i

KILOPASS TECHOLOGY INC.'S OPPOSITION TO SIDENSE CORP.'S SUPPLEMENTAL FEE CALCULATION MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEY'S FEES / CASE NO. 3:10-CV-02066-SI

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Beckman Instruments, Inc. v. LKB Produkter AB,*
892 F.2d 1547 & n.3 (Fed. Cir. 1989) ............................................................5

*Bywaters v. United States,*
2014 Br. at 4:21-22 ....................................................................4, 7, 10

*Bywaters v. United States,*
670 F.3d 1221 (Fed. Cir. 2012)...................................................................7

*Campbell v. Nat'l Passenger R.R. Corp.,*
718 F. Supp. 2d 1093 (N.D. Cal. 2010) ..........................................................21

*Citizens for Better Forestry v. U.S. Dep't of Agric.,*
No. C-01-0728 MJJ, 2006 WL 5692819 (N.D. Cal. Nov. 2 2006)....................................13

*City of Burlington v. Dague,*
505 U.S. 557 (1992)...........................................................................8, 10

*Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.,*
No. 09-CV-5251, 2014 WL 1514235 (E.D.N.Y. Apr. 16, 2014) ......................................7

*Cybor Corp. v. FAS Techs. Inc.,*
138 F.3d 1448 (Fed. Cir. 1998)..................................................................4

*Davis v. Prison Health Servs.,*
No. 3:09-cv-02629-SI (N.D. Cal. Sept. 25, 2012) ...............................................12

*Flight Attendants v. Zipes,*
491 U.S. 754 n.2. (1989)......................................................................8, 9

*Fogerty v. Fantasy, Inc.,*
510 U.S. 517 (1994)............................................................................7

*Gametek LLC v. Zynga, Inc.,*
No. CV 13-2546 RS, 2014 WL 4351414  (Sept. 2, 2014)..........................................6, 20

*Gonzalez v. City of Maywood,*
729 F.3d 1196 (9th Cir. 2013) .................................................................7

*Hensley v. Eckerhart,*
461 U.S. 424 (1983)..................................................................... *passim*

*MarcTec, LLC v. Johnson & Johnson,*
664 F.3d 907 (Fed. Cir. 2012)................................................................4, 5

*Mitchel v. City of Santa Rosa,*
No. C 09-05004 SI, 2012 WL 3580534, (N.D. Cal. Aug. 17, 2012) ................................21

ii

KILOPASS TECHNOLOGY INC.'S OPPOSITION TO SIDENSE CORP.'S SUPPLEMENTAL FEE
CALCULATION MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEY'S FEES / CASE
NO. 3:10-CV-02066-SI

*Octane Fitness v. Icon Health & Fitness,*
    134 S. Ct. 49 (Oct. 1, 2013) .................................................................................3, 6, 20

*Peake v. Chevron Shipping Co.,*
    No. C 00-4228 MHP, 2004 WL 1781008 (N.D. Cal Aug. 10, 2004) ..................................12

*Perdue v. Kenny A.,*
    559 U.S. 542 (2010) ...........................................................................................6, 7

*Schueneman v. 1st Credit of Am., LLC,*
    No. C 05 4505 MHP, 2007 WL 1969708, (N.D. Cal. July 6, 2007) ..................................12

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.,*
    932 F.2d 1453 (Fed. Cir. 1991) ...............................................................................12

*Special Devices, Inc. v. OEA, Inc.,*
    269 F.3d 1340 (Fed. Cir. 2001) ................................................................................5

*Stragent, LLC, v. Intel Corp.,*
    No. 6:11-cv-421 (E.D. Tex. Aug 6, 2014) ...................................................................15

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.,*
    549 F.3d 1381 (Fed. Cir. 2008) ............................................................................1, 5

*Venegas v. Mitchell,*
    495 U.S. 82 (1990) ...............................................................................................9

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.,*
    208 F.3d 981 (Fed. Cir. 2000) ................................................................................21

*Welch v. Metro. Life Ins. Co.,*
    480 F.3d 942 (9th Cir. 2007) .................................................................................19

**Statutes**

35 U.S.C. § 285 ...................................................................................... *passim*

42 U.S.C. § 1988 ............................................................................................6, 7, 11

42 U.S.C. § 4654(c) ...............................................................................................7

I.      **INTRODUCTION**

Based in significant part on a contingency fee agreement, Sidense seeks over         in attorneys' fees for a case in which Kilopass' damages expert blackboarded only         in damages to Kilopass. Sidense makes this demand notwithstanding the facts that:

- Sidense's request is predicated on the assumption that it should be paid for all time reasonably spent on all patent-related aspects of the litigation, but that assumption is in turn predicated on the standard that governs fee awards in *civil rights cases* and other areas of the law in which fee awards are *essentially mandatory*, while Federal Circuit precedent makes clear that fee awards under Section 285 rest on different bases, are the exception not the rule, and are much more discretionary in amount, such that even where a case has been deemed "exceptional," "the award of the total amount of a fee request is unusual[.]"  *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc*., 549 F.3d 1381, 1390 (Fed. Cir. 2008);

- No law supports awarding contingency fee enhancements under Section 285, and Supreme Court precedent (previously acknowledged but now ignored by Sidense) flatly bars awarding contingency fee enhancements under other circumstances; and

- Fee requests are almost invariably supported with actual bills sent to clients (or other contemporaneously-prepared documents) reflecting actual narrative time entries, because it is basically impossible for a court to assess either the allocation of time between compensable and uncompensable activities, or the reasonableness of the fees allocated to compensable activities, without such documents.  But Sidense has withheld such information here, leaving it with a severe failure of proof necessary to carry its burden.

For those reasons, and because an award of even the         Sidense seeks in the absence of a contingency enhancement                       , Sidense should not be awarded the fees it seeks.  At most, as explained further below, it should be awarded an amount no greater than fees associated with the summary judgment motion on which it ultimately prevailed, and fees for reasonable time spent defending that judgment.

## II. FACTS

The Court is familiar with the facts of this case, so we summarize only certain key facts here. This litigation began as a single-patent case in May 2010. Compl., ECF No. 1. Two additional patents were added the following month. Am. Compl., ECF No. 6. All three patents claim related subject matter. Throughout the case, Kilopass asserted claims based on the doctrine of equivalents; it also asserted literal infringement.

