KILPATRICK TOWNSEND & STOCKTON LLP
ROGER L. COOK (State Bar No. 55208)
SARA B. GIARDINA (State Bar No. 278954)
KEVIN J. O'BRIEN (State Bar No. 278823)
Two Embarcadero Center Eighth Floor
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
Email: rcook@kilpatricktownsend.com
sgiardina@kilpatricktownsend.com
kobrien@kilpatricktownsend.com

JOSHUA H. LEE (admitted *pro hac vice*)
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309-4528
Telephone: (404) 815-6500
Email: jlee@kilpatricktownsend.com

Attorneys for Defendant
SIDENSE CORP.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KILOPASS TECHNOLOGY INC.,<br><br>Plaintiff,<br><br>v.<br><br>SIDENSE CORP.,<br><br>Defendant. | Case No. CV 10-02066 SI<br><br>**SIDENSE'S REPLY FEE CALCULATION MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**<br><br>Date: October 17, 2014<br>Time: 9:00 am<br>Ctrm.: 10, 19th Floor<br>Judge: Hon. Susan Illston |

**PUBLIC REDACTED VERSION**

## TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Sidense's Fee Request is Reasonable In Light of the Law and the Facts of This Case .......... 2

1. Sidense is Entitled to Recover its Full Fees Reasonably Expended in Defending against Kilopass' "Objectively Baseless" Patent Infringement Lawsuit .......... 2

2. Supreme Court Precedent Does Not Preclude, But Instead Favors Sidense's Recovery Of Its Full Attorney Fees .......... 4

3. Sidense has Provided All Evidence Needed to Show that its Requested Fees Were Reaonably Incurred – Local Rule 54-5(b) .......... 6

4. The Award Should Not Be Limited to Fees Starting May 1, 2012 .......... 12

B. Other Considerations Do Not Support Limiting The Award .......... 13

1. Kilopass' Should Not Prevent the Court from Awarding Sidense Its Attorney Fees .......... 13

2. .......... 14

III. CONCLUSION .......... 15



# TABLE OF AUTHORITIES

Page

**Cases**

*Al-Haramain Islamic Foundn. v. Obama*,
705 F.3d 845 (9th Cir. 2012)........................................................................................ 6

*Beckman Instruments, Inc. v. LKB Produkter AB*,
892 F.2d 1547 (Fed. Cir. 1989)........................................................................................ 3

*Bywaters v. U.S.*,
670 F.3d 1221 (Fed. Cir. 2012)........................................................................................ 2, 3, 5

*City of Burlington v. Dague*,
505 U.S. 557 (1992)........................................................................................ 5

*Davis v. Prison Health Svcs.*,
No. 3:09-cv-02629-SI, ECF No 324 at 12 (N.D. Cal. Sept. 25, 2012)........................................ 7

*Gametek v. Zynga*,
2014 WL 4351414 (N.D. Cal. Sept. 2, 2014)........................................................................ 12

*Hensley v. Eckerhart*,
461 U.S. 24 (1983)........................................................................................ 2, 3, 7, 8

*Homeland Housewares, LLC v. Hastie2Market, LLC*,
--- Fed. Appx. ----, 2014 WL 4400184 (Fed. Cir. Sept. 8, 2014)........................................ 2

*Intel Corp. v. Terabyte Int'l, Inc.*,
6 F.3d 614 (9th Cir. 1993)........................................................................................ 2

*Mathis v. Spears*,
857 F.2d 749 (Fed. Cir. 1988)........................................................................................ 2

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010)........................................................................................ 5

*Raylon, LLC v. Complus Data Innovations, Inc.*
700 F.3d 1361 (Fed. Cir. 2012)........................................................................................ 3

*Read Corp. v. Portec, Inc.*,
970 F.2d 816 (Fed. Cir. 1992)........................................................................................ 3, 4

*Special Devices* v. *OEA, Inc.*
269 F.3d 1340 (Fed. Cir. 2001)........................................................................................ 3

*Stragent*, No. 6:11-cv-421 (N.D. Cal.)........................................................................................ 11



