UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KILOPASS TECHNOLOGY, INC.,

Plaintiff,

v.

SIDENSE CORPORATION,

Defendant.

Case No.  10-cv-02066-SI

**ORDER RE: ATTORNEYS' FEES CALCULATION**

Currently pending before the Court is Sidense's supplemental motion regarding attorneys' fees calculation. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court rules as follows.

## BACKGROUND

The Court has provided a detailed factual background of this case in its order from August 12, 2014. Docket No. 427. Therefore, the Court limits its background discussion to the procedural history and a description of the contingency fee agreements at issue.

### I.    Procedural History

On May 14, 2010, Kilopass filed the present action against Sidense asserting infringement of the '751 patent.[1]  Docket No. 1.  On June 18, 2010, Kilopass filed a first amended complaint

---

[1] In 2011, Kilopass sent letters and emails to several Sidense customers informing them of the lawsuit and requesting that they obtain a license to Kilopass's patents.  Docket No. 417-18,

adding allegations of infringement of the '757 and '540 patents.  Docket No. 6.  On October 14, 2010, Kilopass filed a second amended complaint.  Docket No. 38.  On December 13, 2010, the Court granted in part and denied in part Sidense's motion to dismiss the second amended complaint, leaving six causes of action in the case: three patent infringement claims asserting infringement of the '751, '757, and '540 patents, one false advertisement and disparagement claim, one intentional interference with prospective economic relations claim, and one unfair competition claim.  Docket No. 50; *see also* Docket No. 234 (Third Amended Complaint).

In its infringement contentions, Kilopass accused Sidense of infringing claims 1, 3, 5, 6, 9, 12, and 14 of the '751 patent, claims 1, 2, 5, 7, 8, 13, and 14 of the '757 patent, and claims 1, 3, 5, and 6 of the '540 patent.  Docket No. 420, Durie Decl. Ex. 12 at A6308.  Kilopass's infringement contentions included allegations of both literal infringement and infringement under the doctrine of equivalents.  *Id.* at A6307.  With respect to the "column bitlines and row wordlines" claim limitation, the contentions asserted that the accused products merely "switch[] the terms 'wordlines' and 'bitlines' to create an artificial distinction.  Columns and rows are a matter of perspective only."  *Id.* at A6311.  With respect to the "first and second doped semiconductor region" claim limitation, the contentions asserted the "channel stop" theory of infringement that was contained in Morrison & Foerster's preliminary analysis.  Kilopass asserted that "the STI [Shallow Trench Isolation] is the equivalent of the first doped region.  The function of the first doped region is to provide a channel stop.  The way it functions is to prevent current from the channel to flow in the area of the STI.  The result is that the end of the channel is defined.  Sidense's STI performs substantially the same function, functions in substantially the same way, and achieves the [*sic*] substantially the same result."  *Id.* at A6313.  Kilopass also asserted that the first doped semiconductor region limitation was literally present in the accused device because the device's STI "is literally a first doped region forming the channel stop."  *Id.*

The Court held a claim construction hearing on August 1 and 2, 2011.  Kilopass originally argued at the claim construction stage that wordlines and bitlines are interchangeable terms.  *See*

Tadlock Decl. Ex. 14.

United States District Court
Northern District of California

Docket No. 113 at 6 ("[O]ne of ordinary skill in the art would understand that the current flows can be detected in both the bitline and the wordline, again showing the interchangeability of the two, and with the naming of 'bitline' or 'wordline' being simply a matter of perspective."). As interchangeable terms, Kilopass proposed they be defined identically as "a line that connects to one terminal of each memory cell in a memory array." *Id.* at 5, 6.

On August 31, 2011, the Court issued a claim construction order construing disputed terms from the '751, '757, and '540 patents. Docket No. 147. The Court did not adopt Kilopass's proposed construction for the terms "bitline" and "wordline," but largely found in its favor. The Court noted that wordlines and bitlines always appeared orthogonal to one another in a memory array, and thus the Court declined to "define two different terms to mean precisely the same thing when they are not identical." *Id.* at 9. However, the Court limited the differences between bitlines and wordlines to their positions in relation to one another: the Court defined the term "bitline/column bitline" as "a line orthogonal to the row wordline that connects to a terminal of each memory cell in a memory array," and the term "wordline/row wordline" as "a line orthogonal to the column bitline that connects to a terminal of each memory cell in a memory array." *Id.*

Concurrent with this litigation, on December 7, 2010, Sidense filed with the United States Patent & Trademark Office ("PTO") requests for *inter partes* reexamination of Kilopass's patents-in-suit. Sidense argued to the PTO that Kilopass's '751 patent was anticipated by an earlier patent, Tanaka et al. (U.S. Patent No. 5,331,181) ("Tanaka"). In Tanaka, unlike Kilopass's '751 patent but like Sidense's memory cell, the doped semiconductor region is connected to a bitline. The patent examiner in the PTO proceeding issued an Action Closing Prosecution and ruled that Kilopass overcame Tanaka because "it is well known to one of ordinary skill in the art at the time of the invention that the bitlines and wordlines have a distinct functional effect on the operation of memory devices and thus are not interchangeable." *See* Docket No. 207-5, Khaliq Decl., Ex. 4 at 6 (Feb. 18, 2011 USPTO Office Action). After Sidense appealed that decision to the PTO's Board of Patent Appeals and Interferences (the "BPAI"), Kilopass filed a brief explicitly agreeing with the Patent Examiner's finding:

> With respect to claims 5 and 11, the Patent Owner agrees with the Examiner that Tanaka does not show a gate formed from a column bit line. As can been seen [*sic*] in Figure 2(b) of Tanaka, the gates of the transistors are coupled to row wordlines. Therefore claims 5 and 11 are not anticipated by Tanaka.

Docket No. 192-3, Hutchins Decl. Ex. 7 at 8 (Kilopass's Jan. 6, 2012 BPAI Brief).