Sidense initially denied that it directly infringed the patents, moving to dismiss on the grounds that it did not engage in any activity that could constitute infringement in the U.S. Mot. Dismiss 1st Am. Compl., ECF No. 12. This led to Kilopass filing a Second Amended Complaint alleging indirect infringement. 2nd Am. Compl., ECF No. 38. Because Sidense denied that it sold products in the U.S. and refused to produce licensing agreements potentially relevant to U.S. sales, Kilopass needed to subpoena about fifty of Sidense's customers to uncover facts sufficient to support its indirect infringement claim. Sidense sought a protective order against such discovery but lost. Order re: Mot. Compel, ECF No. 117. Kilopass' need to seek third-party discovery also led Sidense to file a motion for an Order to Show Cause as to why Kilopass should not be held in contempt, arguing that Kilopass' counsel had violated the operative protective order in connection with subpoenaing the customers it did. That motion, too, was denied. Order Den. Appl. Order Show Cause re: Contempt, ECF No. 206. Ultimately, at deposition, Sidense admitted that it did in fact engage in activity that could constitute direct infringement. *See* Kilopass Mot. Sanctions at 8, ECF No. 337.

Sidense did not seek to bring an early motion for summary judgment based on non-infringement—neither for the literal infringement claim nor for the doctrine of equivalents claim based on the equivalence of the first doped region claimed in the patent with the STI used in Sidense's product. It was aware from the outset of the argument it would ultimately make concerning the doctrine of equivalents (Decl. Daralyn J. Durie Supp. Kilopass Opp'n Mot. Attorneys' Fees ("First Durie Decl.") Ex. 23, ECF No. 420-17) but made no effort to frame that issue for prompt and efficient resolution by the Court. Rather, Sidense filed a motion to stay pending *inter partes* reexamination (which would not, of course, decide any infringement issue). *See* Joint Case Mgmt. Statement § 15, ECF No. 60.

The Court's claim construction ruling largely favored Kilopass, including as to the terms "wordline" and "bitline."  Order re: Claim Construction, ECF No. 147.  However, based on later statements made by Kilopass' prosecution counsel to the USPTO concerning the "wordline"/"bitline" issue, the Court subsequently found that Kilopass had disavowed certain claim scope.  Order Granting Pla.'s Mot. Compel at 10, ECF No. 224.  Based on that disavowal ruling, and based on the doctrine of equivalents issue, the Court granted Sidense's motion for summary judgment of non-infringement on August 16, 2012.  Order Granting Def.'s Mot. Summ. J., ECF No. 272.

From the start, this case was hard fought by both sides.  Both sides took strong positions at the pleadings stage and in discovery.  This led to motions for attorneys' fees from both sides, both of which the Court denied.  *See* ECF Nos. 337, 339, 362, 370.  Sidense appealed this denial to the Federal Circuit. Notice of Appeal, ECF No. 372.  While that appeal was pending before the Federal Circuit, the Supreme Court granted certiorari in *Octane Fitness v. Icon Health & Fitness*, and patent reform legislation— including proposals to revise dramatically the attorneys' fees regime of Section 285—were pending before Congress.  134 S. Ct. 49 (Oct. 1, 2013); Saving High-Tech Innovators from Egregious Legal Disputes Act of 2013, H.R. 845, 113th Cong. (2013).  On December 26, 2013, the Federal Circuit vacated and remanded this Court's decision.  Slip Op., ECF No. 390-1.  The Supreme Court then decided *Octane* on April 29, 2014, which changed the standard for finding a case exceptional under Section 285. *Octane Fitness v. Icon Health & Fitness*, 134 S. Ct. 1749 (Apr. 29, 2014).  Sidense renewed its motion for attorneys' fees here and this Court, citing to the newly-imposed standard of *Octane,* granted Sidense's motion on August 12, 2014.  Order Granting Def.'s Mot. Attorneys' Fees at 24, ECF No. 427.

## III.    ARGUMENT

### A.    Sidense's Fee Request is Unreasonable in Light of the Law and the Facts of this Case

#### 1.    The Amount of Fees to be Awarded Under Section 285 Must be Related to the Degree to Which the Case is "Exceptional" and Need Not Amount to the Full Reasonable Fees Incurred by the Prevailing Party

Sidense's brief attempts to create the impression that the "fee-shifting" jurisprudence of *Hensley v. Eckerhart* and its progeny applies fully to fee awards under Section 285 (citing, *e.g.*, *Perdue v. Kenny A.*, Suppl. Fee Calc. Mem. Supp. Mot. Attorneys' Fees ("2014 Br.") at 4:16, ECF No. 341-3) and to create the impression that the Federal Circuit has endorsed that approach (citing *Bywaters v. United*

*States*, 2014 Br. at 4:21-22).  Neither suggestion is accurate.  Section 285 is not a typical "fee-shifting"

statute; *Hensley* and its progeny arise in a very different statutory setting animated by a very different

Congressional purpose; and *Bywaters* is not a patent case and thus does not consider Section 285.

Fee awards under Section 285 need not be intended to serve the purpose of fully compensating

the prevailing party for all of its reasonable attorneys' fees incurred in litigating the whole of a patent

case.  Two clearly-stated rules of the Federal Circuit establish that.  First, even after finding a case

exceptional under Section 285, the court can award as little as zero.  "If the district court finds that the

case is exceptional, it must then determine whether an award of attorney fees is justified."  *MarcTec,*

*LLC v. Johnson & Johnson*, 664 F.3d 907, 916 (Fed. Cir. 2012) (citing *Cybor Corp. v. FAS Techs. Inc*.,

138 F.3d 1448, 1460 (Fed. Cir. 1998)).  This Court acknowledged its discretion to award zero even in an

"exceptional case."  Order Granting Def.'s Mot. Attorneys' Fees at 13-14, ECF No. 427.  We recognize

that the Court declined to award zero and indicated an intention to award some amount of fees.  The

point for present purposes is simply that the acknowledged discretion to award zero even in an

exceptional case implies the existence of discretion to award some number greater than zero but less than

full fees.