## TABLE OF AUTHORITIES
(continued)

Page

*Takeda Chem. Indus. v. Mylan Lab.*, 549 F.3d 1381 (Fed. Cir. 2009) ........ 4

*Willis Corroon Corp. of Utah, Inc. v. United Capitol Ins., Co.*, No. C-97-2208 MHP, 1998 WL 196472 (N.D. Cal. Apr. 9, 1998) ........ 7

**Statutes**

15 U.S.C. § 1117 ........ 2

35 U.S.C. § 285 ........ 1, 2, 3, 11

**Other Authorities**

Local Rule 54–4 ........ 7

Local Rule 54-5(b) ........ 1, 6, 7

Local Rule 54-5(b)(2) ........ 6, 7

Local Rule 54-5 ........ 6, 7, 8, 12



Sidense responds to the points raised in Kilopass' Opposition Memo in order.

## I. INTRODUCTION

Kilopass disputes Sidense's request for a compensatory fee award based on the fee that Sidense is actually paying its attorneys, as opposed to a smaller fee that Sidense would have paid if it had been able to both

Because , Sidense entered into a fee agreement for a portion of the case between April 2011 and October 2012 whereby it would pay

Now, because it has achieved

Sidense is paying the agreed fee, and requests a corresponding fee award. Such an award makes common sense because §285 is intended to be compensatory.

Kilopass argues that there is no explicit legal precedent for such an award. Sidense agrees. However, there is also no legal precedent against such an award, so that this is a matter of first impression, and the Supreme Court has explicitly acknowledged that fee agreements of this sort, where the prevailing party pays a reduced hourly rate plus a bonus for success, are not analogous to standard contingent fee agreements which the Court has traditionally refused to use as the basis for attorneys' fee awards. Moreover, common sense suggests that where a patent owner engages in objectively baseless patent infringement litigation against a smaller competitor, the competitor should be entitled to a compensatory award of its actual attorneys' fees rather than some lesser amount measured by a limited standard having no relationship to the present circumstances.

Kilopass has also asserted a host of technical objections to Sidense's requested award, none of which have merit. For example, Kilopass asserts that Sidense should be denied its award because it did not submit its attorneys' detailed billing records; however, Sidense has scrupulously complied with Civil Local Rule 54-5(b) governing the content of attorneys' fees motions and that rule does not require submission of detailed billing records unless the Court so requests. This and other Kilopass objections are dealt with in detail in the following memorandum.

## II. ARGUMENT

### A. Sidense's Fee Request is Reasonable In Light of the Law and the Facts of This Case

#### 1. Sidense is Entitled to Recover its Full Fees Reasonably Expended in Defending against Kilopass' "Objectively Baseless" Patent Infringement Lawsuit

Kilopass argues that § 285 awards should not be measured under traditional fee shifting standards. Opp. at 3-6. However, the black letter law dictates that all awards of "reasonable attorney fees" to a "prevailing party" under federal statutes are calculated uniformly, regardless of whether the decision to make an award is discretionary, or if it occurs outside the civil rights context. Kilopass is therefore incorrect when it argues that *Hensley* and *Bywaters* do not control the lodestar analysis.

*Hensley* defines itself as providing a universal rule: "The standards set forth in this opinion are **generally applicable in all cases** in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley v. Eckerhart*, 461 U.S. 24, 433, n.7 (1983) (bold added). The Federal Circuit repeats the maxim in *Bywaters*: "[T]he Supreme Court has advised that all federal fee-shifting statutes calling for an award of 'reasonable' attorneys' fee should be construed '**uniformly**.'" *Bywaters v. U.S.*, 670 F.3d 1221, 1228 (Fed. Cir. 2012). Kilopass argues that such uniformity does not extend to § 285, but the Federal Circuit has approved of the *Hensley* line of authority in calculating exceptional case fee awards for 25 years. *See Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (citing *Hensley*, 461 U.S. at 435). While any dispute as to whether general fee-shifting jurisprudence applies was therefore settled long ago, a more recent confirmation came last week in *Homeland Housewares, LLC v. Hastie2Market, LLC*, --- Fed. Appx. ----, 2014 WL 4400184, *3 (Fed. Cir. Sept. 8, 2014). There, the Federal Circuit relied on *Bywaters* and *Hensley* as controlling authority in affirming a § 285 award. *Id.* It makes no difference that the fee award is discretionary or that the underlying law involves intellectual property rather than civil rights. [1]

[1] This is again confirmed by the treatment of the Lanham Act, which contains a discretionary "exceptional case" statute for egregious acts of trademark infringement identical to § 285, and is likewise governed by the *Hensley* reasonable attorney fee standard. *See, e.g, Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (citing *Hensley*, 461 U.S. 424, 433); 15 U.S.C.