The position Kilopass took before the BPAI was clearly irreconcilable with its "interchangeability" position that it took before this Court. In a May 1, 2012 Order, the Court found that by taking the contrary position it did before the BPAI, Kilopass clearly and unmistakably disavowed claim scope where the gates of the transistors are connected to row wordlines.[2] *See* Docket No. 224 at 8-11 (citing *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008) (noting that a patentee can disavow claim scope "by clearly characterizing the invention in a way to try to overcome rejections based on prior art"); *Spectrum Intern., Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers.")). On May 15, 2012, Kilopass filed a motion for leave to file a motion for reconsideration of the Court's order finding disavowal of claim scope. Docket No. 228. Kilopass sought reconsideration based on a supplemental statement it filed with the PTO on May 2, 2012 stating that it made an error in its statement agreeing with the PTO Examiner and that the terms bitline and wordline are interchangeable. *Id.* at 5-11. On May 24, 2012, the Court denied Kilopass's motion for leave to file a motion for reconsideration. Docket No. 235. In denying the motion, the Court stated:

> The Court finds that [Local Rule 7-9(b)(2)] does not apply where the "new material fact" is merely a party's attempt to undo a strategic position for which it has been penalized. It was in Kilopass's interest to argue that wordlines are different from bitlines in its BPAI brief; however, after that position damaged its case in this Court, Kilopass sought to reverse its position before the BPAI. Moreover, Kilopass vigorously opposed Sidense's motion for estoppel and claim disavowal that

---

[2] In its briefing on this issue, Kilopass argued that its position at the PTO was fully consistent with its earlier position during claim construction and that its "positions have been grossly and purposefully mischaracterized." Docket No. 207 at 6-8.

United States District Court
Northern District of California

> brought Kilopass's incongruous position to the attention of the Court. Nowhere in its opposition did Kilopass suggest that it made a mistake in the BPAI brief. *See* Kilopass's Opp. to Sidense's Mot. for Recon., Dkt. 207. Instead, Kilopass argued that its "position at the PTO was fully consistent with its earlier position" and that it "did not persuade the Court to adopt a claim construction position that would create a risk of inconsistent judicial rulings." *Id.* at 6-9. Only after the Court found that Kilopass adopted inconsistent positions and disavowed claim scope, did Kilopass re-characterize its BPAI position as error and file a submission with the USPTO to "correct an error made without deceptive intent." *See* dkt. 228-7. This type of gamesmanship is not the purpose for which Civil Local Rule 7-9 allows for reconsideration.

*Id.* at 5-6.

On August 16, 2012, the Court granted Sidense's motion for summary judgment of non-infringement of the patents-in-suit. Docket No. 272. In the order, the Court found that there was no genuine issue of material fact that Sidense's technology does not satisfy (1) the "row wordlines" connected to the "second doped semiconductor region" claim limitation; (2) the "first doped semiconductor region" claim limitation; and (3) the "spaced apart relationship" claim limitation. *See id.* at 7-17. With respect to the "row wordlines" connected to the "second doped semiconductor region" claim limitation, the Court noted that it was undisputed that Sidense's technology has a row wordline connected to the gate and a column bitline connected to the second doped semiconductor region, the opposite configuration of the patents-in-suit. *Id.* at 7-8. Moreover, Kilopass had disavowed claim scope for transistors with gates connected to wordlines. *Id.* at 10. In addition, the Court rejected Kilopass's attempt to introduce a new theory of infringement, defining the term bitlines as simply lines that provide higher voltage. *Id.* at 10-11. With respect to the "first doped semiconductor region" claim limitation, the Court noted that the parties agreed that Sidense's memory cell has only one doped "semiconductor region," the "second doped semiconductor region." *Id.* at 11. "The parties also agree that Sidense does not have a 'first doped semiconductor region' and thus this limitation is not literally infringed." *Id.* The Court then rejected Kilopass's argument that the STI contained in Sidense's memory cells is the equivalent of a first doped semiconductor region. First, the Court noted that Kilopass had impermissibly "amended its infringement contentions with respect to the doctrine of equivalents

far past the applicable deadlines without Court approval."[3]   *Id.* at 12.   In its April 4, 2011 infringement contentions, Kilopass asserted the "channel stop" theory of equivalency, arguing that the function of the first doped region is to provide a channel stop and that it does this by preventing current from the channel to flow in the area of the STI.   *Id.*   But, on April 13, 2012, Kilopass filed its expert report on infringement by Dr. Neikirk, asserting a different equivalency theory.   In the report Dr. Neikirk asserted:

> [T]he function of the first and second regions is clearly stated: *to geometrically delineate or define a channel region between them*. . . . The way in which each region functions to geometrically delineate or define a channel region is by being separated from each other in a cross section of the device, by being in the substrate, and by being adjacent to the gate. . . . The result produced by the two regions required by this claim limitation is to create or delineate a defined region of the device that is a channel region.

Docket No. 420-1, Durie Decl. Ex. 13 at A6070, ¶¶ 62-64.

"This equivalence theory focuses on the geometry of the cell, rather than the electrical properties of the 'channel stop.'"   Docket No. 272 at 13.   Because Kilopass had failed to properly amend its infringement contentions to include this new theory of equivalency, summary judgment of this limitation was appropriate.   *Id.*   In addition, the Court rejected Kilopass's new equivalency theory on the merits.   The Court found that Kilopass had provided no evidence showing that insulators are the equivalent of semiconductors.   *Id.* at 14 ("The uncontroverted evidence demonstrates that there is a non-trivial difference between insulators and semiconductors.").   The Court also noted that the patents-in-suit's use of a first doped semiconductor rather than an STI, renders the memory cells smaller.   *Id.*   This represented a non-insubstantial difference between the patents-in-suit and the accused technology, and it also meant that the accused technology did not achieve the same results as the patents-in-suit.   *Id.* at 14-15.

On October 2, 2012, the Court granted Kilopass's motion to dismiss its remaining claims

---

[3] The Court noted that: "Kilopass's assertion of a new theory of equivalence is particularly inappropriate in light of evidence that Kilopass has known for many years that Sidense does not literally infringe its patents."   Docket No. 272 at 13 n.8.

United States District Court
Northern District of California

for false advertising, intentional interference with prospective economic relations, and unfair competition with prejudice, and the Court entered judgment in the action. Docket Nos. 327, 328. Kilopass appealed the Court's order granting Sidense's motion for summary judgment of non-infringement. Docket No. 330. On April 10, 2013, the Federal Circuit summarily affirmed the Court's order granting Sidense's motion for summary judgment. *Kilopass Tech., Inc. v. Sidense Corp.*, 501 Fed. Appx. 980 (Fed. Cir. 2013).