Second, the Federal Circuit has held that even once a case has been found to be "exceptional,"

"the amount of the attorney fees depends on the *extent* to which the case is exceptional.  In other words,

the exceptionality determination highly influences the award setting."  *Special Devices, Inc. v. OEA, Inc*.,

269 F.3d 1340, 1344 (Fed. Cir. 2001) (emphasis added).  That reasoning formed the essential basis for

the court's holding that no appeal lay from a court's decision that a fee award would be appropriate until

the amount of the award was also determined.  The court expressly held that the two steps of determining

whether a case was exceptional and, if so, how much of an award was appropriate were so closely related

that the determinations must be reviewed together, not separately.  *Id*.

Accordingly, in light of *MarcTec* and *Special Devices*, even in an exceptional case, a fee award

under Section 285 may fall anywhere between zero and "full reasonable fees," and should take account

of the nature and severity of the conduct that caused the Court to deem the case exceptional.  For that

reason, the Federal Circuit has stated that even where a fee award is warranted under Section 285, "the

award of the total amount of a fee request is unusual[.]"  *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc*.,

549 F.3d 1381, 1390 (Fed. Cir. 2008); *see also Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552-54 & n.3 (Fed. Cir. 1989) (holding that any fee award imposed "must in some way be related to" the bases for imposing fees, suggesting that an award of attorneys' fees "for the entire litigation" would be the exception, rather than the rule, even where fees are awarded, and pointing as an example of a case in which "entire" fees would be justified to a case in which "there was extensive evidence of litigation misconduct" throughout the entire 19 year history of the litigation).  The fee award should seek to compensate the prevailing party in the exceptional case for its reasonable fees incurred by virtue of what made the case exceptional, and take into account that even "exceptional" conduct must be considered as falling along a continuum.  Courts have noted that conduct such as lying to the Court (or enforcing a patent only obtained through lying to the PTO), or repeatedly advancing previously rejected arguments, is the conduct most likely to give rise to an "exceptional case" finding, and such "core" conduct presumably should be the basis for a larger fee award than other conduct.  *See, e.g.*, *Gametek LLC v. Zynga, Inc.*, No. CV 13-2546 RS, 2014 WL 4351414, at *3 (Sept. 2, 2014) (citing as examples of conduct leading to post-*Octane* fee awards the filing of false declarations before the PTO which led to the issuance of the patent in suit, and the repeated filing of motions seeking to re-litigate issues previously litigated and rejected).

The cases relied on by Sidense are not to the contrary.  *Perdue* awarded fees under 42 U.S.C. § 1988 which, as explained in *Hensley*, was enacted by Congress to "ensure effective access to the judicial process for persons with civil rights grievances.  Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal citation and quotation marks omitted).  Importantly, under *Hensley*, where the plaintiff was successful on its core claims, a fee award typically will include "all hours reasonably expended on the litigation," and will not normally be reduced "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 435.  Work on "distinctly different" claims that were unsuccessful may be excluded, but the *Hensley* Court anticipated that in most cases, the claims would "involve a common core of facts or . . . be based on related legal theories" and thus the full reasonable fee would be awarded. *Id.*

5

KILOPASS TECHNOLOGY INC.'S OPPOSITION TO SIDENSE CORP.'S SUPPLEMENTAL FEE
CALCULATION MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEY'S FEES / CASE
NO. 3:10-CV-02066-SI

That presumption cannot be carried over to cases under Section 285, however, because Section 1988 differs in fundamental ways from Section 285.  First, under Section 1988 an award of fees is the rule; under Section 285, it is the exception.  *Compare Hensley*, *id.*, *with Octane*, 134 S. Ct. at 1755-56. Second, that difference flows from the special purpose of Section 1988—to ensure access to the judicial process for persons who might otherwise lack it.  Relatedly, courts repeatedly have stressed that fee awards in civil rights litigation exist "to ensure that federal rights are adequately enforced."  *Perdue v. Kenny A.*, 559 U.S. 542, 550 (2010).  Attorneys who "win[] a civil rights claim" not only benefit their client in terms of the amount of money they recover, "they also confer benefits on others throughout society by, for example, ending institutional civil rights abuses or clarifying standards of constitutional conduct."  *Gonzalez v. City of Maywood*, 729 F.3d 1196 (9th Cir. 2013) (alteration in original and citation and internal quotation marks omitted.)  No such direct public benefit inheres in patent cases. Third, for those reasons, such awards in civil rights cases principally are limited to prevailing plaintiffs, where awards under Section 285 are available to plaintiffs and defendants on the same terms, which confirms that the policies underlying civil rights fee awards cannot simply be applied wholesale to Section 285 cases.  *Hensley*, 461 U.S. at 429 & n.2; *cf. Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).[1]

Accordingly, *Hensley* and its progeny provide no basis to conclude that Sidense is entitled to be awarded the full amount of what it calls its "reasonable" fees incurred in defending this case—per Sidense, over           .[2]

---

[1] Sidense cites *Bywaters* as "the Federal Circuit's most recent published case analyzing the lodestar standard" (2014 Br. at 5) but *Bywaters* awarded fees under Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (the "URA"), 42 U.S.C. § 4654(c).  *Bywaters v. United States*, 670 F.3d 1221, 1224 (Fed. Cir. 2012).  The language of the fees provision makes explicit that reasonable fees actually incurred "shall" be awarded and in light of the similarity of that standard to Section 1988 and other essentially mandatory fee-shifting statutes the Federal Circuit applied *Hensley* jurisprudence in *Bywaters*.  *Id.* at 1224-1227.  *Bywaters* does not represent a holding of the Federal Circuit with regard to Section 285.  *Claudio*, also cited by Sidense for the applicable standard, is another civil rights case. *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 09-CV-5251, 2014 WL 1514235, at *2 (E.D.N.Y. Apr. 16, 2014) (claims brought under Title VII).

[2] We discuss in Section III.A.3, below, the fact that in any event Sidense has failed—indeed, apparently has deliberately decided to withhold—the evidence necessary for any determination whether its claimed fees are in fact "reasonable."