    Kilopass then relies on its faulty premise to cobble together case law for the conclusion that "[f]ee awards under § 285 need not be intended to serve the purpose of fully compensating the prevailing party for all of its reasonable attorneys' fees incurred in litigating the whole of a patent case." This transparent attempt to have the Court revisit its decision to award reasonable attorney fees is directly contrary to *Raylon, LLC v. Complus Data Innovations, Inc.* 700 F.3d 1361, 1372-73 (Fed. Cir. 2012), which states that "[t]he purpose of the [§ 285] statute has been described by this court as compensation to the prevailing party for its monetary outlays in the prosecution or defense of the suit." While it is true that, in specific circumstances, full compensation of reasonable attorney fees may require only a portion of the total fees incurred in the patent suit, the scenarios are only where either (1) litigation misconduct tainted a mere fraction of the entire suit; or (2) the prevailing party only "prevailed" on a fraction of the asserted claims. Neither situation applies to the patent suit here.

*Special Devices, Inc. v. OEA, Inc.*, relied on by Kilopass, describes the limited scenarios where it makes sense for a Court to award less than the full amount of infringement fees.[2] Two cases are cited. *Id.* The first is *Beckman Instruments*. 892 F.2d at 1549. There, the plaintiff asserted five patents. *Id.* Two were found valid and infringed, but three were found invalid and not infringed. *Id.* The district court awarded fees under § 285 for the entire patent case, and was reversed for not accounting for the degree that plaintiff was only partially the "prevailing party." *Id.* at 1553-54. Here, there is no dispute that Sidense prevailed completely as a defendant to all patent claims, and that all claims were considered objectively baseless. *Beckman Instruments* therefore provides no reason to limit the lodestar award.

---

§ 1117. All of this shows that *Bywaters*, i.e., the Federal Circuit's most recent published "progeny" of *Hensley*, is controlling law for what constitutes "reasonable attorney fees" under § 285, and must guide the lodestar analysis.

[2] "Rather, the amount of the attorney fees depends on the extent to which the case is exceptional. In other words, the exceptionality determination highly influences the award setting. *See Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1554, 13 USPQ2d 1301, 1306–07 (Fed. Cir. 1989) ("[T]he amount of fees awarded to the 'prevailing party' should bear some relation to the extent to which the party actually prevailed."); *see also Read Corp. v. Portec, Inc.*, 970 F.2d 816, 831, 23 USPQ2d 1426, 1439 (Fed. Cir. 1992) ("[W]hen the attorney fees under 35 U.S.C. § 285 are awarded solely on the basis of litigation misconduct, the amount of the award must bear some relation to the extent of the misconduct.")." *Special Devices* v. *OEA, Inc.* 269 F.3d 1340, 1344 (Fed. Cir. 2001).



In *Read Corp.*, 970 F.2d at 83, there was a lingering question of whether the district court adequately considered misconduct that allegedly occurred during the presentation of a particular exhibit at trial. *Id.* The Federal Circuit ordered the district court to reevaluate whether the conduct was sufficiently culpable for an exceptionality finding. *Id.* In doing so, the Federal Circuit noted that when attorney fees are "awarded **solely** on the basis of litigation misconduct, the amount of the award must bear some relation to the extent of the misconduct." *Id.* (bold added). Here, it was not solely a discrete instance of misconduct that supported the exceptional case finding. Rather, it was the objectively baseless nature of the claims from start to finish and beyond, with litigation misconduct providing some amplification. (Dkt. # 426 at 23-24).