While that appeal was pending, the parties filed cross-motions for attorney's fees. Kilopass moved for sanctions and attorney's fees under 28 U.S.C. § 1927. Docket No. 337. Sidense moved for attorney's fees under 35 U.S.C. § 285 of the Patent Act and 15 U.S.C. § 1117(a) of the Lanham Act. Docket No. 339. On December 18, 2012, the Court denied the parties' motions for attorney's fees. Docket No. 370. With respect to Sidense's request for attorney's fees under 35 U.S.C. § 285, the Court held that "Sidense ha[d] not met its burden of establishing with 'clear and convincing evidence' that Kilopass brought or maintained the prosecution of its patent infringement in bad faith." *Id.* at 5 (citing *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 916 (Fed. Cir. 2012) ("Absent litigation misconduct or misconduct in securing the patent, a district court can award attorney fees under § 285 only if the litigation is both: (1) brought in subjective bad faith; and (2) objectively baseless.")).

Sidense appealed the Court's denial of attorney's fees under 35 U.S.C. § 285. Docket No. 372. On December 26, 2013, the Federal Circuit vacated the Court's order denying Sidense's motion for attorney's fees. *Kilopass*, 738 F.3d at 1317-18. In the order, the Federal Circuit explained that a determination of whether the patentee acted in subjective bad faith must take into account the totality of the circumstances and does not require a showing that the patentee had actual knowledge that its claims are baseless. *See id.* at 1309-12. The Federal Circuit also explained that "[o]bjective baselessness alone can create a sufficient inference of bad faith to establish exceptionality under § 285, unless the circumstances as a whole show a lack of recklessness on the patentee's part." *Id.* at 1314. Accordingly, the Federal Circuit remanded the action for this Court to consider "whether Kilopass's doctrine of equivalents theory was objectively baseless, and then, whether the totality of the circumstances demonstrates that

Kilopass acted with subjective bad faith.   If the district court determines that the case is exceptional after applying the correct legal standards, it should then determine, in its discretion, whether to award attorneys' fees under § 285."  *Id.* at 1317.

After the case was remanded, on April 29, 2014, the Supreme Court issued its decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), setting forth the standard for determining whether a case is "exceptional" under 35 U.S.C. § 285.  By the present motion, Sidense renews its motion for attorney's fees pursuant to 35 U.S.C. § 285.  Docket No. 417.

On August 12, 2015, the Court deemed the case "exceptional," and found that an award of attorneys' fees was warranted. Docket No. 427. In holding as such, the Court found that "the present action is 'one that stands out from others' with respect to both the substantive strength of Kilopass's litigating position and the unreasonable manner in which the case was litigated." *Id.* at 14. The Court characterized Kilopass' claims of literal infringement as "objectively baseless" and "exceptionally meritless." *Id.* at 16, 23.

Now before the Court are the parties' briefs concerning the appropriate amount of attorneys' fees to be awarded.

## II.   Description of Contingency Agreements

Sidense originally agreed to a traditional fee arrangement, whereby it agreed to pay Kilpatrick Townsend & Stockton's ("KTS") hourly rates, less a 10% discount for prompt payment. Docket No. 435-2, Def. Mot. at 1. At the outset, the projected budget for the litigation was set at $5.44 million. *Id.* On June 18, 2010, Kilopass amended its complaint to assert infringement of two additional patents, and alleged four additional business tort claims, Docket No. 6, and Sidense filed petitions to reexamine all three patents. Docket No. 76. As the scope of the litigation expanded, Sidense sustained financial hardship as a result of the negative publicity. Docket No. 448-1, Wania Decl. ¶ 3. In response, Sidense decided to seek out additional investments from venture capital firms, and renegotiated its fee agreement with KTS.  Def. Mot. at 1.

The Contingent Fee Agreement ("CFA") called for Sidense to pay 50% of KTS's hours

billed on a monthly basis. *Id.* at 2; Docket 448-3, Cook Decl. Exh. A. The remaining 50% would be left unpaid until the end of the case, "at which time it would be tied to a performance-based multiplier that would vary according to the degree of counsel's success or failure in the district court." Def. Mot. at 2. The multipliers ranged from zero, for the least desirable outcome, to a multiplier of 2.5 for the most desirable outcome. *Id.* at 2-3. The Court's grant of summary judgment on non-infringement and dismissal of the remaining claims in Sidense's favor, Docket. No. 328, triggered the 2.5x multiplier under the CFA, effectively requiring Sidense to pay 175% of KTS's standard rates. Def. Mot. at 3.

Sidense and KTS then entered into a Supplemental Contingent Fee Agreement ("Supplemental CFA") to govern the ensuing appeal. The agreement provided that:

> "(1) Kilpatrick Townsend would receive a sum equal to its legal services hours multiplied by its standard hourly rates "off the top" of any §285 proceeds received from Kilopass, plus 40% of any remainder; and (2) Sidense would pay Kilpatrick Townsend up to $200,000 for legal fees invoiced by Kilpatrick Townsend for legal services performed in connection with Sidense's appeal of the district court's denial of Sidense's §285 attorneys' fee award and any proceedings on remand, which would be credited as advance payment on Sidense's "success fee" obligation stemming from Kilpatrick Townsend's "complete success" in the underlying lawsuit."

Mot. At 3; *see also* Cook Decl. Exh. B.

## LEGAL STANDARD

The award of attorney fees under § 285 must be reasonable. The Supreme Court has said that "[t]he 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. [It has] established a 'strong presumption' that the lodestar represents the 'reasonable' fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). Ascertaining what constitutes a "reasonable" fee requires determining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis

on which to make an initial estimate of the value of a lawyer's services." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). Supreme Court "case law construing what is a 'reasonable' fee applies uniformly to all" federal fee shifting statutes that permit the award of reasonable fees. *Dague*, 505 U.S. at 562.

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), *amended on other grounds by* 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11); *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008) ("to determine an award of attorneys' fees, a court in general should use the forum rate in the lodestar calculation.").

In determining a reasonable amount of time spent, the Court should only award fees based on "the number of hours reasonably expended on the litigation" and exclude "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). "There is no precise rule or formula for making these determinations." *Id.* at 436. "The court necessarily has discretion in making this equitable judgment." *Id.* at 437.