**2.     Sidense is Not Entitled to its Contingent "Success Bonus" from Kilopass**

Not content with seeking over          in fees for all patent-related aspects of the litigation, Sidense asks for over          based on its contingent fee agreement with its counsel.  As Sidense admits (2014 Br. at 1 n.3 and 4 n.5), no law supports its request to be compensated for its contingent fee arrangement.  What Sidense unfortunately fails to note is that in other contexts—the very *Hensley* jurisprudence upon which Sidense itself otherwise relies, and under which fee awards are both virtually mandatory and designed to stimulate the vindication of important public as well as private rights—contingent fee agreements are uniformly rejected.  *City of Burlington v. Dague*, 505 U.S. 557, 566-67 (1992).

In *Dague*, the Supreme Court considered and rejected a request to enhance a fee award above the lodestar amount "to reflect the fact that the party's attorneys were retained on a contingent fee basis and thus assumed the risk of receiving no payment at all for their services."  505 U.S. at 559.  It decided the case under the body of law generally applicable to essentially mandatory fee-shifting statutes, e.g., Section 1988 and similar statues.  *Id*. at 562 (citing *Flight Attendants v. Zipes*, 491 U.S. 754, 758 n.2. (1989)).  Notwithstanding arguments that "without the possibility of a fee enhancement . . . competent counsel might refuse to represent . . . clients thereby effectively denying them access to the courts" and recognition that "enhancement for the contingency risk would encourage meritorious claims to be brought," the Court concluded that "enhancement for contingency" was "not permitted" under any circumstances.  *Id*. at 560 (first alteration in original), 563, 567.  As the Court put it: "Contingency enhancement is a feature inherent in the contingent-fee model (since attorneys factor in the particular risks of a case in negotiating their fee and in deciding whether to accept the case).  To engraft this feature onto the lodestar model would be to concoct a hybrid scheme that resorts to the contingent-fee model to increase a fee award but not to reduce it.  Contingency enhancement is therefore not consistent with our general rejection of the contingent-fee model for fee awards, nor is it necessary to the determination of a reasonable fee."  *Id*. at 566.  Nor should Sidense be heard to complain that because of the deal it chose to strike with its counsel, it will have to make up the difference out of its own pocket.  The Supreme Court has long since held that a contingent-fee contract between attorney and client is properly enforced even where the court-ordered fee is much lower, precisely because contingent-fee enhancements can play no role in the setting of court-ordered fees.  *Venegas v. Mitchell,* 495 U.S. 82, 86-88, 90 (1990).

7

Besides being unauthorized in law, Sidense's contingency enhancement makes no sense as an economic matter.  We are aware of no authority suggesting that a fee award can encompass such things as the hypothetical dilution suffered by shareholders as a result of a company's raising additional capital or the interest it pays on loans used in whole or in part to pay its attorneys' fees.  From an economic perspective, the Contingent Fee Agreement is nothing more than such a loan, at a variable interest rate.  Here, that interest rate                    the "principal" on the loan is the amount of fees Sidense need not pay in the normal course, and the interest is the amount that must be paid over and above the principal.  Because the "Success Fee" amounts to                                    , the interest rate (in simple terms)             Decl. Gary Greenfield Supp. Pla.'s Opp'n Def.'s Suppl. Fee Calc. Supp Mot. Attorneys' Fees ("Greenfield Decl.") ¶ 15-16.  Kilopass should not be subject to paying a wildly inflated fee award because Sidense in effect elected to take a loan from its lawyers at a usurious        rather than take an equity investment or a more conventional loan a much lower interest rate.[3]

It is worth noting that when Sidense first sought its attorneys' fees in 2012 it did not seek to recover a contingency enhancement and indeed expressly cited *Dague* as "holding that enhancement of attorneys' fees awards to account for contingency is not permitted."  Sidense Corp.'s Mot. Attorneys' Fees ("2012 Br.") at 19:3-6, ECF No. 339.  It requested fees of        . *Id*. at 1:11.  When Sidense renewed its request on remand it represented to the Court that it requested only "fees in the amount previously requested plus an appropriate update."  2014 Br. at 24:19-20 (emphasis added).  Only after this Court ruled that Sidense was entitled to fees did Sidense reverse course, disavow (albeit silently) its prior acknowledgment of *Dague*, and demand                as a contingency enhancement.  (Perhaps

---

[3] Sidense asserts that it became "unable to pay its legal fees without raising additional venture capital" and cites the Supplemental Fee Calculation Declaration of Xerxes Wania, ECF No. 431-14 ("Wania Decl."), (2014 Br. at 1:21-23) but that is beside the point.  The Wania Declaration does not say Sidense couldn't raise additional funds and it doesn't even detail efforts to try.  Wania says rather that Sidense got bridge loan from an investor after prevailing (Wania Decl. ¶ 6) but does not say it tried and failed to get such a loan—or any other form of financing—prior to that.  Indeed, Kilopass estimates based on public sources that Sidense raised $5M in equity May 2010, another $5.6M in October 2011, and another $9M in February 2013.  Decl. Charlie Cheng Supp. Pla.'s Opp'n Def.'s Suppl. Fee Calc. Supp. Mot. Attorneys' Fees ("Cheng Decl.") ¶ 9.

1   relatedly, Sidense's request is no longer supported by a declaration from Judge Renfrew, who submitted

2   a declaration as to the propriety of Sidense's prior request.)  Given all of that, it would seem that

3   Sidense's        request is neither more nor less than a transparent attempt to inflate the upper-end of its

4   fee range in the hope that it will make        appear like a reasonable compromise.[4]  Needless to say, both

5   the        request and the attempt improperly to stretch the range should be rejected.[5]

### 3.   Sidense Has Failed to Provide Evidence That Any of Its Requested Fees Were Reasonably Incurred

8          Sidense has chosen not to provide its billing records in support of its request for fees.  That makes

9   it impossible for the Court to evaluate whether Sidense's requested fees are reasonable, in two distinct

10  and fundamental ways.  First, it makes it impossible for the Court to evaluate what the fees are for, that

11  is, what fees are associated with activities that the Court may ultimately determine Sidense is entitled to

12  receive fees for, as compared to fees associated with activities that are not compensable.  Greenfield