Finally, Kilopass cites *Takeda Chem. Indus. v. Mylan Lab.*, 549 F.3d 1381, 1389 (Fed. Cir. 2009), but the analysis and outcome of that case are highly supportive of Sidense receiving the full lodestar request. In that case, the Federal Circuit upheld the district court's award to the plaintiff of nearly $17,000,000 in fees, or the entire amount requested. *Id.* at 1385, 1390. There, defendants had rested on invalidity theories (as incorporated into their pre-litigation ANDA Paragraph IV certification letters) that were found to be "utterly frivolous" and "baseless." *Id.* at 1389-90. These failings were "compounded with litigation misconduct," and justified the full fee award. *Id.* at 1390. Like the plaintiff in *Takeda Chemical*, Kilopress pressed baseless claims from the outset, compounded with litigation misconduct, and Sidense therefore deserves full compensation.

### 2. Supreme Court Precedent Does Not Preclude, But Instead Favors Sidense's Recovery Of Its Full Attorney Fees

Kilopass misrepresents Supreme Court jurisprudence to argue that incorporating the merits-based fee agreement into the ***lodestar*** analysis runs afoul of authority rejecting after-the-fact ***enhancement*** of the lodestar due to the risk inherent in litigating contingency cases. The Supreme Court rejected Kilopass's "analogy" as "flawed" in its most recent lodestar opinion:

> We are told that, under an increasingly popular arrangement, attorneys are paid at a reduced hourly rate but receive a bonus if certain specified results are obtained, and this practice is analogized to the award of an enhancement such as the one in this case. The analogy, however, is flawed. An attorney who agrees, at the outset of the representation, to a reduced hourly rate in exchange for the

> opportunity to earn a performance bonus is in a position far different from an attorney in a § 1988 case who is compensated at the full prevailing rate and then seeks a performance enhancement in addition to the lodestar amount after the litigation has concluded.

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556-557 (2010). Kilopass conspicuously fails to address the Supreme Court's finding that a prefigured hybrid fee agreement is ***not*** equivalent to a request for an arbitrary post-hoc lodestar enhancement based on the risk of contingency. This despite its prominent position on page 8 of Sidense's opening brief.

The Federal Circuit recognized this important distinction in *Bywaters*, holding that the contingency agreement "cannot be used to limit the recovery of attorneys' fees *after* determining the lodestar figure. We nonetheless think that the agreement may be considered in calculating the lodestar figure." *Bywaters*, 670 F.3d at 1232.[3] The Federal Circuit then ordered remand, with the specific instruction for the district court to account for "the fee agreement in calculating the lodestar figure rather than by reducing the lodestar figure itself." *Id.* As discussed in Sidense's opening brief, the merits-based agreement should be incorporated into the lodestar because it reasonably and *objectively* accounts for the superior results counsel garnered in light of the importance of the case to Sidense, and is consistent with the prevailing rates. Kilopass meekly tries to distinguish *Bywaters* in a footnote on the basis that the specific contingency agreement in *Bywaters* would reduce rather than increase the lodestar, but the Federal Circuit nowhere suggests that a contingency fee agreement is only incorporated into the lodestar analysis where it will decrease the lodestar figure. *See id.* Whether a particular fee agreement will increase or decrease the lodestar is a factually dependent question that will vary from case to case. The ultimate legal holding of *Bywaters* is that a contingency fee agreement is important to the lodestar analysis. *See id.*

Kilopass argues that awarding Sidense the attorneys' fee it must actually pay its lawyers makes no economic sense. Opp. 8:1-12. However, Kilopass is in a poor position today to second-guess an economic decision that Sidense made at the time. Kilopass' quasi-academic arguments

[3] *Bywaters* itself cites *City of Burlington v. Dague*, 505 U.S. 557, 566-67 (1992) three separate times, demonstrating that the Federal Circuit was well aware of the authority Kilopass relies upon to attempt to exclude the fee agreement. *Id.* at 1228-30.

about "shareholder dilution" and "interest rate loans" have no grounding in the economic reality that Sidense faced at the time it entered into the hybrid fee agreement. Moreover, the merits-based fee agreement cannot be compared to a loan, because in certain unfavorable scenarios, Sidense would pay nothing for that portion of the hours expended.