Federal Circuit precedent controls the calculation of attorney's fees in patent cases. *Bywaters v. United States*, 670 F.3d 1221, 1227-28 (Fed. Cir. 2012) ("we have consistently applied our law to claims for attorneys' fees under section 285 of the Patent Act because section 285 relates to an area of substantive law within our exclusive jurisdiction."). However, district courts have "'considerable discretion' in determining the amount of reasonable attorney fees under § 285." *Homeland Housewares, LLC v. Hastie2Market, LLC*, 2013-1537, 2014 WL 4400184 (Fed. Cir. Sept. 8, 2014) (internal citations omitted)

**DISCUSSION**

## I.    Partial Fee Awards

Kilopass argues that Sidense should not be awarded full attorneys' fees because Congress did not design § 285 as a mechanism to fully compensate a prevailing party in all aspects of the

litigation. Docket No. 447, Pl. Opp'n at 4. Kilopass further argues that, at most, the Court should award "fees only for work directly and reasonably flowing from the conduct that formed the basis for the Court's decision to find the case exceptional." *Id.* at 13.

In 1946, Congress amended the Patent Act to add an attorneys' fee provision. Act of August 1, 1946, § 1, 60 Stat. 778, 35 U.S.C. § 70 (1946 ed.). Codified today as 35 U.S.C. § 285, it provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." As the statutory language suggests, the award of attorneys' fees is discretionary, and a district court may decide not to award fees even in an exceptional case. *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990) ("The decision whether or not to award fees is still committed to the discretion of the trial judge, and 'even an exceptional case does not require in all circumstances the award of attorney fees.'"). Congress' policy objective in enacting § 285 was two-fold: (1) to provide a deterrent to frivolous or unnecessary patent litigation, and (2) to serve a compensatory purpose for parties injured by such litigation. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1372-73 (Fed. Cir. 2012) (internal citations omitted) ("Section 285 was enacted to address a patent-specific policy rationale, awarding fees in exceptional cases in which sanctions were necessary to deter the improper bringing of clearly unwarranted suits. The purpose of the statute has been described by this court as compensation to the prevailing party for its monetary outlays in the prosecution or defense of the suit."); *Mathis v. Spears*, 857 F.2d 749, 758 (Fed. Cir. 1988) (internal quotations omitted) ("Congress authorized awards of attorney fees to prevailing defendants to enable the court to prevent a *gross injustice* to an alleged infringer.") (emphasis in original).

While awarding attorneys' fees under § 285 is limited to "exceptional cases," there is nothing in the legislative history or applicable case law to suggest that — once a determination that a case is "exceptional" has been made — courts should balk at awarding full fees. To the contrary, §285 is a means to "*make whole* a party injured by an egregious abuse of the judicial process." *Mathis*, 857 F.2d at 758 (emphasis added); *see also Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983), *citing Codex Corp. v. Milgo Elec. Corp.*, 541 F. Supp. 1198, 1201 (D. Mass. 1982) ("The compensatory purpose of § 285 is best served if the prevailing

party is allowed to recover his reasonable expenses in prosecuting the entire action.").

However, the Federal Circuit has identified certain circumstances in which full fees may not be warranted: (1) when litigation misconduct is the sole basis for deeming a case "exceptional," and (2) cases where the injured party only partially prevails on the patent claims at issue.[1] *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553-54 (Fed. Cir. 1989) ("Since any injustice present in this case is based upon LKB's bad faith and misconduct during litigation, the penalty imposed must in some way be related to bad faith and misconduct… [T]he amount of fees awarded to the 'prevailing party' should bear some relation to the extent to which that party actually prevailed."); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 831 (Fed. Cir. 1992) ("when attorney fees under 35 U.S.C. § 285 are awarded solely on the basis of litigation misconduct, the amount of the award must bear some relation to the extent of the misconduct.").

Neither of these circumstances applies to this case. While Kilopass was found to have engaged in litigation misconduct, that was not the sole basis for deeming the case exceptional. Sidense ultimately prevailed on every claim asserted by Kilopass, which the Court characterized as "exceptionally meritless" and "objectively baseless." Docket No. 427 at 23. Sidense should be compensated for all patent-related litigation expenses it would not have had to undertake, but for Kilopass' misconduct. As the defendant in this case, Sidense would not have incurred any legal costs were it not for Kilopass' claims of infringement**.** Sidense is therefore entitled to all reasonable attorneys' fees arising out of the patent-related litigation. This holding fulfills § 285's dual goal of deterrence and restitution.

Finally, the Court finds unpersuasive Kilopass' suggestion that the Court should award "fees only for work directly and reasonably flowing from the conduct that formed the basis for the

---

[1] Kilopass cites *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1390 (Fed. Cir. 2008) for the proposition that "the award of the total amount of a fee request is unusual." Pl. Opp'n at 4. This snippet overlooks the *Takeda* court's full statement: "[a]lthough the award of the total amount of a fee request is unusual, we have stated that such an award may be imposed and affirmed." *Id.* Additionally, in making this assertion the *Tadeka* court cites to *Beckman*, which provides for partial fee awards only in the two limited circumstances mentioned above.  In fact, the *Takeda* opinion affirmed the district court's award of $16,800,000, including full fees sought plus expert fees assessed as a sanction.

Court's decision to find the case exceptional." Pl. Opp'n at 13. The Federal Circuit has recently rejected this precise argument:

> Sorensen argues that the district court's fee calculation was not sufficiently rooted in the conduct that the court found exceptional. The district court, Sorensen contends, should have limited the award to the costs that Homeland incurred in responding to specific acts of litigation misconduct. We decline, however, to require such granularity from the district court, particularly because it is the 'totality of the circumstances,' and not just discrete acts of litigation conduct, that justify the court's award of fees.

*Homeland Housewares, LLC v. Hastie2Market, LLC*, 2013-1537, 2014 WL 4400184 (Fed. Cir. Sept. 8, 2014).

Therefore this Court need not parse through Kilopass' actions to determine the cost associated with every discrete instance of "exceptional" conduct. Furthermore, this Court has already noted the striking dearth of merit to Kilopass' claims for both literal infringement and infringement under the doctrine of equivalents; thus, such a detailed analysis might not produce a drastically different result in this case.