13  Decl. ¶ 28-38.  Second, within any given activity, it makes it impossible to evaluate what fees are

14  reasonable, even if those fees are associated with a compensable activity.  *Id*.  Ultimately, both parties

15  and the case law agree that both determinations are necessary, but Sidense's decision to withhold its bills

---

[4] Sidense attempts to justify its request for an impermissible contingency enhancement by citing *Bywaters*' holding that the actual fee agreement between the parties may be considered in calculating the lodestar.  Needless to say, the Federal Circuit's ruling in *Bywaters* did not overrule the Supreme Court's holding in *Dague* that no contingency enhancements were permitted.  And unsurprisingly, *Bywaters* did not in fact apply a contingency enhancement.  In fact, it did roughly the opposite: the district court used the fee agreement to *reduce* the lodestar figure, not increase it.  Lastly, *Bywaters* was decided over two years before Sidense's June 27, 2014 representation to this Court that it would be seeking the same fees as before, only brought current.  Accordingly, *Bywaters* provides neither substantive support for Sidense's request nor justification for its reversal of position.

[5] For the same reasons, Sidense's request for an upward enhancement in excess of the lodestar (2014 Br. at 10-12) should be rejected.  Sidense gives no reason the Court should extend an enhancement grounded in civil rights litigation to the private, patent law context.  Civil rights litigation exists to vindicate public rights, which does not exist here.  42 U.S.C. § 1988.

means that it has failed to provide the evidence necessary to both determinations. *Id*. Because Sidense bears the burden of proof (*Hensley*, 461 U.S. at 433-34), this absence is fatal to its request.[6]

*What the fees are for*: the parties dispute what activities are compensable, but even Sidense acknowledges that not all activities are. For example, Sidense expressly acknowledges that it cannot receive fees for work done on the business tort cases. Cook Suppl. Decl. ¶¶ 15, 21, ECF No. 431-5. We set forth in Section III.A.4, below, what we respectfully submit is the correct line to draw on compensable activities, but for present purposes the key point is that Sidense admits that it cannot be compensated for certain work, but it has withheld the best evidence of what fees are associated with that work, and what fees are associated with the patent work for which it does seek to be compensated. Greenfield Decl. ¶ 31.

*Whether the fees are reasonable*: In assessing the reasonableness of a fee request, the typical initial considerations are whether the hours requested have been adequately documented; whether the request reflects overstaffing and duplication of effort by counsel; and whether hours have been expended on activities that were unproductive, unnecessary, or otherwise unreasonable. *Hensley*, 461 U.S. at 434, 436. "The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested." Order at 2, *Davis v. Prison Health Servs*., No. 3:09-cv-02629-SI (N.D. Cal. Sept. 25, 2012), ECF No. 324; Greenfield Decl. ¶ 35. In making this determination, "[t]he district court . . . should exclude from this initial fee calculation hours that were not reasonably expended." *Hensley*, 461 U.S. at 434 (citation and internal quotation marks omitted).

Importantly here, the burden is on the party seeking fees to demonstrate, with sufficient evidence, that the hours worked and rates claimed are reasonable. *Id*. at 433-34. And "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id*. at 433; *Slimfold Mfg*.

---

[6] It is important to distinguish between *Hensley* jurisprudence on the *scope of work for which fees should be awarded* on the one hand and *the way to evaluate whether the amounts claimed for an awardable scope are reasonable* on the other. In the *Hensley* cases the former question typically is not presented (461 U.S. at 435) and therefore typically the assumption underlying scope determinations in *Hensley* cases is that all activities for which fees were incurred are compensable assuming the work was appropriately done. The question "was it appropriately done"—i.e., was the amount of those fees "reasonable"—is applicable both in *Hensley* cases and here.

*Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1459 (Fed. Cir. 1991).  Without actual invoices, a court cannot conduct a valid reasonableness review of fees charged under Hensley.  In *Peake v. Chevron Shipping Co.*, No. C 00-4228 MHP, 2004 WL 1781008, at *9 (N.D. Cal Aug. 10, 2004), the court determined that a reduction in fees award was warranted for "vacuous or inadequately-described attorney time" because "a close review of the invoice submitted by plaintiff's counsel reveals that much of counsel's effort was duplicative, redundant, and inefficient."  *Schueneman v. 1st Credit of Am., LLC*, No. C 05 4505 MHP, 2007 WL 1969708, at *5 (N.D. Cal. July 6, 2007) (reducing the lodestar because "[i]n many instances, the description of the service falls below [the *Hensley*] standard."); *Citizens for Better Forestry v. U.S. Dep't of Agric.*, No. C-01-0728 MJJ, 2006 WL 5692819, at *15 (N.D. Cal. Nov. 2 2006) (reducing fees award by 25% to "address the deficiencies with Plaintiffs' documentation of costs-as well as to address Plaintiffs' inability to segregate costs by claim[.]")  Greenfield Decl. ¶ 34.

    Sidense's motion fails completely to satisfy that standard and those concerns.  In contrast to its prior fees motion, Sidense conspicuously fails to include an expert declaration analyzing the fees charged and the propriety of the amount of time and money spent on each task.[7]  Nor does Sidense's proffer of its counsel's declaration that its fees were reasonable, or its *ipse dixit* apportionment of fees as between the patent and business tort claims, pass muster.  Greenfield Decl. ¶ 31.  Nor does Sidense's offer to allow *in camera* inspection of bills solve the problem, because that is inadequate to allow Kilopass sufficient information to challenge its fee calculations.  *In camera* inspection by the Court, not the opposing party, is not adequate to fulfill this function.  Greenfield Decl. ¶ 38 & n.8.  Kilopass is not in a position fully to evaluate the reasonableness of what work Sidense has done.  Greenfield Decl.; *Hensley*, 461 U.S. at 437. The proper course is to produce the bills themselves with limited redactions for privilege if necessary.[8]

---

[7] Even that prior declaration fell short of describing the sort of detailed review typically conducted to validate and support a fee request, acknowledging that the declarant had not analyzed "each subject covered by the billing" and offering no opinion concerning the propriety of individual time entries, but saying only that "the time spent falls within the range I would expect for a case of this importance." Decl. Chas. B. Renfrew Supp. Def.'s Mot. Attorneys' Fees ¶ 23, ECF No. 339-1.