Kilopass argues that when Sidense filed its original motion for attorneys' fees it merely sought to recover fees based upon standard hourly rates, rather than fees based upon the hybrid fee agreement negotiated with its lawyers. Opp. at 8:13-9:5. However, since Kilopass never responded to that other fee request, instead deferring its response until after a decision as to exceptionality, and the Court has never ruled on that prior request, Sidense has not waived its right to seek the larger hybrid fee.[4]

**3. Sidense has Provided All Evidence Needed to Show that its Requested Fees Were Reaonably Incurred – Local Rule 54-5(b)**

Kilopass's argument that Sidense's filing of a declaration in lieu of billing records is an evidentiary deficiency completely ignores the requirements of Civil Local Rule 54-5(b)(2), which states "[a] statement of the services rendered by each person for whose services fees are claimed together with a ***summary*** of the time spent by each person, and a statement describing the manner in which time records were maintained." (emphasis added). "***Depending on the circumstances***, the Court ***may*** require production of an abstract of or the contemporary time records for inspection, including *in camera* inspection, ***as the Judge deems appropriate***[.]" Civil L.R. 54-5(b)(2) (all emphasis added).

In keeping with the Local Rules, courts in this district rely upon Rule 54-5 summaries in lieu of contemporaneous time records. *Al-Haramain Islamic Foundn. v. Obama*, U.S.D.C. N.Calif, No. 07-cv-00109 VRW, Dec. 21, 2010, at 36:13-16; rev'd. on other grounds, 705 F.3d 845 (9th Cir. 2012). ("Plaintiffs have maintained contemporaneous time records [cite] and Local Rule 54-5 allows a court to require production of these for in camera inspection. Such a production is not necessary here. The court has no difficulty in determining from plaintiffs' detailed billing summaries that their legal work was related to the successful FISA claims of

[4] Kilopass makes no specific argument for waiver and cites no case law supporting waiver.

[movants].”). Similarly, in *Willis Corroon Corp. of Utah, Inc. v. United Capitol Ins., Co.*, No. C-97-2208 MHP, 1998 WL 196472, at **3-5 (N.D. Cal. Apr. 9, 1998), the non-movant argued that “the [fee] request is unreasonable because it is not specific enough in that United has only provided cumulative totals for three attorneys along with a general statement of what each did.” Rejecting this argument, Judge Patel said: “United has complied with Local Rule 54–4 which requires it to file a statement of the services rended [*sic*] by each person along with a summary of the time spent, a statement describing the manner in which time records were maintained, a description of relevant qualifications and experience, and a statement of the customary hourly charges of each person. N.D. Cal. Civil L.R. 54–5(b)(1)–(2). *United has failed to produce any time records indicating how much time was specifically spent on each task, however this is not a strict requirement.*” (Emphasis added.) In reaching thish common-sense conclusion, Judge Patel noted that “[w]hen apprised of the pertinent facts, the trial court may rely on its own experience and knowledge in determining the reasonable value of the attorney's services.”

Seemingly oblivious to Local Rule 54-5, Kilopass and its fees expert Gary Greenfield assert that *Hensley v Eckerhart*, 461 US 424 (1983) requires Sidense to have produced its detailed time records. Opp. at 10. However, *Hensley* preceded this district’s enactment of Local Rule 54-5(b) and, therefore, does not hold that compliance with Local Rule 54-5(b) is insufficient. Moreover, consistent with Rule 54-5(b), the Supreme Court observed that “counsel, of course, is not required to record in great detail how much each minute of this time was expended. But at least counsel should identify the general subject matter of his time expenditures.” 461 U.S. at 437 n.12.

Similarly, the language Kilopass relies upon from *Davis* is no more apt, since that language is cited directly from *Hensley – see Davis v. Prison Health Svcs.*, No. 3:09-cv-02629-SI, ECF No 324 at 12 (N.D. Cal. Sept. 25, 2012) – and speaks only in generalities without reference to Local Rule 54-5(b). *Id.*

Sidense has fully complied with Civil Local Rule 54-5(b)(2). The Cook Declaration accompanying Sidense’s Supplemental Fee Calculation Memorandum contains (i) a “statement of



the services rendered by each person for whose services fees are claimed" (Suppl. Cook Decl., ¶¶ 14–37, 38–52), (ii) "a summary of the time spent by each person" (*id.* at ¶¶ 16, 28–31), and (iii) "a statement describing the manner in which time records were maintained" (*id.* at ¶12). Additionally, the Suppl. Cook Declaration states that Sidense is prepared to "provide the Court with more detailed records for an *in camera* inspection" "[i]f the Court requires." *Id.* at ¶2.