## II.    The Contingency Agreement

The parties disagree over whether the terms of the CFA may be taken into account for purposes of calculating the lodestar. Kilopass argues that contingency agreements may not be considered when calculating the lodestar, and that Sidense's suggestion to the contrary is nothing more "than a transparent attempt to inflate the upper-end of its fee range in the hope that it will make $5M appear like a reasonable compromise." Pl. Opp'n at 9. Conversely, Sidense argues that since "the goal of lodestar is to determine 'the reasonable hourly rate,' that is, 'the rate a paying client would be willing to pay,' *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, it would be error to ignore the agreement that embodies the precise concept. 2014 WL 1514235, *13 (E.D.N.Y. Apr. 16, 2014)." Def. Mot. at 5.

The attorney-client fee arrangement can often provide valuable indication of the prevailing

reasonable rate in the community. *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) ("The presence of a pre-existing fee agreement may aid in determining reasonableness."). The Federal Circuit has held that a contingency fee agreement which required the client to pay the greater of the attorneys' hourly rate or one-third of any damages recovered "may be taken into account in the lodestar calculation." *Bywaters* 670 F.3d at 1231.   Indeed, "negotiation and payment of fees by sophisticated clients are solid evidence of their reasonableness in the market." *Prospect Energy Corp. v. Dallas Gas Partners, LP*, CIV.A. H-10-1396, 2011 WL 5864292 (S.D. Tex. Nov. 22, 2011) *aff'd sub nom. Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 733 F.3d 148 (5th Cir. 2013), *citing Bleecker Charles Co. v. 350 Bleecker St. Apartment Corp.*, 212 F. Supp. 2d 226, 230 (S.D.N.Y. 2002); *see also Blum v. Stenson*, 465 U.S. 886, 896, nt. 11(1984) ("the critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate. And the rates charged in private representations may afford relevant comparisons.")

Kilopass relies heavily on *City of Burlington v. Dague*, 505 U.S. 557 (1992) to argue that the Court may not take the CFA into account for purposes of calculating the lodestar.[2] Pl. Opp'n. at 7. In *Dague*, the Court held that an enhancement *above* the lodestar may not be justified by the risk associated with the contingency nature of the attorney fee agreement. *Id.* at 567. This is an issue markedly different from the one faced by this Court, which is whether a particular hybrid contingency agreement may be used in establishing a "reasonable" rate for purposes of calculating the lodestar. The holding of *Dague* concerns the mischief that arises when factors purportedly justifying enhancements to the lodestar rate are redundant of factors that are already subsumed in the lodestar calculation. *Dague* and other cases forbid this double counting. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) ("We have noted that the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee, and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation.")

---

[2] Kilopass also argues that the CFA is not a fee agreement at all, but is "in effect" a "loan from its lawyers at a usurious 150%," and criticizes Sidense 's failure to "take an equity investment or a more conventional loan at a much lower interest rate.".. Pl. Opp'n at 8. This hindsight argument is unpersuasive, raises far more questions than it answers and, if adopted, would raise the specter of collateral fee litigation as extensive as the underlying patent litigation itself.

United States District Court
Northern District of California

(internal citations omitted). However, *Dague* does not disturb the holdings in *Blanchard*[3] and *Bywaters* which tell us that fee arrangements may be used to determine the lodestar in the first instance.

In sum, while "a contingency agreement cannot be used as a positive or negative multiplier after reasonable fees have been determined . . . [t]he Court may consider a contingency fee agreement when determining [a] reasonable fee to the extent it is representative of the prevailing rate in the relevant community." *Fisher v. City of San Diego*, 12-CV-1268-LAB-NLS, 2013 WL 4401387 at * 1, nt. 1 (S.D. Cal. Aug. 14, 2013) (internal citations omitted). The fact that Sidense and KTS entered into a variable-rate hybrid contingency agreement instead of a more traditional contingency agreement is not a basis for holding that *Blanchard* and *Bywaters* do not apply.[4] The Court may therefore consider the CFA in determining the lodestar.

In so holding, the Court recognizes the risk that, in the future, parties could structure attorneys' fee agreements in anticipation of fee shifting litigation, such that the agreements would no longer be a legitimate reflection of the prevailing rate in the community. However, that is not the case here. First, while it is unclear from the record whether Sidense would have been able to pay its fees under the original agreement, its decision to renegotiate its fee agreement with KTS was in large part motivated by financial strain arising out of the litigation instituted by Kilopass. Wania Decl. ¶ 3; Def. Mot. at 1. Second, the CFA was entered into at a time when the case law governing attorneys' fee shifting under § 285 imposed a significantly higher burden on the party

---

3   While *Blanchard* holds that a private fee agreement may be used as a "factor" in determining reasonableness, it also stresses that a fee agreement "standing alone, is not dispositive" of the reasonable rate, and furthermore, that it may not "impose an automatic ceiling" on the reasonable rate. *Id.* at 93.

4   The Supreme Court has recently distinguished *Dague* and its progeny from cases involving hybrid fee agreements such as the one in this case. *See Perdue*, 559 U.S. at 556-57 ("An attorney who agrees, at the outset of the representation, to a *reduced hourly rate* in exchange for the opportunity to earn a performance bonus is in a position far different from an attorney in a § 1988 case who is compensated at the *full prevailing rate* and then seeks a performance enhancement in addition to the lodestar amount after the litigation has concluded.") (emphasis in original).

requesting fees,[5] therefore making it unlikely that Sidense was confident it would ever recover its fees. Third, Sidense executed two promissory notes in favor of KTS, making it financially liable regardless of whether it could recover fees under § 285. Wania Decl. ¶¶ 8-9; Cook Decl., Exhs. D, E. Fourth, Sidense was represented by independent counsel when negotiating the CFA with KTS, allowing it to exert its bargaining power,[6] while mitigating the risk of a potential conflict of interest. Wania Decl. ¶ 5. These facts persuade the Court that the CFA may be relied upon in determining the "reasonable" rate. The mere fact that Sidense and KTS chose to tether the rate to pre-specified litigation outcomes does not render the CFA inherently unreliable or unrepresentative of the prevailing reasonable rate in this jurisdiction.