[8] We note that privilege and work-product concerns should be at their nadir in a case such as this one, where final judgment on the merits has been entered, so there can be no concern of the opponent gaining an advantage by gleaning information from the bills about the other side's litigation strategy.

1    Sidense's deliberate failure of proof is especially disturbing on the facts of this case, for two

2    reasons.  *First,* it appears that Sidense has made at least one calculation error, in its own favor, that

3    inflates its requested fees by            .  As set forth in detail in the Greenfield Declaration, it appears

4    that Sidense, when calculating its requested contingency fee enhancement, simply took

5                                        (For example only: if Sidense's counsel had run up

6    fees of         under that arrangement, it would have                                        .

7    Based on the terms of its contingency enhancement agreement, Sidense would now be seeking

8                                        .  The apparent error is that Sidense did not

9    reduce that (hypothetical)        to exclude from it amounts that even Sidense acknowledges it should not

10   be compensated for, *e.g.*, time spent on the business tort case.  Sidense elsewhere calculated the amount

11   to be excluded, but it appears

12   .  *See generally* Greenfield Decl. ¶¶ 17 - 18 & Ex. 2.  Based on the limited data presented by Sidense,

13   it appears that Sidense erred in its favor to the tune of        .  *Id.* ¶ 17.  Without Sidense's actual billing

14   statements, neither the Court nor Kilopass can be sure they have caught any other errors that may

15   underlie Sidense's request.

16       *Second,* and more fundamentally, while it is not possible for either Kilopass or the Court to

17   evaluate fully the reasonableness of Sidense's claimed fees, the record provides ample basis to conclude

18   that at least some substantial but undisclosed portion of Sidense's fees were in fact unreasonably

19   incurred.  Again, Sidense acknowledges this, asserting that it has deducted fees for motions it brought

20   and lost (Cook Suppl. Decl. ¶ 19), for representation of other parties (*id.*), and for certain unproductively-

21   spent time (*id.* ¶ 18).  But by withholding its bills it prevents Kilopass and the Court from being able

22   independently to evaluate those assertions.  Moreover, Sidense does not even attempt to represent that it

23   has deducted time spent on motions that it forced Kilopass to bring which Kilopass won or those related

24   to Sidense's arguments that it did not directly infringe.  For example, Sidense refused to produce

25   communications between it and its customers, asserting "common interest privilege."  Kilopass was

26   forced to bring a motion to compel and the Court concluded that the documents were "marketing

27   materials" not evidence of "allied lawyers and clients work[ing] together in . . . defending a lawsuit[.]"

28   Order Granting Pla.'s Mot. Compel at 2, ECF No. 224.  Nor does Sidense attempt fully to account for the

other ways in which it drove up the cost of the litigation for both sides.  Again, by way of example only, Sidense wrongfully denied direct infringement, forcing Kilopass to amend its complaint to allege indirect infringement, and then take discovery to prove up that theory, when Sidense in fact knew all along that it had accused devices manufactured in the United States—indeed on multiple occasions.  That, in turn, led to motion practice over the discovery that Sidense wrongfully forced Kilopass to take—motion practice which Kilopass won.  *See, e.g.*, Order re: Mot. Compel, ECF No. 117.[9]  Another example of needless motion practice caused by Sidense was its refusal to stipulate to Kilopass' filing of a third amended complaint; after Kilopass moved to amend, Sidense then filed a statement of non-opposition.  (*See* ECF Nos. 212, 223.)

Such matters properly may be considered in deciding whether a case is exceptional, but—because the determination of whether a case is exceptional and the amount of fees to be awarded if it is are inextricably intertwined—should also be considered in making the latter determination.  *Cf.* Order & Op. Den. Attorney's Fees at 8, *Stragent, LLC, v. Intel Corp.*, No. 6:11-cv-421 (E.D. Tex. Aug 6, 2014), ECF No. 364 (Dyk, J., sitting by designation) ("the relevant considerations for a determination of whether a case is 'exceptional' may include the conduct of the winning party—for example, whether the winning party advanced arguments in bad faith or committed litigation misconduct.")

Given Sidense's failure to carry its burden of proof, particularly where the record reveals that it litigated the case in a highly contentious fashion (Order Den. Pla.s' Mot. Sanctions at 3-4, ECF No. 370) an award to it of the        it seeks cannot be justified as "reasonable" by any measure.

**4.    Any Award of Fees Should be Limited to Reasonable Fees for Work Done starting in May 2012, and Should Take Into Account Both the Limited Severity of the Conduct at Issue and the Limited Ability of Kilopass to Pay an Award**

As set forth above, the Court should exercise its discretion to award fees only for work directly and reasonably flowing from the conduct that formed the basis for the Court's decision to find the case exceptional.  Any award also should take into account the facts that that conduct was not the most severe

_____

[9] We acknowledge that Sidense claims to have backed out fees for litigating its unsuccessful motion for protective order against the subpoenas that its improper denial of direct infringement made necessary, but have no way to assess that claim in the absence of Sidense's bills.

conduct—which more typically underlies fee awards under Section 285—and that a larger award is likely

.

The Court's bases for finding the case exceptional in the Fees Order (ECF No. 427) were as follows:

- That Kilopass had no reasonable basis for asserting a literal infringement claim (which Kilopass dropped at the summary judgment phase) (Fees Order at 15-16);

- That Kilopass' position on infringement under the doctrine of equivalents as to the STI/first doped region issue lacked a legitimate basis (and that Kilopass adopted a new theory in response to summary judgment without seeking leave to amend its infringement contentions) (*Id*. at 11-12); and

- That Kilopass took inconsistent positions in front of the Court and BPAI with respect to "interchangeability" of wordline and bitline  (*Id*. at 16).

As to the first issue ("no literal infringement") Sidense has made no effort to assert, much less prove, that it incurred any incremental expense in litigating that issue.  The Court previously held that it could nevertheless take such conduct into account in finding the case "exceptional" (essentially as a piece of evidence the Court deemed probative of the unreasonableness of Kilopass' conduct, Order Den. Pla.s' Mot. Sanctions at 5, ECF No. 370, but that does not mean that Sidense incurred incremental fees to respond on that issue.  And at all events Sidense has not offered even an assertion as to what any such increment was.