Citing *Slimford Mfg.*, *Peake*, *Schueneman*, and *Citizens for Better Forestry*, Kilopass further argues that the Court may *reduce* any award to Sidense due to the alleged inadequacy of documents regarding the hours worked and rates billed. (Opp. at 10–11). However, these authorities do not apply since Sidense's documents comply with Local Rule 54-5 and Sidense has offered to "provide the Court with more detailed records for an *in camera* inspection [i]f the Court requires." Suppl. Cook Decl., at ¶2.

Kilopass argues that an *in camera* inspection of Sidense's bills by the Court is insufficient under *Hensley* as it does not allow Kilopass an opportunity to fully evaluate the reasonableness of the work performed. (Opp. at 11). As noted above, however, *Hensley* did not concern this Court's Civil Local Rules, which explicitly provided that an *in camera* inspection is only required by request from the Court "as the Judge deems appropriate." Civil L.R. 54-5(b)(2). Moreover, *Hensley* is silent on the non-movant's access to the movant's billing records; rather, the focus in *Hensley* is on providing *the Court* necessary access to the billing records to allow *the Court* to "determine what fee is 'reasonable'" and "provide a [] clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 433, 437.

Kilopass argues that "[i]n contrast to its original fees motion, Sidense conspicuously fails to include an expert declaration." Opp. at 11: 12-14. According to Kilopass, "Sidense's request is no longer supported by a declaration from Judge Renfrew, who submitted a declaration as to the propriety of Sidense's prior request." Opp. at 9:1. Then, to hedge its bet, Kilopass goes on to attack the sufficiency of Mr. Renfrew's declaration. *Id.* at 11: n. 7. As Kilopass tacitly acknowledges, through entry of judgment on October 2, 2012 the total hours, standard hourly rates, and total standard hourly fees for the combined patent infringement and business torts case

(i.e. 13,206 hours and $5,504,669 at the rates shown), and non-taxable costs for the patent case ($168,403.22) for the original and renewed motions are the same (compare original Declaration of Roger L. Cook In Support of Sidense Corp.'s Motion for Attorneys' Fees, Oct. 16, 2012, Dkt. 340 at ¶17 to Supplemental Fee Declaration of Roger L. Cook, Aug. 29, 2014, Dkt. 431-4 at ¶16). Consequently, the declaration of Charles B Renfrew supports the fees asserted in both motions.

After reviewing the invoices for the legal services upon which the original motion was based, taking into account the activities that were performed in the case, including discovery and extensive motion practice, Mr. Renfrew found the hours, fees, hourly rates and non-taxable costs to be reasonable and well within local norms for San Francisco Bay Area, considering the high quality of the lawyers involved and the nature of the case. Dkt. 339-1 at ¶¶ 23-31.

Kilopass summarily criticizes Mr. Renfrew for not conducting a detailed analysis of "each subject covered by the billing" (Opp. at 11 note 7) and attempts to minimize Mr. Renfrew's explanation, based on his extensive experience, that "while I have not analyzed each subject covered by the billing, in my experience, taking into account the activities that were performed in the case, discovery and extensive motion practice, the time spent falls within the range that I would expect for a case of this importance" (*Id*. at ¶23). And Kilopass totally ignores Mr. Renfrew's reference to the fact that all invoices were reviewed by senior litigation counsel before they were sent out (*id*. at ¶24) and his finding that the total amount of standard rate fees incurred through judgment in the three-patent case ▇▇▇▇ was nearly ▇▇▇▇ less than the original $5.4 million budget established at the outset when only one patent was involved. *Id*. at ¶¶ 18, 20, 28.