### III.    Lodestar Analysis

#### A.    Adequate Documentation

The party seeking fees bears the initial burden of establishing the hours expended litigating the case and must provide detailed time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhardt*, 461 U.S. 424, 434 (1983); *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. The district court may also exclude any hours that are excessive, redundant, or otherwise unnecessary. *Id.* at 434. However, the party seeking fees need not provide comprehensive documentation to prevail. *Id.* at 437 nt. 12 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."); *Hiken v. Dep't of Def.*, No. C 06-02812 JW, 2012 WL 3686747, at *6 (N.D. Cal. Aug. 21, 2012), *quoting Ackerman v. W. Elec. Co.*, 643 F. Supp. 836, 863 (N.D. Cal. 1986) *aff'd*,

---

[5] *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1382 (Fed. Cir. 2005) ("Thus, the underlying improper conduct and the characterization of the case as exceptional must be established by clear and convincing evidence.")

[6] Sidense was able to negotiate the upper multiplier from 3x down to 2.5x. Wania Decl. ¶ 4.

860 F.2d 1514 (9th Cir. 1988) ("the Ninth Circuit requires only that the affidavits be sufficient to enable the court to consider all the factors necessary to determine a reasonable attorney's fee award."); *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1570 (Fed. Cir. 1988) (holding that the trial court abused its discretion in refusing to award fees based on lack of documentation when counsel failed to keep contemporaneous time records, but furnished affidavits and hundreds of pages of corroborative business records). Furthermore, "a district court itself has experience in determining what are reasonable hours and reasonable fees, and should rely on that experience and knowledge if the documentation is considered inadequate." *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1459 (Fed. Cir. 1991) (internal citations omitted). In this district, a party seeking attorney's fees must also comply with Civil Local Rule 54-5(b) which requires, among other things, (1) "a statement of the services rendered by each person for whose services fees are claimed together with a summary of the time spent by each person," (2) "a statement describing the manner in which time records were maintained," and (3) "[a] brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services."

Kilopass argues that Sidense's failure to provide "billing records" "makes it impossible" for the Court to determine what fees are associated with compensable activities, and which fees are reasonable. Pl. Opp'n. at 9. The Court disagrees and finds that Sidense has adequately documented its request for attorneys' fees. In support of its motion, Sidense has provided a detailed declaration from a co-lead attorney, two expert reports, a log of invoice and expense records, an economic report summarizing prevailing rates in the community, and publications evaluating KTS' effectiveness relative to other IP firms. The Court finds these documents – which are discussed in greater detail *infra* – are sufficient to enable the Court to evaluate all relevant factors necessary to determining the lodestar.

### B.     Reasonable Rates

"To inform and assist the court in the exercise of its discretion, the burden is on the fee

United States District Court
Northern District of California

applicant to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896, nt. 11 (1984). In establishing the reasonable hourly rate, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained. *Davis v. Prison Health Servs.*, C09-2629 SI, 2012 WL 4462520 (N.D. Cal. Sept. 25, 2012), *citing Cabrales v. County of Los Angeles,* 864 F.2d 1454, 1464 (9th Cir.1988)**;** *City of Riverside v. Rivera*, 477 U.S. 561, 562 (1986) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee, and the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.").

While Kilopass complains about Sidense's failure to provide all of its billing records, it does not appear to object to the hourly rates charged by its attorneys. Nonetheless, the Court reviews these rates to ensure they are reasonable.

KTS is a well-respected firm in the area of patent litigation. In 2004, The American Lawyer published an article counting KTS among the top fifteen litigation firms the country. Cook Decl. ¶ 10; *see also Id.* Exh. G. (KTS's "entire litigation department would barely fill a conference room at some firms. Yet since 2002 the San Francisco-based firm has racked up more than its share of impressive victories."). In 2012, BTI Consulting Group conducted a survey of corporate general counsels showing KTS was among the top ten firms respondents mentioned when asked which firm they considered to be the best suited to help them in the area of IP litigation. *Id.* ¶ 10; *see also Id.* Exh. H. BTI also conducted a survey of over 300 in-house attorneys, and found KTS to be among the top twenty IP litigation firms in 2014. *Id.* ¶ 10; *see also Id.* Exh. I. In 2014, *U.S. News & World Report* named KTS a first tier firm in the area of IP litigation. *Id.* ¶ 10; *see also Id.* Exh. K. Sidense's expert, Charles Renfrew, stated that "[he is] familiar with the quality of the lawyers representing Sidense in the case. The firm is among the best of the litigation firms in the San Francisco Bay Area." Docket No. 339-1, Renfrew Decl. ¶ 26.

In July of 2013, the American Intellectual Property Law Association (AIPLA) released an

18

economic survey detailing attorneys' fee rates for IP litigators in the United States, stratifying the data by a number of factors including seniority, geographical location, technical specialization, age, gender, and race. Cook Decl., Exh. L. The report shows that the first quartile, median and third-quartile hourly rates for a partner in the San Francisco area are $500, $680, and $825, respectively. *Id.* The report also shows that the first quartile, median and third-quartile hourly rates for an associate in the San Francisco area are $321, $513, and $576, respectively.

The hourly rates of KTS attorneys are as follows[7]: Roger Cook (Sr. Litigation Partner, $750-830), Barmak Sani (Prosecution Partner, $500-565), Robert Tadlock (Sr. Litigation Associate, $390-520), Eric Hutchins (Sr. Litigation Associate, $370-425), Joshua Lee (Jr. Litigation Associate, $275-345), Sara Giardina (Jr. Litigation Associate, $285-350), Kevin O'Brien (Jr. Litigation Associate, $315-325). *See* Cook Decl. The Court has reviewed the relevant biographical information for each of these individuals, which includes, among other things, their years of legal experience, the nature of their responsibilities in this matter, and their professional qualifications and accolades. Cook Decl. ¶¶ 39-44, 50. In all but one case the hourly rates charged are below the median hourly rate for IP attorneys in the San Francisco area. [8] Given the reputation of the firm, the qualifications and responsibilities of these particular attorneys, the complexity of this case, the outstanding results obtained, and based upon Sidense's expert declaration,[9] Renfrew Decl. ¶ 27, the Court finds these hourly rates to be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v.* 465 U.S. at 896, nt. 11.