As to the second issue, Sidense implicitly suggests that because the Court has found that Kilopass had no objective basis to assert infringement by equivalents on the STI/first doped region issue, it must bear Sidense's full cost for patent aspects of the case because, but for the bringing of a case without an objectively reasonable basis, those fees would not have been incurred.  But it does not follow that all of those fees are reasonable or may be recovered.  Even if one believes that no expenses would have been incurred but-for Kilopass' suit, it does not follow that all expenses incurred because of Kilopass' suit reasonably needed to be incurred to defend against it.  (Put another way, that argument rests on an overly simplistic notion of but-for cause and ignores entirely the concept of proximate cause.)  Even the fact that

14

1    a court finds a patentee's claim was objectively baseless should not permit the accused infringer to

2    recover fees for having needlessly conducted a "scorched earth" defense.

3         Sidense unquestionably was aware of its non-infringement position on the STI/first doped region

4    issue from the very outset.  In a letter it sent to Kilopass four years before the suit was filed, Sidense

5    asserted that it did not infringe Kilopass' patents because the first and second doped regions were not

6    present in Sidense's products.  First Durie Decl. ¶ 24 and Ex. 23 at A10590, ECF Nos. 420-01, 420-17.

7    If, once suit was filed, Sidense believed that Kilopass' DOE position on the STI/first doped region issue

8    were truly so lacking in objective basis to be frivolous, then that lack of merit would have been apparent

9    to Sidense and its counsel from the outset.[10]  And if Sidense believed that it had a single "silver bullet"

10   non-infringement argument that would dispose of the entire case, the obvious (and obviously efficient)

11   strategy would have been for Sidense to ask the Court, as a matter of case management, to permit the

12   parties to do the limited discovery, claim construction, and other work necessary to allow Sidense to

13   prepare and present, and the Court to decide, a summary judgment motion on that narrow issue.  Lawyers

14   in this district who believe they have such a "silver bullet" motion make precisely those requests at Rule

15   26 conferences and judges in this District will grant them.  *See* Decl. Daralyn J. Durie Supp. Pla.'s Opp'n

16   Def.'s Suppl. Fee Calc. Supp. Mot. Attorneys' Fees ("Second Durie Decl.") ¶¶ 2 - 5 & Ex. 1 (at 3-5), Ex.

17   2, Ex. 3 (at 7) and Ex. 4 (at 1).

18        Sidense did not do so here; it did the opposite.  As described in Section II, above, it chose to deny

19   that it engaged in conduct that could constitute direct infringement, needlessly turning this into an

20   indirect infringement claim and needlessly expanding the proceedings, until, 18 months into the

21   litigation, a deposition finally revealed the truth.  *See* Kilopass Mot. Sanctions at 5-8, ECF No. 337.

22   Though the Court has declined affirmatively to sanction Sidense for those tactics, we submit that it

23   should not reward them by adopting a "but-for" standard and awarding all patent-related fees incurred

24   (minus relatively minor deductions based on Sidense's counsel's say-so but no evidence of actual time

25   records).

26

27   _____

     [10]

28

1    As to the third issue, the record contains no suggestion that Kilopass' position with respect to the

2    wordline/bitline issue was unwarranted when the case began.  To the contrary, at the *Markman* hearing,

3    the Court largely ruled for Kilopass on that issue.  Order Granting Def.'s Mot. Attorneys' Fees at 9, ECF

4    No. 427.  It was not until patent counsel for Kilopass – a different firm than was representing Kilopass in

5    this litigation – took a different position before the BPAI than then-current litigation counsel for Kilopass

6    had taken in this Court that any issue arose with respect to the wordline/bitline issue.  On May 1, 2012,

7    this Court ruled that, as a result of the divergent statements made in two different fora by two different

8    sets of counsel for Kilopass, Kilopass had disclaimed certain claim scope.  Order Granting Pla.'s Mot.

9    Compel at 10, ECF No. 224.[11]

10    Based on that ruling, Sidense filed for and was granted summary judgment on the wordline/bitline

11    issue (as well as finally filing for and obtaining summary judgment on the DOE STI/first doped region

12    issue).  The Court's summary judgment ruling on the wordline/bitline issue rests entirely on its May 1,

13    2012 ruling on disavowal of claim scope.  Order Granting Def.'s Mot. Summ. J., ECF No. 272 at 11:10-

14    12.

15    Kilopass therefore respectfully submits that, if this Court holds to its intention to award attorneys'

16    fees under Section 285, then the upper bound on those fees should be amounts reasonably expended by

17    Sidense after May 1, 2012 to secure and defend summary judgment, excluding time expended on

18    preparation for trial.  That is the date on which the Court issued its order on disavowal of claim scope

19    and, to the extent the Court has ruled that Kilopass infringement position on the wordline/bitline issue

20    was objectively baseless, it only became objectively baseless on that date.  Similarly, work done after

21    that date should capture the bulk if not all of the work on the portion of Sidense's motion that relates to

22    the DOE STI/first doped region issue, given that the motion was filed on July 6, 2012 (over two months

23    after May 1).  Kilopass Opp'n Mot. Summ. J., ECF No. 252.

24    Given that Sidense has withheld its bills, it is not possible to state that number precisely, both

25    because we cannot tell exactly what amount of fees were incurred for work done after May 1, 2012, and

26    we cannot tell what portion of the fees generated by work after that date and before entry of judgment

---

[11] The Court also ruled that counsels' statements were not an appropriate basis for a finding of judicial estoppel. *Id.* at 9.

1   were for trial preparation.  Kilopass' best estimate of the maximum reasonable fees for patent-related

2   work after May 1, 2012, based on the limited information Sidense has made available, is            .

3   Greenfield Decl. ¶ 19.  Nowhere near all of that work was devoted to the winning summary judgment

4   motion.  Sidense's counsel has declared that a substantial amount trial preparation was done—"nearly all

5   the pretrial work necessary to go to trial."  Cook Suppl. Decl. ¶ 37.  Thus, even assuming that just over

6         of that            was attributable to the winning summary judgment motion suggests a fee award of at

7   most        .