Under the circumstances, a more detailed analysis would add little value where the fees requested are consistent with local norms and well within the budget the movant agreed to when represented by independent counsel in fee negotiations at the outset of the case (Suppl. Cook Decl., Dkt.431-4 at ¶ 34; Suppl. Wania Decl., Dkt.431-13, ¶¶ 2,5, 9), and where the requested fees are fees which the movant is actually paying (*id*. at ¶ 17), especially where (as here) the individual invoices were based upon recorded daily time and reviewed by the senior litigation partner before



SIDENSE'S REPLY FEE CALCULATION MEMORANDUM - 9 -
CASE NO. C10-02066 SI

they were sent out (Suppl. Cook Decl., Dkt. 431-4 at ¶¶ 12, 13), and several post-invoice adjustments were made from time to time after client review (*id*. at ¶¶ 18, 22, 23; Suppl. Wania Decl. at ¶ 7). [5]

Although the Renfrew declaration does not purport to address the fees for legal services incurred after the October 12, 2012 entry of judgment, it nevertheless does still support those further fees since (1) the same law firm (Kilpatrick Townsend) whose lawyers Mr. Renfrew found to be of the highest quality, provided those further legal services, (2) those further legal services were provided by the same individual lawyers who provided legal services prior to the judgment, (3) the hourly rates of those lawyers, while slightly higher than their rates prior to the judgment, were not materially changed and, as is well known, higher rates over time reflect professional growth and gradually increasing rates in the local market, and (4) the aggregate dollar value asserted for of those legal services (measured at standard hourly rates) was determined in the same fashion as before, i.e. by multiplying the hours spent by the hourly rates.

Moreover, Sidense has provided further evidence, beyond the Renfrew Declaration, to support the reasonableness of the value asserted for all legal services asserted in this renewed motion herein. For example, all invoices were reviewed by lead counsel for reasonableness prior being sent to Sidense. *See* Cook Decl. at ¶13 (ensuring, among other things, "that the time charged accurately reflected the work performed and I was in charge of handing out work assignments, and reviewed invoices to assure that the work was performed by persons at the appropriate level …"). Further, Kilopass does not dispute that the rates charged by Kilpatrick Townsend attorneys are reasonable in light of the prevailing rates in San Francisco. *See* Opening Brief at 8–10; *see also* Cook Decl., Ex. L. Additionally, the gross legal fees incurred by Kilpatrick Townsend (at those undisputed reasonable rates) in defense of *three* patent infringement counts and *four* business tort counts (through summary judgment, on the eve of trial) was almost

[5] Kilpatrick Townsend rescinded charges for time spent by a partner targeted to serve as the second partner in charge of the case, but whose other time commitments did not permit him to do so. Supplemental Cook Declaration, Dkt. 431-4 at ¶18. Similarly, between October 12, 2012 and December 27, 2012, Sidense and Kilpatrick Townsend reached a resolved agreement as to the specific fees and costs billed, payments made, adjustments, and amounts owed but not yet paid, in order to reach agreement as to what further payments would be required. *Id*. at ¶¶ 22, 23.

exactly the originally quoted budget for initial *single*-patent count action (budgeted through trial). *See* Cook Decl. at ¶¶ 34–37.

Kilopass contends that Sidense's alleged bad conduct should be considered in determining the amount of fees because the issue is "inextricably intertwined" with the determination of whether a case is "exceptional." (Opp. at 13). Kilopass, however, cites no authority in support of this contention. In fact, the Court previously analyzed whether the Court should award fees separately from its exceptionality determination. *See* Dkt. 427 at 24–25. In any event, Kilopass has failed to prove that Sidense advanced arguments in bad faith or committed litigation misconduct. As *Stragent* itself notes, "the fact that Stragent made losing arguments … is not a ground for finding a case exceptional." *Stragent*, No. 6:11-cv-421, ECF No. 364 at 9 (N.D. Cal.). Following Kilopass' "inextricably intertwined" logic, the mere fact that Sidense made losing arguments or lost motions similarly is not a ground finding Sidense's fees unreasonable. *See id*.

In addition, any consideration of reducing the award should take into account Sidense's own substantial deductions from that valuation, which Kilopass has accepted without question, and which could be argued as overly generous. For example, Sidense voluntarily deducted for time spent by other partners, even though those other partners would not have spent that much time if Kilopass had not sued Sidense for patent infringement.