Sidense also requests to be compensated for the work of one "Other Associate" at an

---

[7] Each attorney's hourly rate increased over the course of this multi-year litigation. For simplicity, the Court provides a range of the highest and lowest rate charged.

[8] Between January and August of 2014, Roger Cook billed an amount $5 higher than the third quartile hourly rate; however, given that Sidense typically received a 10% discount for early payment, this rate would be below the third-quartile rate on a post-discount basis.

[9] This expert declaration was signed on October 2, 2012 and attached to a previous motion for attorneys' fees. The Court therefore only relies on it to the extent its assertions remain applicable to the present motion.

hourly rate of $260, and one "Other Partner" at a rate of $590. Cook Decl. ¶¶ 16, 31. The Court is unable to assess the qualifications or responsibilities of these individuals. The Court hereby reduces Other Associate's hourly rate to $200; and reduces Other Partner's rate is reduced to $500, the lowest rate billed by any partner.

Sidense also seeks fees for the work done by various paralegals and one patent agent, with hourly rates ranging from $160 to $270. It has provided qualifications and responsibilities for some, but not others. The Court finds the rates reasonable for the patent agent and paralegals for whom Sidense has provided qualifications and responsibilities.[10] *Elder v. National Conference of Bar Examiners* 2011 WL 4079623 (N.D.Cal.), at * 4, nt. 4 (finding $245/hr. to be a reasonable rate for paralegals in 2011). However, for paralegals for whom it has failed to provide any description of their qualifications or responsibilities, the Court reduces their hourly rate to $185, the lowest rate billed by any paralegal.

Sidense also requests fees for various "library staff" and "litigation support persons," but fails to name any of these individuals or provide a list of their responsibilities or qualifications. Without this information the Court cannot determine whether their work is compensable or simply overhead, and therefore declines to award fees for the services rendered by these individuals.

Finally, Sidense requests fees associated with its contingency bonus under the CFA. However, Sidense has failed to provide evidence that the prevailing rates in the community for attorneys of similar ability and expertise are variable in nature, and linked to pre-specified litigation outcomes. In the absence of such evidence, the Court will not award Sidense a fee approximating its "contingency bonus." *See Perdue* 559 U.S. at 556 ("As we have noted, the lodestar was adopted in part because it provides a rough approximation of general billing practices, and accordingly, if hourly billing becomes unusual, an alternative to the lodestar method may have to be found. However, neither respondents nor their *amici* contend that that day has arrived."); *Beckman Instruments, Inc. v. LKB Produkter AB*, 703 F. Supp. 408, 411 (D. Md. 1988)

---

[10] Those individuals are George Korsh (patent agent), Erin McKinney (primary paralegal), Olufunmilayo Dumlao (secondary paralegal), Rhondda Ashby (primary paralegal), and Steven Bassett (primary paralegal). Cook Decl. ¶¶ 45-47, 51-52.

*aff'd in part and vacated in part on other grounds*, 892 F.2d 1547 (Fed. Cir. 1989) ("the Court will not grant the request for $75,178.75 for fees withheld. That represents an amount plaintiff's attorneys agreed to bill only if a favorable outcome were obtained. As such, it represents a bonus rather than standard fees. The Court is of the opinion 'reasonable attorney fees' should reflect standard rates, not agreed upon bonuses.").

## C.   Reasonable Hours

All KTS personnel are required to maintain contemporaneous records showing the amount of time spent on every billable task, as well as descriptions of their work. Cook Decl. ¶ 12. These records form the basis for the various tables provided by KTS which summarize the amount of time spent by its employees in this matter. *Id.* Cook also personally reviewed all invoices before they were sent to Sidense to ensure "time charged accurately reflected work performed," and that employees were performing tasks whose complexity was commensurate with their seniority. *Id.* ¶ 13. Cook was personally responsible for assigning work to KTS personnel in this matter. *Id.*

In various tables throughout the Cook Declaration, Sidense summarizes the rates charged and hours billed of every KTS employee, for each stage of the litigation including: (1) pre-judgment (May 2010 to October 2012), (2) motion for attorneys' fees (October 2012 to December 2012), (3) appeal to the Federal Circuit (October 2012 to April 2013), (4) appeal from denial of attorneys' fees, and (5) renewed motion for attorneys' fees on remand (January 2014 to August 2014). *Id.* ¶¶ 16-31.

Sidense requests compensation for 12,453 "adjusted hours" of services rendered.  *Id.* ¶ 33. The gross hours were adjusted downward by thousands of hours to account for a number of factors. Sidense excluded all hours spent on non-patent related issues (1,588 hours or $498,522.13 in fees) *Id.* at ¶¶ 17, 21. Sidense also removed time billed by partners other than those discussed above to "remove any question that this time might have been duplicative of charges by [Roger Cook]… or Barmak Sani" ($72,000 in fees or approximately 110 hours) *Id.* ¶ 18. All hours billed representing Sidense customers who were served with subpoenas by Kilopass were deducted ($70,000 in fees or approximately 223 hours) *Id.* ¶ 20. All hours billed for "time spent dealing

21

United States District Court
Northern District of California

1   with Kilopass' marketplace campaign of misinformation" and for some Sidense motions that were

2   denied were deducted ($325,000 in fees). *Id.* ¶ 19. Sidense also removed all hours associated with

3   the 10% discount it typically received for prompt payment ($226,958.95 or 630.4 hours). *Id.* ¶¶ 17,

4   24, 28-31.

5        The Court finds that Sidense has made a "a good faith effort to exclude from [its] fee

6   request hours that are excessive, redundant, or otherwise unnecessary." *Hensley* 461 U.S. at 434.