8           Such an estimate is also supported by caselaw and Sidense's own conduct here.  Sidense has not

9   provided the bills, preventing both an allocation of fees between summary judgment and other tasks, and

10  preventing the Court from assessing whether the fees claimed are "reasonable"—*e.g.*, whether the work

11  done after that date was done efficiently or inefficiently, by the right level of lawyer, etc.  Greenfield

12  Decl. ¶ 28-35.  Courts routinely and properly reduce fee awards where the fee-claimant's evidence

13  hampers the court's ability to assess these issues.  *See, e.g.*, *Welch v. Metro. Life Ins. Co.,* 480 F.3d 942,

14  948 (9th Cir. 2007) (20% reduction in fees appropriate where claimant engaged in block billing because

15  claimant bore burden of demonstrating that fees claimed were based on appropriate expenditure of hours,

16  block billing makes it more difficult to determine how time was spent, and claimant therefore failed to

17  carry burden).  If submission of invoices containing block billing sufficiently hinders judicial review to

18  justify a substantial reduction in claimed fees (*id.*), then *a fortiori,* submission of no invoices whatsoever

19  should, in and of itself, justify an even more substantial reduction.

20          The proper exercise of the Court's discretion to consider the fees in light of the nature and

21  severity of the conduct giving rise to the fee award (*see* Section III.A.1, above) confirms the propriety of

22  using the fees occurred in this limited time period as an upper bound for any award.  Post-*Octane* district

23  court decisions suggest that in the typical "exceptional" case there will be affirmative and severe acts of

24  misconduct such as efforts to deceive opposing counsel and the Court.  *See, e.g.*, *Gametek*, 2014 WL

25  4351414, at *3 (citing as examples of conduct leading to post-*Octane* fee awards the filing of false

26  declarations before the PTO which led to the issuance of the patent in suit, and the repeated filing of

27  motions seeking to re-litigate issues previously litigated and rejected).

28

1    Kilopass respectfully submits that while this Court has found the case "exceptional" the conduct

2    at issue is less severe, less damaging to the judicial system, and less impactful than many "exceptional"

3    cases.  As noted, Sidense has not attempted to show that it incurred expense from the assertion of literal

4    infringement as compared simply to infringement under the DOE.  And while this Court has found that

5    inconsistent statements of Kilopass' counsel before the PTO and this Court amounted to

6    "gamesmanship" that action already has cost Kilopass dearly.  Once the issue was pointed out, Kilopass

7    withdrew those statements before the PTO and derived no advantage in the PTO from them.  Order

8    Granting Pla.'s Mot. Compel at 10, ECF No. 224.  Though it gained no advantage there, it lost here: the

9    benefit of the Court's favorable claim construction ruling on the wordline/bitline issue was lost with the

10   Court's disavowal of claim scope ruling.

11       **B.      Other Considerations Support Limiting the Award**

12               **1.      Awarding Sidense its Requested Amount**

13   An award of Sidense's request

18

. Decl. Charlie Cheng Supp. Pla.'s Opp'n Def.'s

19   Suppl. Fee Calc. Supp. Mot. Attorneys' Fees ("Cheng Decl.") ¶ 2.

20                                                                         . *Id*.

22                                 *Id.* ¶ 14.

25                                 *Id*.

27                                                          . Cheng Decl. ¶ 7.

28

1  . *Id.*                                        . *Id.*  In the past several years,

2  the semiconductor market has undergone drastic consolidation and funding has dried up for smaller

3  companies. *Id.* ¶ 6.

4

5

6                                                                                        .

7        A court may decide not to award attorneys' fees where "special circumstances would render that

8  award unjust." *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1097 (N.D. Cal. 2010).

9  In particular, in rendering decision on a fees motion,

10       . *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 988 (Fed. Cir. 2000); *Mitchel v. City*

11  *of Santa Rosa*, No. C 09-05004 SI, 2012 WL 3580534, at *10 (N.D. Cal. Aug. 17, 2012).  A substantial

12  fee award on the order requested by Sidense                                        , and should

13  not be entered for that reason as well.

14                **2.    National Security Concerns Militate for a Limited Award**

15       Kilopass' products play a substantial role in the infrastructure underlying U.S. national security.

16  In particular, Kilopass regularly sells products to Northrup Grumman Corporation ("NGC") for use in

17  defense-related products, and has licensed similar products to at least three other defense contractors.

18  Cheng Decl. ¶ 11.

19

20                                                      . *Id.*  Foreign technology

21  suppliers are not likely to qualify for the necessary level of security clearance to perform this work and

22  therefore cannot deliver these types of products to defense companies like NGC.  Cheng Decl. ¶¶ 11 &

23  Exs. A and B.

24                       affect national security product delivery and the public interest.

25  **IV.    CONCLUSION**

26       Kilopass respectfully maintains that no award of fees is warranted here.  Recognizing this Court's

27  prior ruling (Order Granting Def.'s Mot. Attorneys' Fees, ECF No. 427) and reserving its appellate rights

28  with regard to same, Kilopass submits that if the Court is to award Sidense fees, the award should be no

19

more than the amount of reasonable fees incurred by Sidense for work done after May 1, 2012 to secure and defend summary judgment (other than work preparing for trial) which, based on the limited evidence presented by Sidense, may reasonably be found to be no more than        .

Dated:  September 12, 2014                              DURIE TANGRI LLP


                                                       By: _____/s/ Daralyn J. Durie_____
                                                              DARALYN J. DURIE
                                                              ALEX J. FEERST

                                                       Attorneys for Plaintiff
                                                       KILOPASS TECHNOLOGY, INC.

KILOPASS TECHOLOGY INC.'S OPPOSITION TO SIDENSE CORP.'S SUPPLEMENTAL FEE
CALCULATION MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEY'S FEES / CASE
NO. 3:10-CV-02066-SI

**CERTIFICATE OF SERVICE**

I certify that all counsel of record is being served on September 12, 2014 with a copy of this document via the Court's CM/ECF system.

                                                    */s/ Daralyn J. Durie*
                                                    DARALYN J. DURIE

21