Similarly, Sidense voluntarily deducted for time spent dealing with Kilopass' marketplace campaign in which Kilopass publicized the patent infringement lawsuit and made false and misleading representations to customers and potential customers. Sidense made this deduction on the theory that this time was spent dealing with Kilopass' conduct which later became the subject of Sidense's later-filed business torts lawsuit. However, Sidense would have incurred fees for these legal services even if it had not later sued Kilopass for business torts. Moreover, these fees were incurred combating Kilopass' publicity of the patent infringement lawsuit as part of its patent infringement litigation plan. Consequently, because these fees were a necessary and foreseeable expense incurred by Sidense to defend against Kilopass' patent infringement claims, they could easily have been asserted as part of Sidense's §285 attorneys' fee

award.

By the same token, Sidense voluntarily deducted as the approximate value of legal services rendered to Sidense's customers who received Kilopass' subpoenas seeking evidence Kilopass allegedly needed for proof of its patent infringement claim. Kilopass asserts that it needed this discovery to prove its claim for induced infringement. Consequently, because Sidense was contractually and/or morally obligated to recompense its customers for their legal expenses incurred in responding to Kilopass' attempts to prove induced infringement, the value of these legal services rendered to Kilopass was a necessary and foreseeable expense which Sidense incurred in responding Kilopass' patent infringement claims.

Moreover, while Sidense has quantified its self-reported deductions, Kilopass has asked for further deductions based upon other alleged flaws in Sidense's fees request based upon alleged attorneys' fees that Kilopass incurred only as a result of Sidense's alleged misconduct during the lawsuit. Despite the fact that all evidence of these alleged wrongfully incurred attorneys' fees is solely within Kilopass' custody, Kilopass has made no effort to provide evidence summarizing and quantifying those fees (as would be required under Local Rule 54-5), let alone provide invoices supporting those fees as Kilopass claims Sidense should have done to support its own fees allegations.

**4. The Award Should Not Be Limited to Fees Starting May 1, 2012**

Kilopass argues that the Court should exercise its discretion to award fees only for work "directly and reasonably flowing from the conduct that forms the basis for the Court's decision to find a case exceptional," i.e. work after May 1, 2012 to secure and defend summary judgment, excluding time expended on preparation for trial – May 1 being the date on which the Court issued its disavowal ruling. Opp. at 13:21-18:10. Kilopass's authority for this proposition is *Gametek v. Zynga*, 2014 WL 4351414 *2 (N.D. Cal. Sept. 2, 2014). However, in *Gametek*, the court addressed *whether* to award fees, not the *amount* of fees to be awarded after a court has decided to award fees whereas, in the present case, the Court has already decided that fees *should* be awarded.

Moreover, Kilopass fails to acknowledge that the Court's bases for deciding to award fees individually and collectively span the entirety of the lawsuit. For example, Kilopass asserted its baseless claims of literal infringement and infringement by equivalents from the get-go and although it abandoned its claims for literal infringement after summary judgment, it persisted in its assertion of infringement by equivalence even on appeal – despite the fact that it had no basis for that assertion – having abandoned and repudiated its initial "channel stop" theory of equivalence via the Neikirk expert report and deposition, and then having failed to assert a legally cognizable alternate theory in its place. Consequently, because Kilopass never asserted a non-baseless theory of infringement at any time during the lawsuit, the Court did not limit its decision to award fees to a specific portion of the lawsuit, and there is no basis for Kilopass to argue otherwise here.

**B.     Other Considerations Do Not Support Limiting The Award**

**1.     Kilopass'                              Should Not Prevent the Court from Awarding Sidense Its Attorney Fees**



[6] The correct name



Case3:10-cv-02066-SI Document441 Filed09/19/14 Page19 of 19

**III. CONCLUSION**

Sidense exercised prudent business judgment when it entered the merits-based agreement,

Because the goal of § 285 is one of full compensation for reasonable attorney fees incurred opposing the exceptional case, the Court should grant the fee request in full.

DATED: September 19, 2014

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Roger L. Cook*
ROGER L. COOK

Attorneys for Defendant
SIDENSE CORP.

62750908 v1

66575019V.1

SIDENSE'S REPLY FEE CALCULATION MEMORANDUM
CASE NO. C10-02066 SI

- 15 -