7   The Court also finds that the total number of adjusted hours billed reflects only work performed

8   on the patent litigation in this case. *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem.*

9   *Corp.*, 407 F.2d 288, 297 (9th Cir. 1969) (internal citation omitted) ("The authority to award

10  attorney's fees found in [§ 285] is limited to the patent side of the case. If an action combines

11  patent and nonpatent claims, no award of fees pursuant to section 285 can be allowed for litigating

12  the nonpatent issues."). Upon reviewing the invoices and summary tables, and taking into account

13  the considerable motion practice and discovery necessitated to litigate this case, the Court finds

14  that the 12,453 hours expended were indeed reasonable. Therefore, after making the deductions

15  discussed above (see B. Reasonable Rates, *supra*), the Court awards Sidense attorneys' fees

16  totaling $5,315,315.01. [11]

17       Sidense urges the Court that it is entitled to an enhancement to the lodestar rate to account

18  for the actual costs and fees incurred under the CFA. It is true that once the lodestar has been

19  calculated, courts may adjust it based on twelve factors outlined in *Johnson v. Georgia Highway*

20  *Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). [12] *Bywaters* 670 F.3d at 1229-30.  However,

21  _____

22  [11] According to a 2013 AIPLA survey, the first quartile, median, and third quartile
    litigation fees (inclusive of all costs and expenses) in IP cases in San Francisco with a total amount

23  at stake of over $25 million are $4 million, $5.25 million, and $9.5 million, respectively. Cook
    Decl. Exh. L. Sidense asserts that approximately $60 million was at stake in this case. Def. Mot. at

24  6; Cook Decl. Exh. M. Therefore this award is in line with similar cases in this jurisdiction.

25  [12] These factors are:  (1) the time and labor required to represent the client or clients; (2)
    the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal

26  services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee
    charged for those services in the relevant community; (6) whether the fee is fixed or contingent;

27  (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the
    results obtained; (9) the experience, reputation, and ability of the lawyer; (10) the undesirability of

28  the case; (11) the nature and length of the professional relationship with the client; and (12)
    awards in similar cases.

we are told that such adjustments should take place "in only 'rare' and 'exceptional' cases." *Id.,* *citing Perdue* 559 U.S. at 552. The Court finds that there are no such circumstances present in this case, as the lodestar fully accounts for all factors relevant to determining a reasonable fee.  The fact that Sidense chose -- or was forced to -- to adopt a high-risk-high-return fee arrangement midway through the litigation is not a proper basis to make an enhancement to the lodestar. *See Dague* 505 U.S. at 565 ("An attorney operating on a contingency-fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not. To award a contingency enhancement under a fee-shifting statute would in effect pay for the attorney's time (or anticipated time) in cases where his client does not prevail.").

### D. Costs

Sidense seeks reimbursement for a number of nontaxable costs pursuant to Rule 54. A party seeking to recover costs and expenses need not document its request with "page-by-page precision, [however] a bill of costs must represent a calculation that is reasonably accurate under the circumstances." *Summit Tech., Inc. v. Nidek Co.*, 435 F.3d 1371, 1380 (Fed. Cir. 2006). Sidense has provided totals of each type of cost for which it seeks reimbursement, and has provided a list of itemized invoices for costs incurred. Cook Decl. Exh. F.

The Court awards Sidense the following costs, which the Court deems reasonable[13]: online legal research ($125,131.03), travel and lodging ($15,597.37), e-discovery ($59,778.32), document delivery ($6,796.64), distance telephone charges ($497.91), patent searching services ($10,334.51), court transcripts ($798.11), and subpoena service vendors ($1,696.54).  Cook Decl. ¶¶ 58, 62, *see also Id.* Exh. F.

In the absence of fraud or abuse, a court may not award expert fees above the 28 U.S.C § 1821 statutory cap. *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378-79 (Fed. Cir. 1994). Therefore, the Court declines to award Sidense its requested expert fees of

---

[13] KTS did not bill Sidense for various "internal expenses," such as the cost of in-house photocopies, and therefore does not request such costs. Cook Decl. ¶ 60.

$434,853.56. Cook Decl. ¶ 55. The Court also declines to award Sidense $8,216.04 in foreign translation service costs, as it is unclear how such costs were necessary to the litigation of this matter. *Id.* ¶ 58.

### E. Other Considerations

Kilopass, which instituted this action with an eye toward "tak[ing] Sidense out," Docket No. 417-6 Tadlock Decl. Exh. 3., now argues, without even a wisp of irony, that the risk of bankruptcy entitles it to a reduced fee liability. Pl. Opp'n at 18 ("an award of Sidense's request would bankrupt Kilopass."). "In applying the lodestar method, a court may also take into account the ability to pay any sanction as a relevant factor in determining a reasonable sum for an award of attorney's fees." Skenyon, Marchese & Land, *Patent Damages Law and Practice* § 4:35. In *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 988 (Fed. Cir. 2000), the Federal Circuit acknowledged that a district court may take into account a party's ability to pay when calculating the appropriate fee amount. In that case, the court's decision to reduce the award was based on detailed, itemized financial information, not simply gross revenue and cost figures.

Here, Kilopass' CEO has declared that Kilopass "has been essentially cash-flow neutral" over the past five years, provided some very high level financial data showing its cash on hand, characterized the semi-conductor sector as highly competitive, and described difficulties with raising venture capital. Cheng Decl. ¶¶ 3-4, 6-7. Remarkably, Mr. Cheng contends only that a fee award in excess of $4 million "*may* lead customers to terminate contracts with Kilopass." *Id.* at ¶ 16 (emphasis added). He does not contend that it would, or even could, result in bankruptcy as Kilopass' opposition brief asserts. Taken together, these facts are too speculative to merit a diminution in fees. Furthermore, capping a litigant's § 285 liability at the value that it can comfortably pay comes close to effacing the statute's distinct purpose as a deterrent to frivolous litigation.[14]

---

[14] In a recently submitted supplemental declaration, filed on January 14, 2015, Mr. Cheng has provided an updated financial outlook for Kilopass wherein he states his belief that "Kilopass has sufficient funds to be able to satisfy a judgment for attorneys' fees." Docket No. 460.

Similarly, Kilopass' contention that a large fee award would threaten national security is based on a speculative and attenuated causal chain of events whereby Kilopass (a) would go bankrupt, (b) it would no longer be able to fulfill contracts with defense contractors, (c) these contractors would not be able to find adequate substitutes, and (d) this would in some way — which Kilopass has failed to articulate — result in harm to our nation's safety. Pl. Opp'n at 19. The Court is not persuaded.

## CONCLUSION

The Court awards Sidense attorneys' fees in the amount of $5,315,315.01, and costs in the amount of $220,630.53.

**IT IS SO ORDERED**.

Dated:  March 11, 2015

_____
SUSAN ILLSTON
United States District Judge